purposes of defrauding the Deos of money and their businesses, and ruining the Deos and their businesses to prevent the Deos and their businesses from ever operating in the automobile dealership business again.

324. At all times relevant hereto, the Lenders and Accountants and Attorneys had duties of care, contractual obligations, and fiduciary duties to the Deos and/or their businesses at issue, 189 Sunrise, NorthShore, and Superb.

325. The Defendants herein have each committed one or more crimes and civil wrongdoings against each of the Plaintiffs herein. Not all of the crimes and civil wrongdoings against the Plaintiffs are known to the Deos since at all times relevant hereto, these Defendants have acted deceptively and kept their actions, inactions, and wrongdoings hidden from the Plaintiffs, and kept the Plaintiffs' documents away from the Plaintiffs and refused to return any such documentation to the Plaintiffs.

326. It is specifically alleged herein that the parties to the Baron Nissan transaction set forth in Exhibit F completed that transaction, and that the Deos are at least part owners thereof as set forth in the documentation attached as Exhibit F.

327. The Aaronson Defendants are so underhanded in their handling of the instant situation that when they vacated 189 Sunrise and NorthShore and shut down both businesses and drained the accounts, they also prevented one or both of the businesses from continuing to pay for the then pregnant Sara Deo's health insurance, which they illegally stopped and cancelled without any required notices to Sara Deo.

92

328. At all times relevant hereto, these Defendants have engaged in a conspiracy against the Plaintiffs; each Defendant joined the conspiracy against the Plaintiffs as the Plaintiffs came into their lives. That conspiracy continues, daily, and is on-going against the Plaintiffs by and through, *inter alia*, 1) the fraudulent civil actions commenced against these Defendants and referred to as Actions 1, 2, & 3; 2) the Accountants taking no steps to correct any tax filings inconsistent with the within facts and continuing to play keep away from the Deos as owners of 189 Sunrise and NorthShore of all documents prepared and filed by those accountants for those businesses; 3) the Lenders who ruined the Plaintiffs' businesses (including Superb) and have ruined and continue to refuse to allow the Deos to remain in the automobile dealership business; and 4) the Attorneys who wrongfully conducted unauthorized representation of the corporate Plaintiffs and commenced transparently false Actions against the Plaintiffs for the sole purposes of making more money with the Defendants and continuing to dissuade the Plaintiffs from avoiding crushing fees and losses related to defending the fraudulent civil actions and being unable to re-open their own businesses.

329. Indeed, the named Attorneys herein have made multiple offers of settlement to the Plaintiffs that contain no demands whatsoever for money; rather, the Attorneys herein on behalf of the Urrutia and Aaronson Defendants merely want releases for their clients' actions to date, leaving the Plaintiffs ruined. There is not a shred of ethics or integrity in the conduct of

93

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 3 of 96 PageID #: 106

the Attorneys named herein in their actions purportedly for and against the Plaintiffs.

330. At all times relevant hereto, the Defendants withheld information that should have been turned over to the Plaintiffs; withholding information herein both furthered the Defendants' wrongful purposes regarding the ruination and theft of Plaintiffs' businesses, but also served to keep information and documents away from the Plaintiffs that could have and would have alerted them to wrongdoing by the Defendants sooner. Simply put, the Defendants possess information and documents that they continue to keep away from the Plaintiffs at all times relevant hereto; likewise, one or more unnamed Professionals are also expected to possess information and documents unknown at this time to the Plaintiffs that is and shall become relevant to Plaintiffs case, requiring discovery thereof.

331. The Aaronson Defendants committed gross and outrageous acts and omissions herein in conspiracy with all of the named Defendants herein, acts and omissions that offend the senses of all honest people, including, but not limited to: 1) utilizing the electronic log-in credentials of a dead man to drain and close the Plaintiffs' bank accounts with Chase for both corporate Plaintiffs; 2) stealing NorthShore from the Deos; 3) purposely failing to finish the documentation of the sale of 189 Sunrise to the Deos and surreptitiously misleading the Deos regarding their ownership interests therein; 4) creating and utilizing the transparently phony documents in Exhibit Q to steal the Plaintiffs' businesses, livelihood, and all bank accounts

94

Case 2:24-cv-06903-JMW   Document 1-3   Filed 09/30/24   Page 4 of 96 PageID #: 107

with Chase; 5) stealing all pandemic relief funds (PPP) from both corporate Plaintiffs; 6) placing family members on payroll of one or more of the Urrutia and Aaronson dealerships to give the impression of paying employees when in fact the Defendants herein were engaged in a scheme to defraud the government of PPP funds by diverting and converting these funds to the Defendants herein; 7) committing wire fraud in the creation and transmission of the transparently phony documents in Exhibit Q; and 8) filing lawsuits against the Plaintiffs with false allegations of theft and ownership to continue to ruin the corporate Plaintiffs/competitors of the Defendants as their schemes unraveled and continue to ruin the livelihoods of the Deos thereby.

332. At all times relevant hereto, the Aaronson Defendants not only wrongfully continued to act as the owners/stockholders of 189 Sunrise for their own benefit and the Deos' detriment after the February, 2021 purchase of 189 Sunrise by the Deos, but did so in part to force the Deos out of the lease of the Premises utilized for the operation of 189 Sunrise at 189 Sunrise Highway, Amityville, New York, for the Aaronson Defendants' own benefit; upon information and belief, immediately after forcing the Deos out of the Premises where 189 Sunrise operated via, *inter alia*, shuttering that business and its software and accounts, the Aaronson Defendants have now opened a new business at that location for their own benefit called Stream Auto Outlet.

333. Demand is herein made to Chase to immediately restore the Deos' rights and access to the accounts for 189 Sunrise and NorthShore. Since November

95

2022, Chase has wrongfully and impermissibly prevented any access to those accounts by the Deos; it is and should be abundantly clear to Chase by and through this Complaint and all documents attached hereto that Chase has knowingly, negligently, intentionally, in breach of all agreements, in breach of Civil Rights laws, in breach of internal bank policies and procedures, and in breach of its fiduciary duties, wrongfully sided with the Aaronson Defendants over the use and access to these accounts and all documents associated with these accounts since June 16, 2020 for NorthShore, and since February 2021 for 189 Sunrise. Full restoration of the Deos' ownership and access to these accounts is necessary and an emergency; Chase's decision to lock-out the Deos from their own company accounts has produced devastating effects on the Deos and 189 Sunrise and NorthShore, and Chase needs to immediately rectify its serious mistakes and decisions relating thereto.

334. In addition, demand is hereby made to Chase to immediately return and provide (within 30 days of service of this Complaint) to the Deos as contracted owners/members/stockholders of all records in Chase's possession, custody or control regarding 1) daily use of Positive Pay and Tokens (including identification of each user for each use) by and for 189 Sunrise (since February 2021) and NorthShore (at any time since the accounts for NorthShore were opened in 2018); 2) daily use of Tokens and texts (including identification of each user for each use) by and for Superb (since November 2022); and 3) each and every use of David Baron's user

Case 2:24-cv-06903-JMW     Document 1-3     Filed 09/30/24     Page 6 of 96 PageID #: 109

identifications, passwords, and electronic log-in credentials since May 2021 for 189 Sunrise and NorthShore accounts.

335.  At all times relevant hereto, the Urrutia Defendants and the dealerships controlled by them and the Aaronson Defendants and the dealerships controlled by them engage in elaborate shell games with those businesses, sometimes to line the individual Defendants' own individual pockets, sometimes to make it appear as though one or more dealerships are losing money when they are not (to help through tax losses and deductions one or more of the dealerships), and sometimes to divert funds from one business to the benefit of one or more of the individual Defendants' other businesses.

336.  E.g., during the Covid pandemic of 2020-2022, millions of dollars were obtained by the Aaronson Defendants and the Urrutia Defendants for their dealerships from the Paycheck Protection Program (hereinafter, "PPP") that were *not* spent as required under that program but were instead diverted for one or more of the Aaronson Defendants' or Urrutia Defendants' own individual benefit.

337.  Included in the diverted funds by the Aaronson Defendants were millions of dollars obtained by the Aaronson Defendants (with the assistance of the Professionals) through the PPP program ostensibly for the benefit of Plaintiffs 189 Sunrise and NorthShore, but which were instead diverted for the benefit of one or more of the Aaronson Defendants or their Professionals and never given to 189 Sunrise or NorthShore or, in the alternative, stolen from the corporate accounts of 189 Sunrise and NorthShore.

97

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 7 of 96 PageID #: 110

338. Likewise, and upon information and belief, included in the diverted funds by the Urrutia Defendants were millions of dollars obtained by the Urrutia Defendants (with the assistance of the Professionals) through the PPP program ostensibly for the benefit of Superb, but which were instead diverted for the benefit of one or more of the Urrutia Defendants or their Professionals and never given to Superb or, in the alternative, stolen from the corporate account(s) of Superb.

339. The Aaronson Defendants' individual and business wealth significantly impacts every party hereto, including the Accountants, the Lenders, the Professionals, and other unnamed and unknown co-conspirators (the John and Jane Does referenced and sued without their names herein) with the Aaronson Defendants. Collectively, the Accountants, the Lenders, the Attorneys and other unnamed co-conspirators are hereinafter referred to as the Professionals.

340. Simply put, the Professionals are always happy to work with Billionaires like the Aaronson Defendants/businesses, as the Professionals make millions of dollars through the years working with Billionaires like the Aaronson Defendants/businesses. Whenever Billionaires like the Aaronson Defendants/businesses control any given situation through money, they can and do make people do whatever the Aaronson Defendants/businesses want, or, in the alternative, they will simply go out and pay someone else millions of dollars to do their Professional bidding. Thus, just as the Aaronson Defendants controlled the Plaintiffs through the Aaronson Defendants'

98

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 8 of 96 PageID #: 111

money, the Aaronson Defendants also entirely controlled the Professionals they work with through the millions of dollars the Professionals make off of doing the Aaronson Defendants' bidding, as those Professionals simply want to continue to make millions of dollars off of the Aaronson Defendants and their businesses even at the brutal cost of ruining the Plaintiffs' lives and businesses.

341. For the within and other reasons, these Defendants owe joint and several liability to these Plaintiffs.

342. With respect to breach of contract claims and unjust enrichment claims herein, the only valid express, explicit, and executed contracts between the Defendants and any of the Plaintiffs consist of 1) whatever documents were executed between Chase and Sara Deo upon the opening of the account(s) for NorthShore; 2) the contracts attached hereto as Exhibits I-1 and I-2 by and between Superb, Urrutia, and Anthony Deo; and 3) the Baron Nissan Purchase contract attached hereto as Exhibit F (and since the Defendants deny that Exhibit F is fully executed, then the money paid therefore is plead in the alternative, whether fully executed or consisting of unjust enrichment). All other agreements set forth herein are implied, only, as there are no valid, express, explicit, and executed contracts (hereinafter, "EEE Contracts") between any of the Defendants and any of the Plaintiffs otherwise; at most there are emails, documents, events, and writings that confirm the existence of implied agreements between Defendants and Plaintiffs herein, but not any EEE Contracts other than the within three (3) EEE Contracts.

99

343. At the heart of this case is quite simply this: The Greed of each and every Defendant hereto.

344. At all times relevant since the shuttering of 189 Sunrise and NorthShore in November 2022 by the Aaronson Defendants, and at all times relevant hereto since the Lock-Out on August 3, 2023 by the Urrutia Defendants, the Urrutia Defendants and the Aaronson Defendants have defamed and slandered the Deos throughout the automobile industry; this intentional defamation and slander is designed to negatively impact the Deos forever more in the automobile industry on and around the greater NYC are, and has, in fact, done so, forever casting the Deos in an unfair, negative light to further ruin their livelihoods and businesses.

345. Defendants are committing frauds upon the Courts in Actions #2 and #3, as more fully set forth herein. Now that counsel for the Defendants in Actions #2 and #3 know of the frauds upon the Courts advanced by their clients in those Actions, those attorneys for those clients in Actions #2 and #3 have duties to withdraw their false and fraudulent Complaints in those actions pursuant to New York Disciplinary Rules 3.3(a)(1) and (3), and the Plaintiffs herein call upon counsel for the within Defendants in Actions #2 and #3 to withdraw their false, fraudulent, and frivolous Complaints from Actions #2 and #3 within thirty (30) days of service of this Third-Party Complaint.

346. Now that counsel for the within Defendants know of the frauds stated by these Defendants in Actions #2 and #3, to continue to advance those

100

fraudulent Complaints from those Actions in light of the within facts and Exhibits does and will continue to constitute frivolous conduct in violation of New York Disciplinary Rules 3.1(a), 3.1(b)(1) and (3), and the Plaintiffs in this Action call upon counsel for the within Defendants as they appear in Actions #2 and #3 to withdraw those Complaints in Actions #2 and #3 within thirty (30) days of service of this Third-Party Complaint.

## COUNT I: BREACH OF CONTRACT BY THE AARONSON DEFENDANTS

347. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

348. At all times relevant hereto, the Aaronson Defendants impliedly and/or expressly agreed with the Plaintiffs to provide Floor Plan(s) by and from the Aaronson Defendants' other dealerships (as obtained by the Aaronson Defendants utilizing their Billion Dollar Worth by and through the Lenders) for the operation of 189 Sunrise and NorthShore for various fees and/or payments made directly to the Aaronson Defendants.

349. At all times relevant hereto, the Aaronson Defendants also agreed with the Plaintiffs to provide all software necessary to operate 189 Sunrise and NorthShore.

350. At all times relevant hereto since the Deos 1) formed NorthShore in November 2017; 2) obtained the corporate book for NorthShore in June 2018 (Exhibit U hereto); 3) obtained an EIN/tax identification number for NorthShore in November 2017 (Exhibit A hereto); 4) opened one or more bank accounts from Chase Bank in January 2018 (Exhibit C hereto); and 5)

101

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 11 of 96 PageID #: 114

entered into a lease for the operation of NorthShore in Syosset, New York (Exhibit B hereto), the Plaintiffs and Aaronson Defendants agreed that NorthShore belonged to the Deos as the sole shareholders/members; the multitude of excuses and lies told by the Aaronson Defendants to the Deos were entirely made to hide the Aaronson Defendants' illegal and wrongful takeover of the company and to also hide the Aaronson Defendants breaches of their Agreements to provide use of their Floor Plans and software for the benefit of NorthShore.

351. At all times relevant hereto, the Aaronson Defendants and the Deos referred to each other as "partners" since the Aaronson Defendants supplied the Floor Plans for a fee in assisting the Deos with the operation of their (the Deos') companies, 189 Sunrise and NorthShore.

352. At all times relevant hereto, the Aaronson Defendants utilized the agreements to provide use of their Floor Plans for the benefit of the Plaintiffs to completely control 100% of both companies' finances, and ultimately, the Aaronson Defendants wielded the Floor Plan agreement(s) as weapons to illegally and wrongfully obtain and maintain both ownership of 189 Sunrise and NorthShore as well as control of 189 Sunrise and NorthShore, long after NorthShore was opened and owned by the Deos (*see* Exhibits A, B, C, and U), and 189 Sunrise was purchased and the space leased by the Deos (*see* Exhibits D and E); *see also* confirmation of the Deos ownership of both corporations by the Aaronson Defendants in Exhibits G and H.

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 12 of 96 PageID #: 115

353. By and through the Floor Plan agreement(s) with and superior financial might over the Plaintiffs, the Aaronson Defendants 1) gained access to the physical locations of both Plaintiff corporations; 2) utilized the physical access to both Plaintiff corporations to control both companies' software, bank accounts, company documents, and company books; 3) placed Aaronson Defendants into employment and/or oversight positions in both companies to be their on-site eyes and ears so as to assist with such events as the Khan incident and the David Baron incident to further solidify the Aaronson Defendants' theft of both companies and their bank accounts; 4) obtained superior positions over the Plaintiffs in order to control all finances and Professionals providing services to the corporate Plaintiffs, leaving the Aaronson Defendants able to control the Plaintiffs fully upon the threat of shuttering the Plaintiffs' businesses; 5) obtained full control over the companies tax returns and documents to further their surreptitious takeover of both companies, taking over NorthShore since they filed tax returns prior to and then obtained the corporate book on June 16, 2020 and falsified documents that day to take over company accounts, and 189 Sunrise from the date of selling the company to the Deos (Exhibit D) without ever fully turning over ownership until fully admitting their theft by and through their approval of the tax returns indicating the Deos' ownership (Exhibits G & H); and 6) purposely avoided having EEE Contracts so as to control the situation without being bound by specific contractual positions and without alerting

103

the Plaintiffs to the thefts and fraud being perpetrated by the Aaronson Defendants.

354. At all times relevant hereto, Plaintiffs had a valid implied agreement for the Aaronson Defendants to provide a Floor Plan to NorthShore and 189 Sunrise.

355. At all times relevant hereto, the Aaronson Defendants agreed and were obligated to act in good faith and deal fairly with the Plaintiffs in providing the Floor Plans for 189 Sunrise and NorthShore.

356. At all times relevant hereto, Plaintiffs performed what was required of them under the implied agreements with the Aaronson Defendants: At all times relevant hereto, Plaintiffs 1) provided and operated corporations requiring Floor Plans in forming NorthShore and purchasing 189 Sunrise; 2) operated NorthShore and 189 Sunrise in good faith themselves; 3) hired and supervised all employees at NorthShore since its inception; 4) hired and supervised all employees at 189 Sunrise since its purchase by the Deos in February 2021; 5) allowed the Aaronson Defendants access to and placed/allowed one or more of them as additional signatories on bank accounts as demanded by the Aaronson Defendants (but to the detriment of the Plaintiffs); 6) agreed to positive pay and token security features on the corporate bank accounts as demanded by the Aaronson Defendants (but to the determent of the Plaintiffs); and 7) paid and overpaid large sums of money/good and valuable consideration (both willingly and unwillingly) to the Aaronson Defendants for the Floor Plans provided.

104

Case 2:24-cv-06903-JMW   Document 1-3   Filed 09/30/24   Page 14 of 96 PageID #: 117

357. By and through the within and other acts and omissions, the Aaronson Defendants, each and every one of them, knowingly and intentionally breached all contractual obligations and agreements with the Plaintiffs in multiple ways, including, but not limited to, the following: 1) Each and every Aaronson Defendant knew and should have known of the illegalities, thefts, fraud, and wrongdoings committed as set forth herein by each and every other Aaronson Defendants, and conspired therewith to ignore and breach all agreements with the Plaintiffs; 2) Each and every Aaronson Defendant failed to act in good faith and deal fairly with the Plaintiffs; 3) Each and every Aaronson Defendant assisted in defrauding the Plaintiffs by being the eyes and ears of the other Aaronson Defendants and informing the other Aaronson Defendants of all acts by the Plaintiffs constantly and on-going, such as keeping the Aaronson Defendants informed as to the whereabouts of the Deos to assist in stealing from bank accounts, taking all company records and books, shuttering access to necessary software, and more; 4) Each and every Aaronson Defendant either outright assisted or intentionally ignored the bank account thefts and income tax fraud perpetrated on the Plaintiffs herein; 5) Each and every Aaronson Defendant knows and should know that the allegations made by the Aaronson Defendants in Actions 1 & 2 against the Plaintiffs herein are false, knowingly false, and perpetrated merely to engage in the "best defense is a good offense" strategy given what is set forth herein as supported by the Exhibits hereto; 6) Each and every Aaronson Defendant engaged in Cozy

105

Relationships with the Lenders, Accountants, and Professionals to flaunt and take advantage of their wealth so that the Lenders, Accountants, and Professionals always sided with their cash cows, the Aaronson Defendants, so that these outside businesses would conveniently and intentionally ignore red flags and outright wrongdoing to the Plaintiffs' detriment; 7) each and every Aaronson Defendant benefitted from and engaged in PPP theft from 189 Sunrise and NorthShore; 8) Each and every Aaronson Defendant engaged in a conspiracy with the Professionals named herein to defraud the Plaintiffs; and 9) Each and every Aaronson Defendant assisted in the November 2022 shuttering of 189 Sunrise and NorthShore, the stealing of the funds in their bank accounts during the shuttering, the stealing of the two companies' books and records, the theft of both companies' software, the removal and resale for intentional losses of the two companies' automobiles, and the pulling of the Floor Plans from further use at both companies.

358. By the direct and proximate acts and omissions set forth herein by the Aaronson Defendants as against the Plaintiffs, the Plaintiffs have been and continue to be harmed.

359. By the direct and proximate acts and omissions set forth herein by the Aaronson Defendants as against the Plaintiffs, the Plaintiffs have lost their livelihoods and businesses, the corporate Plaintiffs and the Deos themselves have been and continue to be harmed and ruined.

360. By and through the filing of false and fraudulent lawsuits against the Plaintiffs, the Aaronson Defendants have each committed frauds upon the

106

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 16 of 96 PageID #: 119

Court, and further breached their agreements to provide Floor Plans and good faith and fair dealing to the Plaintiffs in providing the Floor Plans and other services to the Plaintiffs.

361. Each of the Plaintiffs bring this Count against each of the Aaronson Defendants.

WHEREFORE, by the within and other acts and omissions, the Aaronson Defendants have breached and continue to breach all contractual obligations and agreements with the Plaintiffs; such breaches have harmed and continue to harm the Plaintiffs in an on-going basis and continually; such breaches are the direct and proximate cause of the Plaintiffs' harm stemming from such breaches at all times relevant hereto; such breaches have caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts and for all damages so triable.

## COUNT II: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS BY THE AARONSON DEFENDANTS AND THE PROFESSIONALS

362. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

107

363. At all times relevant hereto, NorthShore and 189 Sunrise had on-going business relationships with customers to sell them automobiles.

364. At all times relevant hereto, the Aaronson Defendants and the Professionals knew and should have known of the business and business relationships of the corporate Plaintiffs.

365. At all times relevant hereto, the corporate Plaintiffs maintained agreements/contracts, whether express or implied, with the Lenders, the Accountants, and the Attorneys (the "Professionals") in addition to the contracts and agreements by and between the Plaintiffs and Aaronson Defendants.

366. At all times relevant hereto, and while acting in conspiracy with each other and fully hiding information and documents from the Plaintiffs, the Aaronson Defendants and their Professionals both named and unnamed/ unknown to Plaintiffs herein, acted intentionally to interfere with and ruin the corporate Plaintiffs and the Deos' businesses, livelihoods, and on-going business relationships with customers and others by and including, but not limited to: 1) Cooperating in the shuttering of 189 Sunrise and NorthShore; 2) Cooperating in the pulling of Floor Plans from 189 Sunrise and NorthShore; 3) Preventing the Plaintiffs from obtaining their own Floor Plans for 189 Sunrise and NorthShore; 4) Turning in the DMV licenses required to operate 189 Sunrise and NorthShore; 5) Defrauding the Plaintiffs of their bank accounts; 6) Defrauding the Plaintiffs of all money in their bank accounts; 7) Defrauding the Plaintiffs of all PPP funds; 8) Stealing the

108

software required to run 189 Sunrise and NorthShore; 9) Filing fraudulent tax returns by and for the corporate Plaintiffs; 10) Stealing the corporate Plaintiffs; 11) Misappropriating monies paid by the Plaintiffs to the Aaronson Defendants and their Professionals; 12) Acting on behalf of the corporate Plaintiffs without any authority or approval from the Deos on behalf of the corporate Plaintiffs; 13) Wrongfully suing the Plaintiffs with Actions (1 & 2) that consist of frauds upon their respective Courts; 14) Disposing of automobiles without authority of the Plaintiffs; 15) Misrepresenting the true value of the corporate Plaintiffs' automobiles in disposing of those automobiles; 16) Stealing the Plaintiff corporations; 17) Fraudulently obtaining the corporate book of NorthShore and utilizing same to steal NorthShore; 18) Constantly and consistently lying to Plaintiffs; 19) Hiding books, records, and documents from Plaintiffs and refusing to return same upon multiple demands; 20) Utilizing Cozy Relationships to defraud the Plaintiffs; 21) Wrongfully and with malice reneging on all Floor Plans and preventing Plaintiffs from obtaining Floor Plans; 22) Ruining the Plaintiffs reputations in the automobile business; 23) Ignoring corporate policies herein when it involved the Plaintiffs, but doing anything and everything possible for the Aaronson Defendants even to the known detriment of the Plaintiffs in order to keep the Aaronson Defendants' lucrative business; 24) Acting blatantly racist towards the Plaintiffs; 25) Ignoring all ethical duties and obligations by the Professionals; 26) Ignoring all fiduciary duties held by all of the Defendants; and 27) Knowingly and intentionally refusing to review

109

the within and attached documentation in order to intentionally ignore information beneficial to the Plaintiffs and detrimental to the co-Defendants/co-Conspirators.

367. By the within and other acts and omissions, the Aaronson Defendants and the Professionals of their choosing knew and should have known of the staggering interference each of them committed in ruining Plaintiffs' businesses, livelihoods, and on-going business relationships with 189 Sunrise's and NorthShore's customers.

368. At all times relevant hereto, the Aaronson Defendants and their Professionals knew of the Plaintiffs' business relationships, including those with third parties and customers.

369. At all times relevant hereto, the Aaronson Defendants and their Professionals intentionally interfered with the Plaintiffs' business relationships, including those with third parties and customers.

370. At all times relevant hereto, the Aaronson Defendants and their Professionals acted with malice and acted illegally and wrongfully in interfering with the Plaintiffs' business relationships, including those with third parties and customers.

371. At all times relevant hereto, the Aaronson Defendants and their Professionals ruined and ended the Plaintiffs' business relationships, including those with third parties and customers.

372. In fact, by and through their intentional acts and omissions committed with malice at all times relevant hereto, the Aaronson Defendants and the

110

Professionals completely ended the Plaintiffs' businesses and ruined same for all time to come.

373. The Aaronson Defendants' and the Professionals' wrongful and illegal and fraudulent acts and omissions that constitute tortious interference with the Plaintiffs' business relations are on-going and have not ceased since theses Defendants commenced such acts and omissions in 2017 regarding NorthShore, and since February 2021 regarding 189 Sunrise.

374. Each of the Plaintiffs bring this Count against each of the Aaronson Defendants and their Professionals.

WHEREFORE, by the within and other acts and omissions, the Aaronson Defendants and their Professionals, including, but not limited to, the Accountants, Lenders, and Attorneys, have intentionally and tortiously interfered with and continue to interfere with all of the Plaintiffs' business relations; such interference is the direct and proximate cause of the Plaintiffs' harm stemming from such interference at all times relevant hereto; such interference caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is

111

necessary and just. Plaintiffs hereby demand a trial by jury on all counts/damages so triable.

### COUNT III: BREACH OF CONTRACT BY THE URRUTIA DEFENDANTS

375. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

376. At all times relevant hereto, the Urrutia Defendants impliedly and/or expressly contracted with the Plaintiffs on various agreements including, but not limited to the express agreements attached hereto as Exhibit I-1 and I-2, for which Anthony Deo transferred and paid to Anthony Urrutia monies/consideration that he, Deo, obtained and personally guaranteed for 49% of the outstanding stock in Superb.

377. At all times relevant hereto Deo met his obligations under the agreements attached hereto as Exhibits I-1 and I-2; Deo also acted in good faith and dealt fairly with Urrutia in all respects regarding Exhibits I-1/I-2 and Superb.

378. However, in various ways, Urrutia, acting in conspiracy with the rest of the Urrutia Defendants, violated and breached the agreements made with Anthony Deo and the corporate Plaintiffs including, but not limited to, as follows:

a) The Urrutia Defendants conspired to falsely accuse the Deos of theft of money;

b) The Urrutia Defendants conspired to falsely accuse the Deos of theft of automobiles;

112

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 22 of 96 PageID #: 125

c) Urrutia himself fraudulently induced Deo into the contracts attached as Exhibits I-1 and I-2 (and therefore breaching same from the outset) under false pretenses: the Urrutia Defendants never intended to do business with the Plaintiffs long term and apparently never intended to sell Deo two of the Urrutia Defendants' dealerships (Superb and Hartford Mitsubishi); the Urrutia Defendants conspired to get as much money as possible from the Plaintiffs, then conspired to blamed the Plaintiffs for their own mismanagement that caused the shuttering of two of the Urrutia Defendants' dealerships, Superb and Hartford Mitsubishi. This conspiracy was always intended to obtain money from the Plaintiffs only, as Urrutia was bleeding the Urrutia Defendants' two companies of money for their own benefit and needed infusions of cash to try to save both companies at the time that Morgan introduced Deo and Urrutia;

d) The Urrutia Defendants made false police reports regarding the theft of money and automobiles against the Deos as part of their plan to wrongfully Lock-Out the Deos from Superb;

e) The Urrutia Defendants continued to drain Superb of money for their own personal gains, and when Deo investigated the thefts, the CFO for Team Auto and the Urrutia Defendants was fired in an attempt to prevent Deo from discovering the true extent and involvement of the Urrutia Defendants' theft and breaches;

113

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 23 of 96 PageID #: 126

f) The Urrutia Defendants wrongfully shuttered Superb in a last-ditch and ultimately failed attempt to save the Urrutia Defendant's other company(ies); and

g) The Urrutia Defendants wrongfully commenced and still wrongfully maintain Actions 2 and 3 (Exhibits O and P hereto) as frauds upon the Court and upon the Plaintiffs herein.

379. As set forth in Exhibits I-1 and/or I-2, Anthony Deo promised to cross-collateralize the Superb acquisition by and through securing Urrutia by and through 189 Sunrise and NorthShore; at all times relevant hereto, just as Deo represented by executing Exhibits I-1 and I-2, he stood prepared and able and did, in fact, secure Urrutia by and through 189 Sunrise and NorthShore, the Deos' companies at the time that Exhibits I-1 and I-2 were executed and which remain so today.

380. Nonetheless, at all times relevant hereto, Urrutia worked in conspiracy with the co-Defendants in this action to shutter and ruin 189 Sunrise and NorthShore so as to try to place blame on the Plaintiffs by and through false allegations fully supported by the Urrutia Defendants in Actions 1, 2, & 3, when the loss and shuttering of the Urrutia Defendants own companies was always due solely to the mismanagement, poor decisions, and outright frauds committed by the Urrutia Defendants.

381. At all times relevant hereto, Deo kept Urrutia informed as to the 2023 events involving Superb, 189 Sunrise, and NorthShore, both verbally and in writings (*see, e.g.,* Exhibit L hereto).

114

382. Urrutia, on the other hand, surreptitiously drained Superb of its monies for Urrutia's and his co-Urrutia Defendants' gain and benefits, shuttered Superb (and his Hartford, Connecticut dealership) and planned and executed the Lock-Out and Action #2 in conspiracy with all of the co-Defendants herein and with malice aforethought and in full breach of all agreements controlled by the Urrutia Defendants with any and all of the Plaintiffs. E.g., Urrutia specifically stole $250,000.00 from the Superb account(s) during July 2023, immediately before the Lock Out.

383. By the direct and proximate acts and omissions set forth herein by the Urrutia Defendants as against the Plaintiffs, the Plaintiffs have been and continue to be harmed.

384. By the direct and proximate acts and omissions set forth herein by the Urrutia Defendants as against the Plaintiffs, the Plaintiffs have lost their livelihoods and businesses, the corporate Plaintiffs and the Deos themselves have been and continue to be harmed and ruined.

385. Each of the Plaintiffs bring this Count against each of the Urrutia Defendants.

WHEREFORE, by the within and other acts and omissions, the Urrutia Defendants have breached and continue to breach all contractual obligations and agreements with the Plaintiffs; such breaches have harmed and continue to harm the Plaintiffs in an on-going basis and continually; such breaches are the direct and proximate cause of the Plaintiffs' harm stemming from such breaches at all times relevant hereto; such breaches have caused and continue to cause actual damages, nominal

115

damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts and for all damages so triable.

### COUNT IV: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS BY THE URRUTIA DEFENDANTS AND THE PROFESSIONALS

386. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

387. At all times relevant hereto, NorthShore, 189 Sunrise, and Superb had on-going business relationships with customers to sell them automobiles, and also had contracts and agreements with third parties including various Professionals.

388. At all times relevant hereto, the Urrutia Defendants and their Professionals knew and should have known of the business and business relationships of the corporate Plaintiffs.

389. At all times relevant hereto, the corporate Plaintiffs maintained agreements/contracts, whether express or implied, with the Lenders in addition to the contracts and agreements by and between the Plaintiffs and Urrutia Defendants.

116

Case 2:24-cv-06903-JMW   Document 1-3   Filed 09/30/24   Page 26 of 96 PageID #: 129

390.   At all times relevant hereto, and while acting in conspiracy with each other and fully hiding information and documents from the Plaintiffs, the Urrutia Defendants and their Professionals both named and unnamed/ unknown to Plaintiffs herein, acted intentionally to interfere with and ruin the corporate Plaintiffs and the Deos' businesses, livelihoods, and on-going business relationships with customers and others by and including, but not limited to:  1) Cooperating in the shuttering of 189 Sunrise and NorthShore and Superb; 2) Cooperating in the discontinuation and cancelling of Floor Plans for 189 Sunrise and NorthShore and Superb; 3) Preventing the Plaintiffs from obtaining their own Floor Plans for 189 Sunrise and NorthShore and Superb; 4) Turning in the DMV licenses required to operate 189 Sunrise and NorthShore and Superb; 5) Defrauding the Plaintiffs out of money in Superb's bank accounts; 6) Filing fraudulent tax returns by and for Superb; 7) Misappropriating monies paid by the Plaintiffs to the Urrutia Defendants and their Professionals; 8) Wrongfully suing the Plaintiffs with Actions (2 & 3) that consist of frauds upon their respective Courts; 9) Disposing of automobiles without authority of the Plaintiffs; 10) Misrepresenting the true value of automobiles in disposing of those automobiles and Double Flooring same; 11) Constantly and consistently lying to Plaintiffs; 12) Hiding books, records, and documents from Plaintiffs and refusing to return same upon multiple demands; 13) creating phony lists of automobiles and wrongfully utilizing same in Actions 2 & 3 and in false reports alleging wrongdoing by the Plaintiffs to the Nassau County Police

117

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 27 of 96 PageID #: 130

Department; 14) Utilizing Cozy Relationships to defraud the Plaintiffs; 15) Wrongfully and with malice reneging on all Floor Plans and interfering with the Plaintiffs' efforts to obtain further Floor Plans; 16) Ruining the Plaintiffs reputations in the automobile business; 17) Ignoring corporate policies herein when it involved the Plaintiffs, but doing anything and everything possible for the Urrutia Defendants even to the known detriment of the Plaintiffs in order to keep the Urrutia Defendants' perceived lucrative business; 18) Acting blatantly racist towards the Plaintiffs; 19) Knowingly and intentionally refusing to review the within and attached documentation in order to intentionally ignore information beneficial to the Plaintiffs and detrimental to the co-Defendants/co-Conspirators; and 20) NMAC, by and through one or more of its Representatives, intentionally interfering with an agreed upon deal by Anthony Deo to purchase an interest in the business known as Route 112 Mitsubishi.

391. During or about November 2022, after the Aaronson Defendants shuttered and ruined NorthShore and 189 Sunrise, Anthony Deo began looking to save his businesses and to work with new partners.

392. At that time, co-Defendant Morgan was working with and for Superb and introduced Anthony Deo to Urrutia, who at that time was spending large amounts of his time in Costa Rica and claimed, to Deo, that he wanted a partner to operate Superb since he, Urrutia, did not want to be hands-on at the site.

118

393. As is now known to the Plaintiffs, and upon information and belief, Morgan is and at all relevant times hereto has been close to both the Urrutia Defendants (Morgan was working with Urrutia and Superb when he introduced Anthony Deo to Urrutia in November 2022) and the Aaronson Defendants (Morgan worked with the Aaronson Defendants at and with several of the Aaronson Defendants' dealerships; Morgan was close at all relevant times with co-Defendant Wendy Kwun, a leading Aaronson Defendant).

394. Also upon information and belief, Morgan is an individual sanctioned by the New York Attorney General in one or more legal cases; his sanctions purportedly include banishment from the automobile business due to mistreatment of the poor and minorities.

395. Nonetheless, Morgan works in the automobile business; since November of 2022 Anthony Deo possesses knowledge that Morgan worked for and with Superb, the Urrutia Defendants, the Aaronson Defendants, and industry related businesses called Credit Forget It (now closed) and an automobile business called Select Dealer Services.

396. The Lock-Out was planned and executed by all of the Urrutia Defendants, but the main planners amongst the Urrutia Defendants were Urrutia himself, Novicky, and Morgan.

397. During the shuttering of Superb and the dissolution of its assets, Novicky and Morgan were the two main contributors to Urrutia's plan; they developed the fake list of automobiles they falsely alleged to the police that Deo

119

supposedly stole, and it was Novicky in particular who falsely accused the Deos of theft of monies when it was Novicky who controlled all company finances by and through the Token and Texting systems in place by and through Chase for the Superb account(s).

398. By the within and other acts and omissions, the Urrutia Defendants and the Professionals of their choosing knew and should have known of the staggering interference each of them committed in ruining Plaintiffs' businesses, livelihoods, and on-going business relationships with 189 Sunrise's and NorthShore's and Superb's customers.

399. At all times relevant hereto, the Urrutia Defendants and their Professionals knew of the Plaintiffs' business relationships, including those with third parties and customers.

400. At all times relevant hereto, the Urrutia Defendants and their Professionals intentionally interfered with the Plaintiffs' business relationships, including those with third parties and customers.

401. At all times relevant hereto, the Urrutia Defendants and their Professionals acted with malice and acted illegally and wrongfully in interfering with the Plaintiffs' business relationships, including those with third parties and customers.

402. At all times relevant hereto, the Urrutia Defendants and their Professionals ruined and ended the Plaintiffs' business relationships, including those with third parties and customers.

120

Case 2:24-cv-06903-JMW   Document 1-3   Filed 09/30/24   Page 30 of 96 PageID #: 133

403. In fact, by and through their intentional acts and omissions committed with malice at all times relevant hereto, the Urrutia Defendants and the Professionals completely ended the Plaintiffs' businesses and ruined same for all time to come.

404. The Urrutia Defendants' and the Professionals' wrongful and illegal and fraudulent acts and omissions that constitute tortious interference with the Plaintiffs' business relations are on-going and have not ceased since these Defendants commenced such acts and omissions beginning in November 2022.

405. Each of the Plaintiffs bring this Count against each of the Urrutia Defendants and their Professionals.

WHEREFORE, by the within and other acts and omissions, the Urrutia Defendants and their Professionals, including, but not limited to, their Accountants, Lenders, and Attorneys, have intentionally and tortiously interfered with and continue to interfere with all of the Plaintiffs' business relations; such interference is the direct and proximate cause of the Plaintiffs' harm stemming from such interference at all times relevant hereto; such interference caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such

121

other damages and amounts as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts/damages so triable.

### COUNT V: CIVIL ASSAULT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND THREAT TO MURDER AGAINST THE URRUTIA DEFENDANTS

406. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

407. At all times relevant hereto, the Urrutia Defendants were headed by Urrutia, Novicky, and Morgan.

408. Upon information and belief, and in order to gain the full support of all of the Urrutia Defendants and employees, Urrutia, Novicky and Morgan spread lies throughout the company about the Deos, especially Anthony Deo.

409. It is unknown by the Plaintiffs the full extent of lies spread through the company by the Urrutia Defendants, but in response thereto, and with the full knowledge of and approval of the Urrutia Defendants, Parmeshwar Bissoon, one of the Urrutia Defendants herein, specifically threatened the life of Anthony Deo. Attached hereto as Exhibit V is a true and accurate copy of the text(s) sent by Bissoon to Deo threatening his life.

410. At all times relevant hereto, Bissoon's co-Defendants amongst the Urrutia Defendants incited him into making the threats he reduced to writing against Deo as attached in Exhibit V.

411. At all times relevant hereto, the threats contained in Exhibit V constitute an assault and a threat upon the life of Anthony Deo.

122

412. Specifically, the common meaning and understanding of the word "pop" in the culture of Bissoon, a young male, means and was meant as (to Deo) "shoot" with some type of gun or other weapon.

413. At all times relevant hereto, the words, actions, and omissions from the co-Urrutia Defendants to Bissoon that caused Bissoon to make the statements contained in Exhibit V were made recklessly, intentionally, with malice, and with outrageous indifference to Deo and for Deo's safety.

414. As a direct and proximate result in the conspiracy amongst the Urrutia Defendants to incite Bissoon and cause Bissoon to threaten Deo, Deo and his wife, co-Plaintiff Sara Deo, has been harmed and caused great anguish.

415. Given the within accusations, the Bissoon threats, which resulted in an Order of Protection being issued for Deo and against Bissoon after investigation by one or more Police Officers and a Court of competent jurisdiction, are clearly part of a campaign by the Urrutia Defendants to intimidate the Deos and cause them real fear and mental anguish.

416. As a direct and proximate result of the conspiracy amongst the Urrutia Defendants to incite Bissoon and cause Bissoon to threaten Deo, the Deos live in fear for their lives and await further threats and/or actual harm from the Urrutia Defendants daily.

417. By and through the threat attached hereto as Exhibit V, the Urrutia Defendants intentionally threatened Anthony Deo.

418. By and through the threat attached hereto as Exhibit V, the Urrutia Defendants took steps to actually harm Anthony Deo.

123

419.   By and through the threat attached hereto as Exhibit V, the Urrutia Defendants intentionally caused the Deos anguish and great mental harm.

420.   At all times relevant hereto, the Deos reasonably and did believe that the Urrutia Defendants were capable of carrying out the threat attached hereto as Exhibit V, and were capable of actually killing Anthony Deo as threatened in Exhibit V.

421.   At all times relevant hereto, and simply part and parcel of the greed exhibited throughout this Complaint, the Urrutia Defendants were and are capable of harming Anthony Deo, and were and are capable of actually killing Anthony Deo.

422.   By and through the threat attached hereto as Exhibit V, the Urrutia Defendants were imminently about to assault Anthony Deo, and were imminently about to kill Anthony Deo.

423.   At all times relevant hereto, the Urrutia Defendants intended to provoke and have provoked others to commit assault against Anthony Deo, to threaten the life of Anthony Deo, and to harm Anthony Deo, not just by and through Bissoon, but upon information and belief, others unknown to the Plaintiffs as well.

424.   At all times relevant hereto, the within threats were meant to intimidate both of the Deo Plaintiffs and were meant to cause the Deo Plaintiffs emotional distress; in fact, the within threats *did* intimidate the Deos and has caused them great emotional distress. Simply put, the Deos now live their lives in fear that the next threat from the Urrutia Defendants will actually be

124

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 34 of 96 PageID #: 137

carried out, and they live in fear of unexpectedly meeting one or more of the Urrutia Defendants while going about their daily lives and having to face the possibility of being assaulted or even murdered.

425.   The within Count/claims are against the Urrutia Defendants for the harm caused by their assaults and threats to murder Anthony Deo and the intentional infliction of great emotional distress upon both Deos; said harm constitutes great mental anguish and fear within Anthony Deo and his wife, Sara Deo, who both make claim hereunder.

WHEREFORE, by the within and other acts and omissions, the Urrutia Defendants have intentionally and tortiously assaulted and threatened to murder Plaintiff Anthony Deo; the Urrutia Defendants have also intended and did, in fact, wrongfully inflict emotional distress upon the Deos hereby; such assaults, threats to murder and infliction of emotional distress are directly and proximately the cause of the Deos' harm, mental anguish, emotional distress and constant fear for their safety; such assaults and threats to murder Anthony Deo and infliction of emotional distress upon both Deos caused and continue to cause actual damages, nominal damages, and consequential damages to the individual Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as

125

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 35 of 96 PageID #: 138

this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts/damages so triable.

## COUNT VI: PROFESSIONAL MALPRACTICE BY THE ACCOUNTANTS

426. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

427. The Accountants hereto, Citrin and RWC, performed services as accountants for the corporate Plaintiffs hereto, 189 Sunrise and NorthShore.

428. At all times relevant hereto regarding NorthShore, and at all times relevant since February 2021 regarding 189 Sunrise, the owners/members/stockholders of 189 Sunrise and NorthShore were the Deo Plaintiffs herein.

429. At all times relevant hereto, the Accountants knew and should have known that the owners/members/stockholders of 189 Sunrise and NorthShore were Anthony Deo and Sara Deo, only.

430. At all times relevant hereto, the Aaronson Defendants certainly knew of the within frauds and thefts, as they perpetrated same.

431. At all times relevant hereto, the Accountants knew and should have known of the frauds perpetrated by the Aaronson Defendants, as the Accountants were partners in committing the within frauds upon the Plaintiffs.

432. At all times relevant hereto, the Accountants owed duties of care to each of the Plaintiffs.

433. At all times relevant hereto, the Accountants owed fiduciary duties to each of the Plaintiffs.

126

434. Whether the Accountants knew of the frauds and intentionally ignored same, including but not limited to, the theft of 189 Sunrise by the Aaronson Defendants after the Deos purchased same, the theft of NorthShore by the Aaronson Defendants after the Deos opened same, and all of the fraudulent documents including tax returns prepared thereafter by the Accountants, or, if the Accountants somehow failed to conduct any diligence in verifying the owners and operators of these two businesses, the Accountants are liable for massive malpractice claims by, *inter alia*, 1) siding at all times relevant hereto with the Aaronson Defendants regarding the fraud perpetrated in stealing the corporation known as 189 Sunrise; 2) acting as 189 Sunrise's Accountants without authorization from the owners/members/stockholders thereof; 3) siding at all times relevant hereto with the Aaronson Defendants regarding the fraud perpetrated in stealing the corporation known as NorthShore; 4) acting as NorthShore's Accountants without authorization from the owners/members/stockholders thereof; 5) failing and refusing to correct the accounting mistakes and mistaken tax filings undertaken, prepared, and filed by the Accountants on behalf of 189 Sunrise; 6) failing and refusing to correct the accounting mistakes and mistaken tax filings undertaken, prepared, and filed by the Accountants on behalf of NorthShore; 7) cooperating with and assisting the Aaronson Defendants out of greed to keep their lucrative business as clients of the Accountants while simultaneously being part of the conspiracy to ruin the Plaintiffs herein; 8) intentionally ignoring multiple red flags that certainly did and should alert

127

the Accountants to the Aaronson's frauds and thefts; 9) assisting in the theft

of the PPP funds from 189 Sunrise and NorthShore and benefitting therefrom

either directly (by wrongfully taking some of those funds for themselves) or

continuing to assist the Aaronson Defendants in stealing those funds from the

corporate Plaintiffs and keeping the Billionaire Aaronson Defendants'

business for Citrin and RWC, respectively; 10) violating their fiduciary

duties to the Plaintiffs herein by committing the within frauds and utter

failures to protect these Plaintiffs; 11) assisting the Aaronson Defendants in

violating the Deos' Civil Rights; 12) violating every ethical and legal

obligation as Accountants through their utter failures towards protecting the

Plaintiffs herein and intentional ignoring the Aaronson Defendants'

wrongdoing; 13) wrongfully manipulating the Aaronson Defendants'

individual and corporate tax returns to assist in their frauds against the

Plaintiffs; 14) wrongfully manipulating and failing to audit the Aaronson

Defendants' financial statements to assist in their frauds against the

Plaintiffs; 15) improperly maintaining records belonging to the Plaintiffs; 16)

failing to detect the Aaronson Defendants' embezzlement and thefts from the

corporate Plaintiffs; 17) purposely overbilling the Aaronson Defendants in

conspiracy with the Aaronson Defendants and in gratitude from the Aaronson

Defendants for the Accountants' intentionally ignoring the within frauds

against the Plaintiffs, and for siding with the Aaronson Defendants at all

relevant times herein; and 18) enabling the Aaronson Defendants tax evasion

128

and tax frauds as individuals, by and through their corporations, and by and through the corporate Plaintiffs herein.

435. At all times relevant hereto, the Accountants owed a duty of care and a fiduciary duty to these Plaintiffs in acting on behalf of the corporate Plaintiffs.

436. The within acts and omissions and fiduciary and ethical breaches materially deviate from accepted accounting practices and principles and professional standards, including all such standards promulgated by the American Institute of Certified Public Accountants.

437. The within acts, omissions, fiduciary breaches, frauds, and intentional ignorance constitute deviations from accepted accounting practices by these Accountants at all relevant times, and directly and proximately caused the Plaintiffs harm, while at simultaneously helping the Accountants keep the Aaronson Defendants as clients and benefitting those clients and the Accountants financially.

438. Plaintiffs Demand that the Accountants immediately provide to the Plaintiffs copies of all corporate records prepared at any time by or in the possession of any member, accountant, partner, stockholder, or associate of their firms on behalf of the corporate Plaintiffs.

439. Plaintiffs Demand that the Accountants immediately inform the Plaintiffs of the full identities (including names and work addresses) of each member, accountant, partner, stockholder, or associate of their firms who performed any work, filings, or services at any time for Plaintiff NorthShore, and who

129

performed any work, filings, or services for Plaintiff 189 Sunrise since February, 2021; details of work, filings, and services performed are also herein demanded, including all executed fee agreements purporting to refer to the corporate Plaintiffs in any way.

440. Plaintiffs Demand that the Accountants immediately provide to the Plaintiffs all billing records for NorthShore produced at any time and all billing records for 189 Sunrise produced at any time since February 2021 by or in the possession of any member, accountant, partner, stockholder, associate, or employee of either Defendant Accountant's firm.

441. Plaintiffs Demand that the Accountants immediately provide all written communications between any member, accountant, partner, stockholder, associate, or employee of either Defendant Accountant's firm and any Aaronson Defendant regarding NorthShore at any time and 189 Sunrise since February 2021.

442. Notice is hereby given that the Deos are the rightful owners/members/ stockholders of 189 Sunrise (since February 2021) and NorthShore at all times since its inception, and failure to respond to the within Demands within thirty (30) days of service of this Complaint shall be treated as additional acts of accounting malpractice herein at a minimum.

443. It is the specific intention of the Plaintiffs to sue each and every individual Accountant from RWC and Citrin who performed any work whatsoever for or on behalf of the corporate Plaintiffs herein at relevant times, but that the individual names of these Accountants are unknown to the Plaintiffs at this

130

time, as that information rests solely with the Defendants in this action and at all relevant times has been and continues to be wrongfully kept from the Plaintiffs herein by all of the Defendants, including the Accountants themselves.

444. The within Count is brought on behalf of all Plaintiffs herein against Citrin and RWC.

WHEREFORE, by the within and other acts and omissions, the Accountants and each individual employed therein who performed work at relevant times for and on behalf of the corporate Plaintiffs have committed and continue to commit professional/accounting malpractice and malfeasance against the Plaintiffs; such malpractice and malfeasance has harmed and continues to harm the Plaintiffs in an on-going basis and continually; such malpractice and malfeasance is the direct and proximate cause of the Plaintiffs' harm stemming from such malpractice and malfeasance at all times relevant hereto; such malpractice and malfeasance have caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts and for all damages so triable.

131

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 41 of 96 PageID #: 144

## COUNT VII: PROFESSIONAL MALPRACTICE BY THE ATTORNEYS

445. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

446. At various times related hereto, the Attorneys named herein (MLLG and CSZ) represented the corporate Plaintiffs hereto; the Defendant Attorneys represented NorthShore at various times since 2017, and the Defendant Attorneys represented 189 Sunrise at various times since February 2021, and the Defendant Attorneys represented Superb as various times since November 2022 (hereinafter, the "Relevant Representation").

447. During the Relevant Representation of the corporate Plaintiffs and Superb, the Defendant Attorneys also represented one or more of the purported owners/members/stockholders of the corporate Plaintiffs and Superb in various matters,

448. It is not known by the Plaintiffs which individual attorneys/partners/associates/members from MLLG and CSZ represented the corporate Plaintiffs and Superb and/or purported owners/members/stockholders of the corporate Plaintiffs and Superb during the Relevant Representation.

449. However, the Plaintiffs herein do know that at no time did the Defendant Attorneys ever discuss representation of the corporate Plaintiffs and Superb or their purported owners/members/stockholders with any of the Deos, and at no time did the Defendant Attorneys obtain any permission from the Deos to undertake representation of the corporate Plaintiffs or Superb or the Deos as

132

the rightful owners/members/stockholders of the corporate Plaintiffs and partially Superb.

450.    By the within and other acts and omissions, the Defendant Attorneys have committed and continue to commit malpractice, negligence, gross negligence, and negligence *per se* by (*inter alia*): 1) Failing to find and act upon the various red flags and other warning signs that the Aaronson Defendants and the Urrutia Defendants were defrauding the Plaintiffs; 2) Aiding and abetting the fraud committed by the Aaronson Defendants and Urrutia against the Plaintiffs; 3) Intentionally ignoring the fraud committed by the Aaronson Defendants and Urrutia Defendants against the Plaintiffs; 4) failing to conduct any diligence in verifying the owners/members/stockholders and operators of the corporate Plaintiffs and Superb; 5) conveniently siding at all times relevant hereto with the Aaronson Defendants regarding the fraud perpetrated in stealing the corporation known as 189 Sunrise; 6) siding at all times relevant hereto with the Aaronson Defendants regarding the fraud perpetrated in stealing the corporation known as NorthShore; 7) siding at all relevant times with the Urrutia Defendants regarding the fraud perpetrated in stealing the corporation known as Superb; 8) cooperating with and assisting the Aaronson Defendants out of greed to keep their lucrative business as clients of the Attorneys while simultaneously being part of the conspiracy to ruin the Plaintiffs herein; 9) cooperating with and assisting the Urrutia Defendants out of greed to keep their lucrative business as clients of the Attorneys while simultaneously being part of the

133

conspiracy to ruin the Plaintiffs herein; 10) assisting in the theft of the PPP funds from 189 Sunrise and NorthShore and benefitting therefrom either directly (by wrongfully taking some of those funds for themselves) or continuing to assist the Aaronson Defendants in stealing those funds from the corporate Plaintiffs while keeping the Billionaire Aaronson Defendants' business for MLLG and CSZ thereby; 11) violating their fiduciary duties to the Plaintiffs herein by committing the within frauds and utter failures to protect these Plaintiffs; 12) assisting the Aaronson Defendants and Urrutia Defendants in violating the Deos' Civil Rights; 13) violating every ethical and legal obligation as Attorneys through their utter failures towards protecting the Plaintiffs herein while intentionally ignoring the Aaronson Defendants' and Urrutia Defendants' wrongdoing; 14) improperly maintaining records belonging to the Plaintiffs; 15) failing to detect and prevent the Aaronson Defendants' and Urrutia Defendants' embezzlement and thefts from the corporate Plaintiffs and Superb; 16) purposely overbilling the Defendants in conspiracy with the Aaronson Defendants and the Urrutia Defendants and in gratitude from the Aaronson Defendants and Urrutia Defendants for the Attorneys' intentionally ignoring the within frauds against the Plaintiffs, and for siding with the Aaronson Defendants and Urrutia Defendants at all relevant times herein; 17) enabling the Aaronson Defendants' and Urrutia Defendants tax evasion and tax frauds and all frauds set forth herein by the Aaronson Defendants and Urrutia Defendants individually, by and through their businesses/ corporations, and by and

134

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 44 of 96 PageID #: 147

through the corporate Plaintiffs and Superb; 18) failing to act in defense of the Plaintiffs given the acts and omissions set forth herein by all co-Defendants; and 19) acting carelessly and recklessly towards the Plaintiffs at all times relevant hereto.

451.   At all times relevant hereto, the Attorneys owed a duty of care and a fiduciary duty to these Plaintiffs and Superb in acting on behalf of the corporate Plaintiffs and Superb and/or the purported owners/members/stockholders thereof.

452.   The within acts and omissions and fiduciary and ethical breaches materially deviate from accepted attorney practices and principles and professional standards.

453.   The within acts, omissions, fiduciary breaches, frauds, and intentional ignorance constitute deviations from accepted attorney practices by these Attorneys at all relevant times, and directly and proximately caused the Plaintiffs harm including the loss of their business/businesses, while simultaneously helping the Attorneys keep the Aaronson Defendants and Urrutia Defendants as clients and benefitting those clients and the Attorneys financially.

454.   Plaintiffs Demand that the Attorneys immediately provide to the Plaintiffs copies of all corporate records prepared at any time by or in the possession of any member, attorney, partner, or associate of their firms on behalf of the corporate Plaintiffs.

135

455. Plaintiffs Demand that the Attorneys immediately inform the Plaintiffs of the full identities (including names and work addresses) of each member, attorney, partner, or associate of their firms who performed any work, actions, or services at any time for Plaintiff NorthShore, and who performed any work, actions, or services for Plaintiff 189 Sunrise since February 2021; details of work, actions, and services performed are also herein demanded, including all executed fee agreements purporting to refer to the corporate Plaintiffs in any way.

456. Plaintiffs Demand that the Attorneys immediately provide to the Plaintiffs all billing records for NorthShore produced at any time and all billing records for 189 Sunrise produced at any time since February 2021 by any member, attorney, partner, associate, or employee of either Defendant Attorneys' firm.

457. Plaintiffs Demand that the Attorneys immediately provide all written communications between any member, attorney, partner, associate, or employee of either Defendant Attorneys' firm and any Aaronson Defendant regarding NorthShore at any time and 189 Sunrise since February 2021.

458. Notice is hereby given that the Deos are the rightful owners/members/ stockholders of 189 Sunrise (since February 2021) and NorthShore at all times since its inception, and failure to respond to the within Demands within thirty (30) days of service of this Complaint shall be treated as additional acts of attorney malpractice herein at a minimum.

459. Furthermore, Notice is hereby given to the Defendant Attorneys as follows:  The Defendant Attorneys  are hereby reminded of their ethical

136

duties and are to immediately 1) cease and desist from any work or actions purporting to involve the representation of the corporate Plaintiffs or any purported owner/member/stockholder thereof; and 2) withdraw from any action in which the Attorneys claim to represent the corporate Plaintiffs or any owner/member/stockholder thereof. To be clear: No Attorneys named herein nor any of their members, attorneys, partners, associates, or employees have any authority to represent any of the Plaintiffs or anyone claiming any interest in the corporate Plaintiffs ever again.

460. It is the specific intention of the Plaintiffs to sue each and every individual Attorney from MLLG and CSZ who performed any work whatsoever for or on behalf of the corporate Plaintiffs and Superb herein at relevant times, but that the individual names of these Attorneys are unknown to the Plaintiffs at this time, as that information rests solely with the Defendants in this action and at all relevant times has been and continues to be wrongfully kept from the Plaintiffs herein by all of the Defendants, including the Attorneys themselves.

461. The within Count is brought on behalf of all Plaintiffs herein against each of the Attorneys working for MLLG and CSZ that performed work for any Plaintiff at relevant times, as well as against MLLG and CSZ as law firms.

WHEREFORE, by the within and other acts and omissions, the Attorneys and each individual employed therein who worked at relevant times on behalf of the corporate Plaintiffs and Superb have committed and continue to commit professional/attorney malpractice, negligence, gross negligence, negligence *per se*, and malfeasance

137

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 47 of 96 PageID #: 150

against the Plaintiffs; such malpractice, negligence, gross negligence, negligence *per se*, and malfeasance has harmed and continues to harm the Plaintiffs in an on-going basis and continually; such malpractice, negligence, gross negligence, negligence *per se*, and malfeasance is the direct and proximate cause of the Plaintiffs' harm stemming from such malpractice and malfeasance at all times relevant hereto; such malpractice, negligence, gross negligence, negligence *per se*, and malfeasance have caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just.  Plaintiffs hereby demand a trial by jury on all counts and for all damages so triable.

### COUNT VIII:  BREACH OF CONTRACT BY THE LENDERS

462.  Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

463.  At various times relevant hereto, 189 Sunrise, NorthShore, and Superb maintained various express and/or implied agreements with the Lenders.

464.  Specifically, the following express and/or implied agreements are at issue in this Count during the dates listed:

138

a) One or more agreements by and between NorthShore and Chase regarding all bank accounts in effect since about January 2018;

b) One or more agreements by and between NorthShore and Ally regarding all Floor Plans in effect from about August 2018 until about November 2022;

c) One or more agreements by and between 189 Sunrise and Chase regarding all bank accounts in effect since about February 2021;

d) One or more agreements by and between 189 Sunrise and NextGear regarding all Floor Plans in effect since about November 2022;

e) One or more agreements by and between 189 Sunrise and Ally regarding all Floor Plans in effect from about February 2021 until November 2022;

f) One or more agreements by and between Superb and Chase regarding all bank accounts in effect since about December 2022;

g) One or more agreements by and between Superb and NMAC regarding all Floor Plans in effect since about December 2022; and

h) One or more agreements by and between Superb and NextGear regarding all Floor Plans in effect since about December 2022 (paragraphs a-h, *supra*, hereinafter collectively refer to the "Lender Contracts").

465. At all times relevant hereto, Superb, 189 Sunrise, and NorthShore obtained Floor Plans through the Lender Contracts from the Automobile Lenders; Superb, 189 Sunrise, and NorthShore obtained bank accounts through the Lender Contracts from Chase.

139

466.   At all times relevant hereto, the Lenders owed duties of care to Superb, 189 Sunrise, and NorthShore arising from the Lenders' contracts with Superb, 189 Sunrise, and NorthShore.

467.   At all times relevant hereto, the Lenders owed fiduciary obligations to Superb, 189 Sunrise, and NorthShore arising from the Lenders' contracts with Superb, 189 Sunrise, and NorthShore.

468.   At all times relevant hereto, the Lenders owed the obligations of good faith and fair dealing to Superb, 189 Sunrise, and NorthShore arising from the Lenders' contracts with Superb, 189 Sunrise, and NorthShore.

469.   At all times relevant hereto, the Lenders' duties of care, fiduciary duties, and obligations of acting in good faith and fair dealing were also owed to the Deos as they were relevant owners and/or members and/or stockholders of Superb (Anthony Deo, 49% since November 2022 via the contract attached hereto as Exhibit I), 189 Sunrise (Anthony and Sara Deo 100% since February 2021 via the purchase attached hereto as Exhibit D, the lease attached hereto as Exhibit E, and the confirmation of ownership by the Aaronson Defendants in Exhibits G and H) and NorthShore (Anthony and Sara Deo 100% since forming the corporation in November 2017; *see* Exhibits A, B, C, G, H and U).

470.   At all times relevant hereto, the Lenders knew or should have known of the Deos' ownership interests in the businesses known as Superb, 189 Sunrise, and NorthShore.

140

471. At all times relevant hereto, the Deos individually and on behalf of and through their ownership interests in Superb, 189 Sunrise, and NorthShore fulfilled their obligations on all contractual agreements by and between the Deos, Superb, 189 Sunrise, and NorthShore on the one hand, and the Lenders on the other hand, including paying good and valuable consideration for the agreements and fulfilling their obligations thereunder as account/Floor Plan holders.

472. At all times relevant hereto, and by and through the within and other acts and omissions, the Lenders, each and every one of them and their Representatives whether known and identified herein or not, knowingly and intentionally breached all contractual and fiduciary obligations, duties and agreements with the Plaintiffs in multiple ways, including, but not limited to, the following: 1) Each and every Lender and their Representatives knew and should have known of the illegalities, thefts, fraud, and wrongdoings committed by the Urrutia Defendants and Aaronson Defendants as set forth herein, and conspired therewith to ignore and breach all agreements with the Plaintiffs due to greed/making more money off of the co-Defendants than the Plaintiffs; 2) Each and every Lender and their Representatives failed to act in good faith and deal fairly with the Plaintiffs; 3) Each and every Lender and their Representatives either outright assisted or intentionally ignored the corporate thefts income tax fraud perpetrated on the Plaintiffs herein; 4) Each and every Lender and their Representatives failed to perform any diligence in confirming ownership interests in Superb, 189 Sunrise and NorthShore

141

before and during the contractual arrangements at the relevant times; 5) Each and every Lender and their Representatives sided with the co-Defendants in wrongfully shutting off the Plaintiffs' access to Floor Plans and bank accounts in conspiracy with and at the direction of the Urrutia and/or Aaronson Defendants, respectively; 6) Each and every Lender and their Representatives failed and refused to speak with the Deos when approached by the Deos to discuss the within; 7) Each and every Lender and their Representatives engaged in Cozy Relationships with other Lenders, and/or Accountants, and/or Urrutia Defendants, and/or Aaronson Defendants and/or Professionals to keep the extraordinarily wealthy co-Defendants and their businesses as customers at the expense and to the detriment of the Plaintiffs; simply put, the Lenders sided with the demonstrable Billionaires in shutting off the Plaintiffs from their rightful access to Floor Plans and bank accounts; 8) By and through wrongful conspiracy, Chase wrongfully allowed the Aaronson and Urrutia Defendants to steal from the accounts rightfully belonging to the corporate Plaintiffs and Superb, including theft of the PPP Pandemic Funds from 189 Sunrise, NorthShore, and Superb. At all times relevant hereto, Chase knew or should have known of these thefts, but instead, sided with the co-Defendants despite the Deos' complaints, and Chase outright sided with the co-Defendants in their draining and closing of the accounts that Chase knew or should have known rightfully belonged to the Plaintiffs; 9) Each and every Lender engaged in a conspiracy with the Professionals named herein and the Urrutia Defendants and/or Aaronson

142

Defendants to defraud the Plaintiffs; 10) Each and every Automobile Lender engaged in a conspiracy with either the Aaronson Defendants and/or the Urrutia Defendants in the November 2022 shuttering of 189 Sunrise and NorthShore, the fall 2023 shuttering of Superb, and the forced removal and resale for intentional losses of Superb's, 189 Sunrise's, and NorthShore's automobiles; 11) Each and every Lender and their Representatives wrongfully engaged in blatant racism towards the Deos at all relevant times by and through their Cozy Relationships with the Urrutia and Aaronson Defendants, their refusals to ever even dine with the Deos when the Lenders knew and should have known of their ownership interests in 189 Sunrise, NorthShore and Superb, and siding in all respects with the Aaronson Defendants and Urrutia Defendants in the ruination of the Deos' ownership interests in Superb, 189 Sunrise and NorthShore while also intentionally ignoring the Deos ownership interests and the co-Defendants blatant thefts and ruination of the Deos' companies; 12) Each and every Lender failed, refused, and continues to fail and refuse to allow access to the Plaintiffs on behalf of Superb, 189 Sunrise, and NorthShore to the information and documents relevant to these three (3) companies' accounts and contracts despite knowing or should knowing at all relevant times of the Deos' interests in 189 Sunrise, NorthShore, and Superb; and 13) NMAC affirmatively has interfered with the Deos' on-going business interests and queered an agreed upon deal for Deo to obtain an ownership interest in a business known as Route 112 Mitsubishi in Suffolk County, New York.

143

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 53 of 96 PageID #: 156

473. At all times relevant hereto, the Aaronson Defendants utilized the Lender Contracts to provide Floor Plans for the benefit of the Plaintiffs to completely control 100% of 189 Sunrise and NorthShore, but in conspiracy with the Lenders and with the Lenders' knowledge and acquiescence, the Aaronson Defendants wielded the Lender Contracts as weapons to illegally and wrongfully obtain and maintain both ownership of 189 Sunrise and NorthShore as well as control of 189 Sunrise and NorthShore, long after NorthShore was opened and owned by the Deos (*see* Exhibits A, B, C, and U), and 189 Sunrise was purchased and the space leased by the Deos (*see* Exhibits D and E); *see also* confirmation of the Deos' ownership of both corporations by the Aaronson Defendants in Exhibits G and H.

474. At all relevant times, the Lenders utilized Cozy Relationships to exclude the Deos from developing any relationships with the Lenders' Representatives, and as a weapon to stay close with the far wealthier Billionaires/Aaronson Defendants and the Urrutia Defendants, with whom the Lenders had long lasting, lucrative relationships with and wanted to extend at the cost of ruining the Deos' lives, livelihoods, and corporate co-Plaintiff businesses, NorthShore and 189 Sunrise.

475. By the direct and proximate acts and omissions and breaches set forth herein by the Lenders against the Plaintiffs, the Plaintiffs have been and continue to be harmed.

476. By the direct and proximate acts and omissions and breaches set forth herein by the Lenders against the Plaintiffs, the Plaintiffs have lost their

144

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 54 of 96 PageID #: 157

livelihoods and businesses, the corporate Plaintiffs and the Deos themselves have been and continue to be harmed and ruined.

477. The within Count is brought by all Plaintiffs against all Lenders.

WHEREFORE, by the within and other acts and omissions, the Lenders have breached and continue to breach all contractual obligations, fiduciary obligations, and agreements with the Plaintiffs by and through their contracts with the Plaintiffs and Superb; such breaches have harmed and continue to harm the Plaintiffs in an on-going basis and continually; such breaches are the direct and proximate cause of the Plaintiffs' harm stemming from such breaches at all times relevant hereto; such breaches have caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts and for all damages so triable.

### COUNT IX: CONSTITUTIONAL VIOLATIONS AND CIVIL RIGHTS VIOLATIONS BY ALL DEFENDANTS

478. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

145

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 55 of 96 PageID #: 158

479. At all times relevant hereto, and upon information and belief, Sara Deo and Anthony Deo were the only partners of African and Caribbean descent to own automobile dealerships in the State of New York.

480. Moreover, Sara Deo and Anthony Deo were two of only a handful of minority owners of any automobile dealerships on Long Island, New York.

481. At all times relevant hereto, the Defendants knew and should have known of the Deos' status as minority owners of automobile dealerships.

482. At all times relevant hereto, the Urrutia Defendants and the Aaronson Defendants acted as slaveowners and slavemasters in their treatment of the Deos.

483. At all times relevant hereto, the Defendants violated the Plaintiffs rights to 1) Due Process in the illegal and wrongful taking of the Deos' money and personal property, including but not limited to, 189 Sunrise and NorthShore and all corporate assets thereof; 2) freedom from discrimination due to the Deos' race; and 3) be treated fairly and in good faith in their dealings with these Defendants.

484. At all times relevant hereto, the Deos were treated as sub-humans by these Defendants.

485. At all times relevant hereto, the Defendants put up an impenetrable Chinese Wall to prevent the Deos from discovering: the within frauds; conspiracies; embezzlements; thefts; PPP Pandemic Fund applications, diversions, and thefts; the within interferences; the secrets of controlling 189 Sunrise and NorthShore as purported owners; fraudulent tax returns and

146

filings for 189 Sunrise and NorthShore; incomplete sale and transfer of 189 Sunrise; incomplete sale and transfer of Baron Nissan and failure and refusal to return the Deos' payment therefore; secret removal of the Deos from all corporate bank and software accounts; sacrifice of 189 Sunrise's DMV license to operate as an automobile dealership; sacrifice of NorthShore's DMV license to operate as an automobile dealership; excluding the Deos from the Cozy Relationships between the Urrutia/Aaronson Defendants on the one hand, and the Professionals on the other hand; and wrongfully keeping all corporate records, documents, tax returns, software, and licenses from the Deos through the present.

486.    Each and every Defendant hereto lied to the Deos either directly or through their acts, omissions, and intentional ignorance of the within wrongdoings by co-Defendants to mistreat the Deos without the Deos knowledge or detection.

487.    Through the years, the Deos complained of the treatment, knowing something was wrong (e.g., never getting tax returns or related documents and instead being told endless lies about delays) but could not and did not detect or know that their entire lives and corporations were being looted and stolen from them.

488.    When the Deos complained to the Urrutia Defendants or the Aaronson Defendants, they were met with a mixture of denials, misdirections, and/or threats from these Defendants.

147

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 57 of 96 PageID #: 160

489. E.g., whenever the Deos wanted their tax documents for either 189 Sunrise or NorthShore, they were delayed by the Aaronson Defendants and their Professionals, notably the Accountants and Lenders working in conspiracy with the Aaronson Defendants; indeed, to date, the Deos have none of 189 Sunrise's or NorthShore's or Superb's tax returns prepared for the Aaronson or Urrutia Defendants by their respective Professionals; the Deos only possess the tax returns that their own Professionals prepared, which are attached hereto as Exhibit H.

490. Over time, the Aaronson Defendants changed tactics, and became outright abusive to the Deos, threatening them, calling them "you people," outright refusing to allow the Deos to attend meetings, luncheons, dinners or parties with the Professionals, and taking aggressive actions such as the Khan incident, the David Baron incident, and the threats to shutter 189 Sunrise and NorthShore as eventually carried out during November 2022.

491. Likewise, the Urrutia Defendants mistreated the Deos based upon the color of their skin: Like the Aaronson Defendants, the Urrutia Defendants mistreated the Deos in the absence of any witnesses with such threats and comments as "you people;" the Aaronson Defendants also falsely and with malice reported the Deos to the Police on the night of the Lock-Out, falsely and with malice and blatant racism accusing the Deos of theft of more than one hundred (100+) automobiles which, to date, has never been proven by the Urrutia Defendants.

148

492. Startlingly, these accusations are not new to the Aaronson Defendants, the mistreatment of minorities through their automobile and lending businesses.

493. The Aaronson Defendants have all been involved in a lengthy list of cases alleging wrongdoing in the treatment of minorities like the Deos, including, but not limited to, the following, upon information and belief:

a) *Benjmain Lawsky v Condor Capital Corp, et al*, U.S. District Court, Southern District of New York, Docket No.14-cv-02863; this case alleged sub-prime stealing from the poor and minorities and resulted in fines and prohibition for multiple Aaronson Defendants from engaging in such lending again in the State of New York;

b) The Case of Credit Forget It (now closed), another company involving the Aaronson and/or Urrutia Defendants being fined in excess of $14 million for their treatment of minorities and their credit; this case involved the prohibition of Defendant Michael Morgan from working in the automobile industry, a prohibition he flaunts and ignores as he still works for and operates Select Dealer Services, and works for one or more of the co-Defendants' automobile dealerships (he was the individual that introduced Defendant Urrutia and Anthony Deo during or about November 2022); these businesses also utilizes Wendy Kwun as the manipulator of the financial records for these companies, as Kwun and Morgan have worked together in several automobile businesses over the years;

c) *Baron Auto Mall, et al.* (and other Baron owned and operated automobile dealerships) v. New York City Department of Consumer Affairs, and Jonathan Mintz, Commissioner of the New York City Department of Consumer Affairs, U. S. District Court (EDNY) docket number CV-07-3120; in this case, the Aaronson Defendants engaged in the "best defense is a good offense" strategy by suing the Department of Consumer Affairs in an ultimately failed attempt to prevent that department and its Commissioner from making decisions on the Aaronson Defendants' mistreatments of minorities and the poor;

d) A number of cases brought by minorities mistreated at dealerships owned and operated by the Aaronson Defendants including *Stidhum v. 161-10 Hillside Auto Ave*, U.S. District Court (EDNY) docket no. 21-cv-07163 AND 19-cv-1625; *Sosa, Ivanhoe v. 161-10 Hillside Ave Auto, LLC* New York (Queens) Supreme Court docket no. 720157/2022; *Manrique v. 161-10 Hillside Auto Ave LLC*, New York (NYC) Supreme Court docket no. 655970/2019; *Addaewusu v. NY Off Lease LLC*, New York (Bronx)

149

Supreme Court docket no. 811125/2022E; *Doe v. Long Island Motors, Inc.*, U.S. District Court (EDNY) docket no. 21-cv-1232; *Ebanks v. Ruiz, Rivera, Stream Auto Outlet*, U.S. District Court (EDNY) docket no. 22-cv-02350; *Harris v. Stream Auto Outlet*, U.S. District Court (EDNY) docket no. 21-cv-05027; *Terrero and Cruz v. Sunrise Auto Outlet d/b/a/ Baron Auto Emporium*, U.S. District Court (EDNY) docket no. 23-cv-03115; *Chattopadhyay v. Baron Auto Emporium*, U.S. District Court (EDNY) docket no. 21-cv-06695; and *Mignone v. Asad Khan and Best Auto Outlet*; New York Supreme Court (Nassau) docket no. 616848/2022; and

e) Recently, five Nissan Dealerships including Baron Nissan were fined on or about March 28, 2024, millions of dollars by the NYS Attorney General for cheating minority customers.

494. On one occasion in late 2021 or early 2022 while Defendants Josh Aaronson, Brian Chabrier and Wendy Kwun were meeting in the conference room at NorthShore (after the death of David Baron), Anthony Deo walked down the hall and overheard Brian Chabrier tell Josh Aaronson and Wendy Kwun about "how many niggers we screwed through Baron Auto Mall;" Wendy Kwun and Josh Aaronson just laughed. Deo went back to his office without alerting the Defendants that he heard their conversation.

495. On another occasion, Anthony Deo overheard David Baron on the telephone in the conference room saying to someone , "I bought my Westbury home with the funds we made off of those niggers." Again, Deo went back to his office without alerting the David Baron that he, Deo, heard the conversation.

496. Defendant Urrutia also made inappropriate racial comments to the Deos, on one occasion when the Deos were alone with Defendant Urrutia in an office at Superb, Urrutia commented that he "hates interracial marriages" as he spoke to the Deos (of two different races).

150

497. During the Khan incident, Asad Khan yelled at one point, "this is my dealership, and the Deos are my fucking niggers." The Khan incident was so upsetting to the Deos, that they obtained statements from the NorthShore employees present during at least some of his rants; attached hereto as Exhibit Y are true and accurate copies of incident reports obtained by the Deos after and relating to the Khan incident.

498. The Deos fumed over the within, yet felt helpless to do anything about it as the Aaronson Defendants and the Urrutia Defendants controlled all of both companies' finances, and the Aaronson Defendants not only threatened the Deos with the shuttering of their businesses, they actually did so on three separate occasions: The Khan incident, the David Baron incident, and the ultimate shuttering and permanent ruination of the businesses during November 2022.

499. Although the Urrutia Defendants did not threaten the Deos to the extent of the Aaronson Defendants, the Urrutia Defendants were sickening in their method for ridding themselves of the Deos: They said nothing to alert the Deos to their plan of the Lock-Out, which was obviously planned as the Urrutia Defendants and Defendant Novicky in particular gave the police a typed list of automobiles obviously prepared before the police were called. This list of over one hundred (100+) automobiles were allegedly "stolen by and sold off by the Deos" as the Urrutia Defendants alleged to the police on the night of the Lock-Out: The Urrutia Defendants literally told the police

151

Case 2:24-cv-06903-JMW   Document 1-3   Filed 09/30/24   Page 61 of 96 PageID #: 164

(with absolutely no evidence through the date of the filing of this Complaint) that the Deos stole cars, a startlingly racist comment.

500.   At all times relevant hereto, the Defendants acted intentionally, willfully, maliciously, oppressively, fraudulently, outrageously, and recklessly in their dealings with and crimes against the Deos and their corporate co-Plaintiffs.

501.   Likewise, the Lenders violated endless state and federal laws, rules and regulations prohibiting racial discrimination in Lending; the Lenders refused to even meet with the Deos, failed and refused to ask the Deos their side of events before shutting the Deos' Floor Plans off, barring the Deos from their own bank accounts, and refusing to even eat a meal with the Deos during their Cozy Relationships with the uber rich, Caucasian co-Defendants by and through the Lenders' almost entirely Caucasian Representatives.

502.   In August 2024, NMAC interfered with and queered an agreed upon deal with only paperwork left before Anthony Deo obtained an interest in a business known as Route 112 Mitsubishi. At all times relevant hereto, NMAC queered that deal knowingly and intentionally, and in reckless disregard for Anthony Deo's rights and business relationship established sufficiently to buy an interest in that business. This interference is blatantly racist in all regards, and was meant only hurt Anthony Deo directly and his wife, Sara Deo, indirectly.

503.   The Accountants and Attorneys also violated extensive state and federal anti-discrimination statutes in their unethical and racially charged treatment of the Defendants: The Accountants and Attorneys never even spoke to the

152

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 62 of 96 PageID #: 165

Deos while representing the corporate Plaintiffs owned in all respects by the Deos; the Accountants and Attorneys utterly failed to inquire about and intentionally ignored the Deos' ownership of 189 Sunrise and NorthShore before undertaking representation thereof; the Accountants and Attorneys utterly failed to inquire about and intentionally ignored the Deos' ownership of 189 Sunrise and NorthShore after undertaking representation thereof; the Accountants and Attorneys breached all fiduciary duties in siding with the Aaronson and Urrutia Defendants during their representation of the Aaronson and Urrutia Defendants by and through their failures to detect and prevent the stunning frauds set forth herein (and possibly participated in the PPP Pandemic Relief applications, thefts and embezzlements by wrongfully taking money from that Fund for themselves); the Accountants and Attorneys failed to follow their own internal rules and policies and procedures in respecting minorities; and the Attorneys filed, pursued, and continue to pursue completely racist and fraudulent Actions 2 & 3 after dismissing the equally fraudulent Action 1 after that Judge (Gianellli, J.) ruled against the Aaronson Defendants regarding their specious claims and utterly vapid Order to Show Cause.

504. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against the Deos on the basis of their race and national origin in violation of the United States Constitution.

505. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against the Deos on the basis of

153

their race and national origin in violation of the 1964 Civil Rights Act, as amended.

506. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against the Deos on the basis of their race and national origin in violation of Title VI of the 1964 Civil Rights Act, as amended, by discriminating against the Plaintiffs by 1) by excluding the Plaintiffs, denying the Plaintiffs from participation in, denying the Plaintiffs the benefits of, and subjecting the Plaintiffs to discrimination under one or more programs and/or activities receiving Federal financial assistance including, but not limited to, all programs involving lending and/or banking with and for minorities; and 2) by excluding the Plaintiffs, denying the Plaintiffs from participation in, denying the Plaintiffs the benefits of, and subjecting the Plaintiffs to discrimination under one or more programs and/or activities receiving Federal financial assistance including, but not limited to, all programs involving Pandemic Relief Funds ("PPP") that should have been given to the Plaintiffs but which were instead wrongfully diverted and converted into monies for the Defendants and their families.

507. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against the Deos on the basis of their race and national origin in violation of the Due Process and Equal Protection Clauses of the United States Constitution.

508. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against and deprived the Deos of

154

their rights and property on the basis of 1) their race and national origin, and 2) in the absence of any legal ruling/law of the land or appropriate judgment of their peers in violation of the New York State Constitution, Article I, section 1.

509. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against and deprived the Deos of their rights and property in the absence of Due Process in violation of the New York State Constitution, Article I, section 6.

510. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against and deprived the Deos of their rights and property in violation of the equal protection clause of the New York State Constitution, Article I, section 11.

511. At all times relevant hereto, and by the within and other acts and omissions, the Defendants discriminated against and deprived the Deos of their rights and property on the basis of their race and in violation of their civil rights under the New York State Constitution, Article I, section 11.

512. At all times relevant hereto, the Defendants effectively subjected the Deos to involuntary servitude on the basis of their race and in violation of their civil rights under the United State Constitution, Thirteenth Amendment.

513. The Defendants actions and omissions set forth herein that violated the Deos' State and Federal Constitutional Rights were, at all relevant times, intentional, knowing, egregious, outrageous, and the direct and proximate cause of the Deos' personal harms and loss of property set forth herein.

155

WHEREFORE, by the within and other acts and omissions, the Defendants have violated the Plaintiffs' Constitutional Rights as set forth in the United State Constitution and the State of New York Constitution by denying the Plaintiffs' rights to 1) Due Process; 2) Equal Protection under law; 3) be free from discrimination on the basis of their race and national origin; 4) be free from the wrongful taking of their property; and 5) be free from involuntary servitude.  These Constitutional and Civil Rights violations have harmed and continue to harm the Plaintiffs in an on-going basis and continually; These Constitutional and Civil Rights violations are the direct and proximate cause of the Plaintiffs' harm stemming from such violations at all times relevant hereto; such Constitutional and Civil Rights violations have caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just.  Plaintiffs hereby demand a trial by jury on all counts and for all damages so triable.

<u>COUNT X:  CIVIL CONSPIRACY TO DEFRAUD, FRAUD, AND<br>FRAUDULENT CONCEALMENT BY ALL DEFENDANTS</u>

514.  Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

156

515. At all times relevant hereto since November 2017, the Deos were, are, and remain the owners/sole members/sole stockholders of NorthShore.

516. At all times relevant hereto since February 2021, the Deos were, are, and remain the owners/sole members/sole stockholders of 189 Sunrise.

517. The Deos formed NorthShore, obtained its EIN tax identification number, obtained the corporate book for NorthShore, opened the corporate bank accounts with Chase, and entered into the lease where NorthShore operated at 180 Michael Drive, Syosset, New York, during late 2017 and 2018 as set forth in Exhibits A, B, C, and U, hereto.

518. However, the Deos *never* transferred their ownership interests in NorthShore to anyone at any time for any reason nor for any amount of money or other consideration.

519. The Deos *never* executed any documents purporting to transfer their ownership interests in NorthShore to anyone at any time for any reason nor for any amount of money or other consideration.

520. At all times from the opening of NorthShore in 2018 through and including the day the Aaronson Defendants shuttered NorthShore in November 2022, NorthShore was solely operated by the Deos, albeit with the Aaronson Defendants in full control of the company's finances, which the Deos thought was acceptable given that the Aaronson Defendants were purportedly supplying one or more Floor Plans from their other dealerships.

521. Since the Deos always believed that the Floor Plans were somehow provided from one or more of the Aaronson Defendants' dealerships (notably

157

Baron Nissan, the Deos were always told), even in the face of total destruction of their companies, and without knowing the frauds that had been perpetrated upon them and their companies for years by the Aaronson Defendants in conspiracy with their co-Defendants herein, the Deos fully cooperated with the Aaronson Defendants and the Automobile Lenders herein in returning cars to the Aaronson Defendants after their companies were shuttered and ruined in November 2022; the Deos wrongfully believed, still, that the Floor Plans for NorthShore and 189 Sunrise were not their own company Floor Plans since the Aaronson Defendants lied so extensively about *everything* related to the ownership and operations of the two companies.

522. In fact, the Deos never fully understood the full extent of the frauds committed upon them until 2024, when Chase provided documents to the Deos in Action #2; the execution of those documents and transmittal of these transparently phony documents carelessly proves the full extent of the Aaronson's fraud (*see* Exhibit Q compared in all respects to Exhibits C and R).

523. The Deos purchased 189 Sunrise from the Aaronson Defendants during February 2021 and immediately entered into a lease for the operation of the business at 189 Sunrise Highway, Amityville, New York; Exhibit D proves the purchase of the corporation; Exhibit E proves that the Deos then entered into a lease for the Premises, which was at all times since known to the

158

Aaronson Defendants, who boldly and falsely claim otherwise in Actions #1 and #2 (Exhibits M and O).

524. The fraud committed by the Aaronson Defendants relating to 189 Sunrise is different than the fraud committed by the Aaronson Defendants with respect to NorthShore: With NorthShore, the Aaronson Defendants literally stole the corporation from the Deos before approving the tax returns in Exhibits G and H when it was no longer possible to continue the fraud by November 2022; with respect to 189 Sunrise, the Aaronson Defendants took the Deos money in February 2021, then did *nothing* else regarding the ownership transfer until approving the tax returns in Exhibits G and H.

525. On multiple occasions after the purchase of 189 Sunrise by the Deos (Exhibit D) and the Deos entering into a lease agreement with the owners of the property at 189 Sunrise Highway, Amityville, New York (Exhibit E), the Deos asked the Aaronson Defendants for 1) the software licenses/ agreements; 2) the DMV license; 3) closing documents; 4) the corporate book; and 5) tax documents, but were denied these documents and proofs each and every time that the Deos made their requests.

526. The Aaronson Defendants made repeated excuses for more than a year, always also threatened to shutter the businesses and pull all cars from the lots, but eventually, after non-stop requests from the Deos in the late summer of 2022, the Aaronson Defendants relented and allowed the Deos to prepare and file the tax returns for NorthShore and 189 Sunrise (*see* Exhibits G and H) as the first step in their exit strategy from 189 Sunrise and NorthShore.

159

527.   By and during November 2022, the Aaronson Defendants committed their biggest frauds ever with respect to 189 Sunrise and NorthShore: They shuttered the businesses and took everything from those businesses needed to operate including all customer files, all software, all money from the accounts, all automobiles, and all licenses.

528.   Undoubtedly upset, and upon learning that the accounts were cleaned out by the Aaronson Defendants (while illegally utilizing a dead man's electronic credentials), Anthony Deo complained to Josh Aaronson on the afternoon of November 18, 2022 that he, Deo, was going to go to the police if the money was not promptly returned; in response, Josh Aaronson signaled his intent to wipe out the Deos and their business interests; attached hereto as Exhibit W is a true and accurate copy of the threat that Josh Aaronson sent Anthony Deo as his response for getting caught stealing ("Anthony – unfortunately, this is about to get very ugly").

529.   Deo went to the police on the morning of November 19, 2022, at 9:30 a.m.; the police contacted Josh Aaronson that morning and informed him that he would be arrested for stealing that money if he, Josh Aaronson, did not immediately return the money to Anthony Deo, who had just obtained that money with his own personal guarantee and unrelated to the Aaronson Defendants in every way.

530.   But going to the police caused the Aaronson Defendants to then extend their fraud to the Courts: Immediately after the police forced the Aaronson Defendants to return the $735,000.00 Deo had just borrowed (that money is

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 70 of 96 PageID #: 173

*not* an issue herein since it was returned by the Aaronson Defendants then under threat of arrest; this theft is merely further evidence of the illegal lengths the Aaronson Defendants were willing to go to "get even" with the Deos for going to the police), the Aaronson Defendants commenced Action #1 as evidenced by Exhibits M and N hereto, actually claiming ownership of the two corporations *in Court filings as a fraud not only upon the Deos, but upon this Court as well, and utilizing this Court to shutter the Plaintiffs' businesses from the date they obtained their Order to Show Cause in December 2022 until this Court's Order was issued on June 15, 2023* (Exhibit N).

531.  Simply put, the Aaronson Defendants blatantly retaliated against the Deos for daring to stand up to them; the Aaronson Defendants were never going to allow that conduct from "their niggers."

532.  At all times relevant hereto, the Aaronson Defendants committed the within frauds in conspiracy with each Aaronson Defendant and each co-Defendant herein by various acts and omissions, some known and referenced herein, and undoubtedly some unknown at this time by the Plaintiffs due to the surreptitious, underhanded, deceitful, and fraudulent methods utilized by the Defendants in dealing with the Plaintiffs:  1) Josh Aaronson was the leader of the pack, and directed all fraudulent activity for the Defendants after the death of the original leader of the pack, David Baron; 2) Jory Baron and Ron Baron are in-laws through marriage with Josh Aaronson who, along with Raymond Phelan, Brian Chabrier, and Asad Khan, were partners in the

161

Aaronson illegal enterprises; these partners all knew and should have known of the frauds against the Deos and 189 Sunrise and NorthShore; these partners benefitted the most financially from the within frauds, notably the theft of all PPP monies from the Plaintiffs; 3) Marcello Sciarrino, Daniel Sullivan, Wendy Kwun, Iris Baron and the Estate of David Baron all benefitted from the frauds committed herein and assisted in not only the thefts of money from the Plaintiffs, but also assisted in stealing all documents from the corporate Plaintiffs and perpetuating lies to the Deos to assist their co-Aaronson Defendants in hiding the thefts from the Deos and misleading the Deos when confronted; Wendy Kwun in particular participated in the frauds involving tax returns, stealing all monies from NorthShore and 189 Sunrise, and the "approvals" attached hereto in Exhibit G; Iris Baron and the Estate of David Baron stole the monies advanced by the Deos to purchase Baron Nissan; 4) Baron Nissan, Island Auto Group, and the Aaronson Defendants other New York dealerships have all been utilized by the Aaronson Defendants as weapons in committing the within frauds. Specifically, these dealerships under the umbrella of Island Auto Group are worth one billion dollars or more ($1,000,000,000.00) and are wielded by the Aaronson Defendants to control the Professionals herein: Either the Professionals do what the Aaronson Defendants wanted done in fraudulently and intentionally ruining the Plaintiffs by and with forced ignorance of the Professionals, or the Aaronson Defendants will simply get some other Professional to take millions of dollars to do the Aaronson Defendants'

162

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 72 of 96 PageID #: 175

bidding; each of the Professionals did the Aaronson Defendants' dirty work in ruining the Plaintiffs and preventing the Plaintiffs from remaining in the automobile dealership business; 5) Likewise, even the Urrutia Defendants joined with the Aaronson Defendants and all of the Professionals in making false and fraudulent claims against the Plaintiffs herein in Actions 2 and 3 (and committing frauds upon each of those two Courts, including this Court), and also in defrauding the Deos out of their investment in Superb, and utilizing the Automobile Lenders as weapons to further ruin the Plaintiffs in pulling automobiles and recalling automobiles from the lots of Superb, 189 Sunrise and NorthShore; and 6) Chase absolutely intentionally ignored multiple red flags of the Aaronson Defendants illegal acts and omissions, intentionally refused to consider the Deos' claims or documents when presented by the Deos, knowingly and intentionally permitted the thefts of all corporate Plaintiffs' monies from 189 Sunrise's and NorthShore's accounts, and at the Aaronson Defendants' direction Chase locked the Plaintiffs out of their own accounts to this day.

533. The Defendants fully planned to steal from the Plaintiffs and ruin the Plaintiffs either to obtain money directly and wrongfully from those Plaintiffs or, in the case of the Professionals, to continue to be paid lucratively by the Urrutia and Aaronson Defendants by continuing to do those Defendants' bidding and/or feign ignorance of those Defendants illegalities as set forth herein.

163

Case 2:24-cv-06903-JMW   Document 1-3   Filed 09/30/24   Page 73 of 96 PageID #: 176

534. At all times relevant hereto, and upon information and belief including the way the Urrutia Defendants acted after the Deos invested in Superb in late 2022, the Urrutia Defendants lead by Urrutia himself fraudulently induced the Deos into making the investment that the Urrutia Defendants never intended to let the Deos benefit from their bargain in making the investment.

535. Indeed, just weeks before the Lock-Out, the Deos were approached by the Urrutia Defendants by and through Urrutia and were asked for even more money; if they had been able to give Urrutia more money at that time, that money would now be gone, too.

536. At all times relevant hereto, the Defendants acted by Agreement and with full knowledge/intentionally in conspiring to defraud the Plaintiffs and then each and every Defendant herein took one or more affirmative, deliberate acts to in fact defraud the Plaintiffs.

537. At all times relevant hereto, the Defendants explicitly committed to injuring and defrauding the Plaintiffs, who were, in fact, defrauded by the within and other fraudulent acts by these Defendants.

538. At all times relevant hereto, the Defendants acted with criminal intent to defraud the Plaintiffs and ruin the corporate Plaintiffs' business and the Deos' lives; the Defendants were successful in all respects in executing their planned fraud and ruination of the corporate Plaintiffs and the Deos' lives and livelihood.

539. At all times relevant hereto, the Deos worked at and for 189 Sunrise and NorthShore; Sara Deo performed various duties in running these two

164

FILED: NASSAU COUNTY CLERK 09/04/2024 10:42 AM    INDEX NO. 615683/2024

NYSCEF DOC. NO. 1    Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 74 of 96 PageID #: 177    RECEIVED NYSCEF: 09/04/2024

businesses including but not limited to developing and implementing marketing strategies and leads for new customers; Anthony Deo ran the day to day operations of 189 Sunrise and NorthShore and performed a variety of tasks therefor.

540. At all times relevant hereto, the Defendants in carrying out their conspiracy to defraud the Plaintiffs not only stole the corporate Plaintiffs and eventually joined in illegally shuttering both businesses, but also ruined the Plaintiffs' livelihood and took away their income and jobs working and running their own businesses.

541. At all times relevant hereto, the Defendants knew that they were committing wrongs, but each continued to carry out the scheme through and including overt acts and assistance with or active participation in Actions 2 & 3.

542. The conspiracy and fraud are on-going at all times relevant hereto, and includes on-going failures and refusals to return documents, bank accounts, corporate records, customer lists, Floor Plans, monies paid by the Plaintiffs for various matters including the purchase of Superb and Baron Nissan; customer deal jackets and their contents, Floor Plans and licenses, all belonging to the Plaintiffs.

543. The within and other frauds and conspiracies to defraud the Plaintiffs have devastated the Plaintiffs and their businesses and caused real, gigantic, and long-lasting/on-going harm including but not limited to the complete ruination of the businesses and the Deos personal lives, including the loss of

165

hundreds of millions of dollars, the Deos' home being foreclosed upon imminently, their temporary residence/landlord evicting the Deos, the ruination of the Plaintiffs and their reputations in the automobile industry, the loss of the Deos' jobs and the shuttering of the corporate Plaintiffs.

544. Each of these Defendants over time, including the corporate Defendants by and through their various Representatives and/or co-Defendants, made multiple materially false representations to the Plaintiffs; the Plaintiffs relied and reasonably relied thereon; the representations were at all relevant times false, knowingly false, and intended to carry out the within frauds, thefts, and embezzlements; and the false representations as relied upon and reasonably relied upon by the Plaintiffs caused immeasurable damages to the Plaintiffs.

545. At all times relevant hereto, the Defendants had and maintained various duties to reveal to the Plaintiffs the within frauds and concealments, but instead knowingly and intentionally refused to reveal the within to the Plaintiffs, further damaging and increasing the damages suffered by the Plaintiffs thereby.

546. In every way possible, the within conspiracy to commit fraud, actual frauds committed, and the fraudulent concealment thereof was the direct and proximate cause of the Plaintiffs' harms.

547. At all times relevant hereto, the Defendants acted jointly and severally in committing the within frauds, fraudulent concealments, thefts, and embezzlements.

166

548. At all times relevant hereto, the Defendants acted in conspiracy in committing the within frauds, fraudulent concealments, thefts, and embezzlements.

549. The Defendants further acted in conspiracy to conduct Actions #1, #2, and #3 in bald faced attempts to (again) utilize the power of their staggering financial might as collective Billionaires to force the Plaintiffs to acquiesce and give up the within claims, just as these Defendants conspired to defraud these Plaintiffs and force them to acquiesce to the Defendants' superior positions to the Plaintiffs at all times relevant hereto.

550. At all times relevant hereto, the Defendants knowingly and intentionally possessed common objectives in carrying out the within crimes and civil wrongdoings: The Defendants were each driven by greed, each profited either directly from the within crimes or, as with the Professionals, indirectly by keeping the Aaronson Defendants' and Urrutia Defendants' lucrative accounts. The Urrutia Defendants and Aaronson Defendants were, at all times relevant hereto, also driven not just by greed, but also in eliminating the Plaintiffs as competitors in the automobile dealership industry.

551. At all times relevant hereto, the corporate co-Defendants including, but not limited to the Professionals and all of their Representatives, acted with at least reckless indifference to the frauds, fraudulent concealments, and conspiracies to commit frauds set forth herein as perpetrated by the Aaronson Defendants and the Urrutia Defendants.

167

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 77 of 96 PageID #: 180

WHEREFORE, by the within and other acts and omissions, the Defendants acted in conspiracy to commit fraud against the Plaintiffs, did commit fraud against the Plaintiffs, and did engage in fraudulent concealment against the Plaintiffs; these Defendants each continue to be unjustly enriched by the within conspiracy to defraud, actual frauds committed, and fraudulent concealments; the harms caused to the Plaintiffs are the direct and proximate result of these Defendants' wrongful conspiracy to commit fraud, actual frauds committed, and fraudulent concealments thereof; such frauds and their harms to the Plaintiffs are on-going, caused and continue to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts/damages so triable.

### COUNT XI: UNJUST ENRICHMENT AGAINST ALL DEFENDANTS EXCEPT THE URRUTIA DEFENDANTS

552. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

553. There are only three (3) EEE Contracts existing between any Plaintiffs and any Defendants herein: 1) whatever documents were executed between Chase and Sara Deo upon the opening of the account(s) for NorthShore

168

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 78 of 96 PageID #: 181

(these documents were stolen by the Aaronson Defendants when they emptied and shuttered NorthShore at the end November 2022); 2) the contracts attached hereto as Exhibits I-1 and I-2 by and between Superb, Urrutia, and Anthony Deo; and 3) the Baron Nissan Purchase contract attached hereto as Exhibit F.

554.    Since the Defendants deny that Exhibit F is fully executed (and as set forth *supra* and *infra,* Plaintiffs allege that Exhibit F *is* fully executed or, in the alternative, at least partially executed sufficient to have stepped into the then shoes of David Baron at Baron Nissan), then for all purposes of unjust enrichment, the obligations and money paid by the Plaintiffs for Baron Nissan are also plead in the alternative as unjust enrichment by Baron Nissan and the Aaronson Defendants (and since the Defendants deny that Exhibit F is fully executed, then the money paid therefore is plead in the alternative as unjust enrichment by Baron Nissan and the Aaronson Defendants, especially the Estate of David Baron and his surviving spouse, Defendant Iris Baron).

555.    All other agreements set forth in the Complaint are implied, only, as there are no valid, express, explicit, and executed contracts (hereinafter, "EEE Contracts") between the Defendants and the Plaintiffs as alleged by the Plaintiffs herein other than the three (3) in this paragraph and also set forth previously (*supra*) in this Complaint.

556.   The implied contracts referenced herein by and between parties hereto include, but are not limited to, the following:[3] All contracts and agreements 1) by and between the Lenders and 189 Sunrise and NorthShore (the Deos were the owners/members/stockholders thereof but are not a part of whatever contracts are claimed by the Lenders to exist); 2) by and between the Attorneys and 189 Sunrise and NorthShore (*Id.*); 3) by and between the Accountants and 189 Sunrise and NorthShore (*Id.*); and 4) by and between the Aaronson Defendants and 189 Sunrise and NorthShore (because the Aaronson Defendants carefully and intentionally avoided reducing agreements to writing in order to conceal their true acts and intentions in stealing the corporations at issue and the assets thereof).  It is these relationships, along with the Baron Nissan contract attached hereto as Exhibit F (this unjust enrichment allegation regarding Baron Nissan is hereby specifically plead in the alternative, only, if the contract attached hereto is ultimately deemed a nullity by the Court as the Plaintiffs prefer to have that contract enforced, partially or fully) that are specifically the subject of this Count.

---

[3] While it remains the Plaintiffs' position that the implied contracts referenced herein are enforceable, the elements of unjust enrichment typically include a finding of no explicit contract in order to proceed under the quasi-contractual theory of unjust enrichment. The determination of whether a quasi-contractual claim such as unjust enrichment should be dismissed as duplicative looks only to whether there is "a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." *Clark-Fitzpatrick. Inc. v Long Is. R. Co.*, 70 NY2d 382, 389 [1987]; *see also Georgia Malone & Co., Inc. v Rieder*, 86 A D3d 406, 408 [1st Dept 2011] noting that "unjust enrichment is a quasi-contract theory of recovery" and not whether plaintiff may recover under that contract; *see also Pressley v. Ford Models, Inc.*, Index No.: 653001/2016 New York Supreme Court, Sherwood, J., "where a valid and enforceable contract would ordinarily preclude quasi-contractual recovery but a bona fide dispute exists as to the existence or applicability of a contract, the plaintiff may proceed on both contractual and quasi contract theories" and the Plaintiffs herein are doing just that.

170

Case 2:24-cv-06903-JMW   Document 1-3   Filed 09/30/24   Page 80 of 96 PageID #: 183

557. At all times relevant hereto, the Lenders, Accountants, and Attorneys knew or should have known of the frauds, corporate thefts, and embezzlements set forth herein and perpetrated by the Urrutia Defendants and the Aaronson Defendants against the Plaintiffs.

558. It is specifically the position of the Plaintiffs herein that the Lenders, Accountants, and Attorneys had to know (and therefore, were a part of the conspiracy, at a bare minimum through intentional ignorance, but certainly done for the reason of keeping their Cozy Relationships with the Billionaire Aaronson Defendants and the Urrutia Defendants) of the frauds, corporate thefts, and embezzlements set forth herein and perpetrated by the Urrutia Defendants and the Aaronson Defendants against the Plaintiffs.

559. However, there is no denying that the contracts purportedly entered into between the Lenders, Accountants, and Attorneys (except the EEE Contracts) with and for the corporate Plaintiffs were *not* valid contracts and cannot be valid contracts since at all relevant times, those contracts were not 1) seen by the Deos; 2) reviewed by the Deos; 3) given to the Deos at any time prior to or since "execution" of the contracts by the Aaronson Defendants and/or Urrutia Defendants; 4) reviewed by any Professional for the Deos; and/or 5) executed by the Deos.

560. Thus, the services performed/provided by the Lenders, Accountants, and Attorneys were provided in the absence of any valid written (EEE) contracts and are thus the subject of Unjust Enrichment claims hereunder.

171

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 81 of 96 PageID #: 184

561. Likewise, there were no valid written (EEE) contracts by and between the Aaronson Defendants and the Plaintiffs at any time relevant hereto, and thus, the monies made by the Aaronson Defendants in raping the corporate Plaintiffs are all also subject to the within Unjust Enrichment claims in the alternative to the within contract claims; *see fn* 3, *supra*.

562. Likewise, given that the Defendants claim that the Baron Nissan contract/purchase is not complete (and the Plaintiffs claim that it is, at least with respect to David Baron's former interest in that company, if not fully completed), the claims against Baron Nissan, the Aaronson Defendants' various interests therein, and Iris Baron/the Estate of David Baron are also subject to the within Unjust Enrichment claims as an alternative to the primary Declaratory Judgment and Constructive Trust claims brought by the Plaintiffs in Count XII, *infra*.

563. At all times relevant hereto, the Defendants acted in conspiracy to unjustly enrich themselves at the Plaintiffs' expense, including, but not limited to, the following:

a) With the full cooperation of and in conspiracy with the Professionals and to satisfy all of the Defendants' limitless greed, the Aaronson Defendants embezzled and defrauded the corporate Plaintiffs of millions of dollars;

b) With the full cooperation of and in conspiracy with their own Professionals and to satisfy all of the Defendants' limitless greed, the Urrutia Defendants wrongfully and intentionally ruined, closed, and embezzled millions of dollars from Superb at the expense of Anthony

172

INDEX NO. 615683/2024

RECEIVED NYSCEF: 09/04/2024

Deo in a (failed) attempt to save other businesses belonging to the Urrutia Defendants;

c) With the full cooperation of and in conspiracy with the Aaronson Defendants and Urrutia Defendants and to satisfy all of the Defendants' limitless greed, the Professionals named herein unjustly enriched themselves during the operation of and during and through the shuttering and ruination of Superb, 189 Sunrise, and NorthShore, all at the expense of and ruination of the Plaintiffs herein.

564. By and through the within and other acts and omissions, these Defendants unjustly enriched themselves each totaling unknown (to the Plaintiffs) millions of dollars in the absence of valid contracts with the Plaintiffs.

565. By the through the within and other acts and omissions, the within Defendants participated in the conspiracy to ruin and defraud the Plaintiffs, failed and refused to listen to the Deos pleas for help, and then unjustly enriched themselves and benefitted by millions of dollars wrongfully and unjustly taken from these Plaintiffs.

566. By and through the within and other acts and omissions, the within Defendants were unjustly enriched, at the Plaintiffs' expense, in ways set forth herein that it is against equity and good conscience to permit these Defendants from retaining the millions of dollars unjustly taken from the Plaintiffs that is sought to be recovered herein.

567. At various times relevant hereto, the Plaintiffs and the Defendants conducted business together in close business relationships; the Defendants

173

relied upon the on-going business relationships to gain the Plaintiffs' trust and induce the Plaintiffs into vulnerable positions that these extremely sophisticated but ill meaning Defendants took advantage of in all respects to unjustly enrich themselves by the within frauds and embezzlements.

568.   At all times relevant hereto, the Plaintiffs reasonably relied upon the Plaintiffs acts and omissions mainly because it still appeared on the surface that the Deos were still the owner/operators of Superb (partially, but fully put into operational control by the Urrutia Defendants), 189 Sunrise, and NorthShore, and since these Defendants hid evidence of the wrongdoing and kept all evidence of the wrongdoings from the Plaintiffs.

569.   It is particularly unjust that the Aaronson Defendants took the money from the Plaintiffs as set forth for the purchase of 189 Sunrise set forth in Exhibit D hereto, then wrongfully ruined that business and stole its money and all documents and software and vehicles needed to operate that business, but have now obtained and utilize that very same address (189 Sunrise Highway, Amityville, New York) for their own business today.  That business and its ownership/operation by the Aaronson Defendants (who may be doing to another third party in that business what they did already did as set forth herein to the Plaintiffs regarding the withholding of contracts and other documentation while proceeding to conduct business with that third party in bad faith and unfair dealing in all respects) constitutes further unjust enrichment by the Aaronson Defendants as they should not even have that

174

space that they forced the Plaintiffs out of before opening a new dealership on the very same lot as the Plaintiffs.

570. At the heart of this case is a massive conspiracy by the Defendants acting at all times herein in an on-going conspiracy to unjustly enrich themselves by and through stunning greed, outrageous fraud, and shocking thefts and embezzlements.

571. This Count is brought by all Plaintiffs against all Defendants except the Urrutia Defendants, with whom the relationship is covered by an explicit contract.

WHEREFORE, by the within and other acts and omissions, the Aaronson Defendants and the Professionals, including, but not limited to, the Accountants, Lenders, and Attorneys, have been and continue to be unjustly enriched; such unjust enrichment is the direct and proximate cause of the Plaintiffs' harm stemming from such unjust enrichment at all times relevant hereto; such unjust enrichment caused and continues to cause actual damages, nominal damages, and consequential damages to the Plaintiffs in an amount to be determined at trial, but not less than two hundred million dollars ($200,000,000.00), and demand is herein made therefore; Demand is herein made for exemplary and punitive damages in an amount to be determined at trial, but not less than one billion dollars ($1,000,000,000.00), and demand is herein made therefore; Demand is herein made for all attorney fees, all costs, interest in the maximum amount allowed by law, and such other damages and amounts as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts/damages so triable.

175

## COUNT XII: DECLARATORY JUDGMENT, CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF AGAINST THE AARONSON DEFENDANTS

572. Plaintiffs restate and reallege each of the preceding paragraphs as if specifically re-written here.

573. Attached hereto and incorporated herein by reference are the Exhibits to this Complaint.

574. Specifically, Exhibit F is the subject matter of this Count by and for the Deos.

575. The Deos advanced hundreds of thousands of dollars to purchase and lease the business and space of the business known as Baron Nissan.

576. The Baron Nissan deal/contract was executed during May 2021, just days before David Baron died.

577. It is the specific position of the Plaintiffs/Deos herein that the contract attached hereto as Exhibit F is, in all respects, sufficiently executed with consideration paid that the Deos are the rightful owners of Baron Nissan since May 2021.

578. In the alternative, if for any reason the Court disagrees that the contract attached hereto is sufficiently executed for the Deos to be the owners of Baron Nissan since May 2021, then it is the position of the Plaintiffs/Deos herein that the contract is sufficiently executed such that the Deos then step into the position of David Baron as of May 2021 at Baron Nissan.

579. At all times relevant hereto, the Deos paid sufficient and actual consideration to complete the purchase of Baron Nissan as they actually paid more than two hundred seventy-five thousand dollars ($275,000.00)

176

therefore, *without any of those sums reimbursed to date.* To be clear, at all times relevant hereto, the Aaronson Defendants have kept the money paid by the Deos for Baron Nissan while simultaneously/conveniently (for the Aaronson Defendants) denying that the contract was complete.

580. Josh Aaronson relayed the refusal of the Aaronson Defendants to live up to or to "complete" (Aaronson's word) that contract during or about the fall of 2021, but definitely before leaving and ruining 189 Sunrise and NorthShore during November 2022.

581. The status of the contract attached hereto as Exhibit F gives rise to a *bona fide* justiciable and substantial controversy between the Aaronson Defendants and the Plaintiffs/Deos over the Deos' rightful ownership interests in Baron Nissan; at all times relevant hereto, the Deos advanced their own monies for that purchase and have, to date, been denied the fruits of their bargain by the Aaronson Defendants, who nonetheless kept that money without recourse for the Plaintiffs except by and through this Count.

582. With respect to Exhibit F, the Aaronson Defendants on one side and the Plaintiffs/Deos on the other side of the dispute leaves the parties with adverse legal interests as to the present and prospective obligations under that contract.

583. Thus, declaratory judgment serves a useful and necessary purpose in clarifying or settling the legal issues and justiciable controversy stemming from that contract, and would finalize the controversy and offer relief from the uncertainty caused by the Aaronson Defendants' actions and omissions

177

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 87 of 96 PageID #: 190

since the contract was executed and monies were obtained and paid by the Deos therefor.

584. Specifically, the Deos demand that this Court determine and Order that 1) the Deos and/or Anthony Deo are/is the owner(s)/member(s)/stockholder(s) of Baron Nissan in all respects since May 2021; or, in the alternative, that 2) the Deos and/or Anthony Deo at least hold(s) the ownership position of David Baron with Baron Nissan as of and since the date of Exhibit F in May 2021.

585. Plaintiffs specifically allege that the nature of the within wrongdoing by the Aaronson Defendants is a breach of the contract attached hereto as Exhibit F, or, in the alternative, fraud with respect to denying the completion or partial completion thereof.

586. In the alternative, Plaintiffs demand that this Court impose a constructive trust on and for the operation of Baron Nissan moving forward so as to protect the Plaintiffs'/Deos' interests therein.

587. At all times relevant hereto, the Aaronson Defendants were closely involved in a business relationship with the Deos such that there was a confidential, close, and arguably fiduciary relationship between the parties.

588. At all times relevant hereto, the business known as Baron Nissan by and through its owners/members/stockholders promised the Deos that they were buying the corporation as set forth in the contract attached hereto as Exhibit F and known as Baron Nissan.

178

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 88 of 96 PageID #: 191

589.    At all times relevant hereto, that business and its assets/stock were transferred to the Deos by and through the contract attached as Exhibit F, yet the Aaronson Defendants have blocked and prevented the Deos from taking and securing their interests in Baron Nissan ever since the execution of Exhibit F; whether David Baron was acting in good faith or not (and committing yet another fraud against the Deos without intending to complete the contract himself), the Deos nonetheless relied upon the documentation presented hereto as exhibit F in paying real and valuable consideration in excess of two hundred seventy five thousand dollars ($275,000.00) therefor, the Deos reasonably relied upon the representations in the attached documentation as real and in good faith, and it is unconscionable and against public policy to not enforce that contract now/herein.

590.    At all times relevant hereto, the business known as Baron Nissan was transferred to the Deos by the attached Exhibit F, the Deos acted in good faith by executing that contract, the Deos believed that the Aaronson Defendants acted in good faith in executing that contract, and the Aaronson Defendants certainly took and kept the valuable consideration paid therefore by the Deos.

591.    Accordingly, the Deos demand that this Court clarify the rights and obligations of the parties pursuant to the contract, determine and Order that the Deos/Anthony Deo are the full owners of Baron Nissan or, in the alternative, determine and Order that the Deos/Anthony Deo stand in the

179

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 89 of 96 PageID #: 192

shoes of David Baron with respect to Baron Nissan as of the date of Exhibit F hereto.

592. If the Court cannot or does not declare that the Deos are fully or partially the owners/members/stockholders of Baron Nissan, then in the alternative, the Plaintiffs demand that the Court impose a constructive trust over Baron Nissan during the pendency of this action to prevent and enjoin the Aaronson Defendants from committing fraud, waste, or transfer of anyone's interests therein.

593. The Aaronson Defendants have otherwise been unjustly enriched by keeping the money paid by the Deos for Baron Nissan, the Deos should get the benefit of their bargain that has already been paid for in full.

594. In addition, Plaintiffs demand that a TRO and then a permanent injunction be issued and Ordered by this Court to protect the public from the Aaronson Defendants and their abject and outrageous greed and frauds exhibited throughout this Complaint as proven by the Exhibits hereto (and of course, there are more documents being kept from the Plaintiffs by the Defendants at all relevant times hereto).

595. Specifically, Plaintiffs demand that the Court enter an injunction against each and every Aaronson Defendant herein 1) preventing each Aaronson Defendant from ever working in the automobile industry in the State of New York ever again; 2) preventing each Aaronson Defendant from holding or obtaining any New York State Department of Motor Vehicles license to operate or own any automobile dealership in the State of New York ever

180

again; and 3) preventing each Aaronson Defendant from ever benefitting from an automobile dealership in the State of New York ever again.

596. The frauds committed and lead by the Aaronson Defendants set forth herein are not even completely set forth given the extent that all of the Defendants have gone to avoid speaking with or giving the Plaintiffs any documents relating hereto, and especially since the Aaronson Defendants wrongfully and in full conspiracy with their Professionals 1) took all business documents in shuttering 189 Sunrise and NorthShore; 2) locked the Plaintiffs out of their own bank accounts during the shuttering of 189 Sunrise and NorthShore; 3) locked the Plaintiffs out of their own software during the shuttering of 189 Sunrise and NorthShore; 4) withheld to date all documents created by the Professionals on behalf of the corporate Plaintiffs; 5) convinced the Lenders to cease doing business with the Plaintiffs; and 6) turned in to the NYSDMV the licenses necessary for the operation of 189 Sunrise and NorthShore despite the Aaronson Defendants desire to continue operating automobile dealerships at both locations (and, in fact, they are now operating such a dealership from one of those locations, Stream Auto Outlet from the location of 189 Sunrise Highway, Amityville, New York).

597. Simply put, the Aaronson Defendants are a danger to the public in their reckless, criminal, frauds perpetrated herein and previously throughout their criminal activities; the Plaintiffs have no documents to serve or service any customer of 189 Sunrise or NorthShore; the Plaintiffs do not even possess

181

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 91 of 96 PageID #: 194

their customer lists as they were entirely stolen by these Aaronson Defendants.

598.    At all times relevant hereto the Aaronson Defendants have caused and continue to cause irreparable, egregious harm to the Plaintiffs; the Plaintiffs and the public will be further harmed by not granting the declaratory and injunctive relief demanded herein.

599.    Accordingly, Plaintiffs also demand that this Court immediately determine and Order that the Deos are the rightful owners/members/stockholders of 189 Sunrise since February 2021 and NorthShore since its inception as a part of the imminent application/Order to Show Cause anticipated to be served and made herein upon the completion of service of this Complaint.

WHEREFORE, the Plaintiffs hereby demand that this Court determine, declare, and Order first in a TRO and then in a permanent injunction 1) that the Deos are the rightful owners of 189 Sunrise (since February 2021) and NorthShore since its inception; 2) that the Deos/Anthony Deo did fully purchase the business known as Baron Nissan; or, in the alternative, 2) that the Deos/Anthony Deo step into the shoes/interests of David Baron as of the date of Exhibit F hereto; if this Court fails or refuses to make an immediate determination via the Motion/Order to Show Cause expected to accompany herewith that the Deos/Anthony Deo is the full/partial owner of Baron Nissan, then in the alternative the Plaintiffs demand that this Court 1) deny any requests without prejudice to renew upon the completion of discovery; and 2) impose a constructive trust upon Baron Nissan on behalf of the Deos/Anthony Deo preventing and enjoining any fraud, waste or transfer of any of the business's assets other than in the normal course of business during

182

the pendency of the within litigation. Demand is also herein made for a TRO first, then a permanent injunction 1) forever banning the Aaronson Defendants from owning or operating or working in the automobile industry in the State of New York as a danger to the public interest; 2) Ordering the NYSDMV to immediately and permanently revoke any license obtained from the NYSDMV for the purpose of owning or operating any automobile dealership in the State of New York in the name of any Aaronson Defendant for any of their corporations. Demand is also herein made for such other relief as this Court and/or the jury at trial may determine is necessary and just. Plaintiffs hereby demand a trial by jury on all counts/damages so triable.

Dated: 9/4/24

Respectfully submitted,

Plaintiffs, by counsel,

Harry Thomasson, Esq.
3280 Sunrise Highway
Box 112
Wantagh, NY 11793
Tel. 516-557-5459
hrtatty@verizon.net

183

Case 2:24-cv-06903-JMW Document 1-3 Filed 09/30/24 Page 93 of 96 PageID #: 196

CERTIFICATION PURSUANT TO
22 NYCRR 130-1.1

I hereby certify pursuant to 22 NYCRR § 130-1.1-a that, to the best of my

knowledge, information and belief, formed after an inquiry reasonable under the

circumstances, the presentation of the instant papers and the contentions therein are not

frivolous as defined in 22 NYCRR § 130-1.1(c):

Dated: 9/4/24

HARRY R. THOMASSON
3280 Sunrise Highway
Box 112
Wantagh, New York, 11793
(516) 557-5459

184

FILED: NASSAU COUNTY CLERK 09/04/2024 10:42 AM
NYSCEF DOC. NO. 1

## VERIFICATION

STATE OF NEW YORK )
                             ) ss.:
COUNTY OF NASSAU   )

**ANTHONY DEO,** being duly sworn, deposes and says:

I have read the foregoing Verified Complaint, and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are information provided to me from or contained in the file.  I execute this Verification individually and as a member/stockholder on behalf of the Corporate co-Plaintiffs.

_____
ANTHONY DEO

Sworn to before me this
4th day of September 2024.

_____
Notary Public

HARRY ROGER THOMASSON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02TH6068549
Qualified in Nassau County
My Commission Expires ___2/9/26___

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 95 of 96 PageID #: 198

## VERIFICATION

STATE OF NEW YORK )
                 ) ss.:
COUNTY OF NASSAU )


**SARA DEO,** being duly sworn, deposes and says:

I have read the foregoing Verified Complaint, and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are information provided to me from or contained in the file. I execute this Verification individually and as a member/stockholder on behalf of the Corporate co-Plaintiffs.


_____
SARA DEO


Sworn to before me this
4th day of September 2024.


_____
Notary Public


HARRY ROGER THOMASSON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02TH6068549
Qualified in Nassau County
My Commission Expires ___2/9/26___

Case 2:24-cv-06903-JMW    Document 1-3    Filed 09/30/24    Page 96 of 96 PageID #: 199

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

--------------------------------------------------------------------------X

ANTHONY DEO, *et al.*,                                    Index No.

                              Plaintiffs,

        -against-

RON BARON, *et al.*,

                              Defendants.

--------------------------------------------------------------------------X

### SUMMONS AND VERIFIED COMPLAINT

Plaintiffs' Attorney:

Harry Thomasson, Esq.
3280 Sunrise Highway
Box 112
Wantagh, NY  11793
Tel. 516-557-5459
hrtatty@verizon.net

Lead Defendant:

RON BARON
98 Goose Hill Rd.
Cold Spring Harbor, NY 11724

And

10 Bancroft Ln.
Kings Point, NY 11024

Dated:  Wantagh, New York                     Plaintiffs, by Counsel,
        September 4, 2024



                                              Harry Thomasson, Esq.