# Harry R. Thomasson, Esq.

3280 Sunrise Highway, Box 112  
Wantagh, New York 11793  
Tel. 516-557-5459  
hrtatty@verizon.net

Admitted:  
Massachusetts  
New York

October 30, 2024

VIA ECF ONLY

Honorable James M. Wicks  
U.S. Federal District Court  
Eastern District of New York  
100 Federal Plaza  
Central Islip, NY 11722

      Re: *Anthony Deo, et al., v. Ronald Baron, et al.*  
           Case No. 2:24-cv-06903 (JW)

Your Honor:

    Please be reminded that this office represents Anthony Deo, Sara Deo, 189 Sunrise Hwy Auto LLC (hereinafter "189 Sunrise") and NorthShore Motor Leasing LLC (hereinafter "NorthShore"), plaintiffs in the above referenced action (the "Deo Plaintiffs").

    When the Court has the opportunity to read and review the Complaint and twenty-six (26) Exhibits originally filed in the Nassau County (New York) Supreme Court but removed hereto by the Defendants in the instant case, the Court will find that the Defendants are divided into categories for ease of purpose: 1) The Aaronson Defendants; 2) the Urrutia Defendants; 3) the Accountants; 4) the Lenders; and 5) the Attorneys. The New York State Department of Motor Vehicles is a necessary party (only), for now; there are no substantive claims against the NYSDMV, and discussions are ongoing that may lead to the NYSDMV being Stipulated out of the case. We hereby expressly ask this Court to read said Complaint and twenty-six (26) Exhibits at the Court's earliest convenience, as we believe that we have proven beyond any doubt in that Complaint/Exhibits that Anthony Deo and Sara Deo are the sole owners, stockholders, and/or members of 189 Sunrise since February 2021, and NorthShore since its incorporation in November 2017.

    On Thursday, October 24, 2024, the Deo Plaintiffs and I learned for the first time that there is a Federal Grand Jury convened and investigating the Urrutia and Aaronson groups' claims against the Deo group. Details of that investigation/grand jury proceeding are unknown to me and my clients, but it is safe to say that my clients and I (at my clients' directions) have made the Department of Justice aware of the claims in this case, as well as in the NMAC case versus Urrutia in the Connecticut action previously brought to this Court's attention by Brian Levine.

Please be aware that the Complaint brought in this action is the result of a 21 month investigation I started in December, 2022, and that Complaint does not contain ***any*** information or allegations for which I possess first-hand knowledge. I was on the periphery of what took place between the parties in these actions, handled little more than typical Consumer Affairs type complaints involving single car purchases, and knew ***nothing*** of what was taking place in the three dealerships at issue (Superb, 189 Sunrise, and NorthShore) prior to their closures. Given the breadth of work necessary to complete the instant Complaint at issue *after* discovering everything that went into that Complaint took a lot of time and effort, and it simply was not possible to complete that work prior to the filing of that Complaint last month, but it also does not mean that I have first-hand knowledge of what the Complaint sets forth, because I have no first-hand knowledge of what our Complaint sets forth.

Of course the Defendants in this action want this Court (and/or a Senior Judge, *see, infra,* the discussion regarding Magistrate consent) to make immediate, impactful decisions regarding Stays, Consolidation, and Dismissal: The Defendants have at least 99% of the relevant documentation rightfully belonging to my clients. The Defendants in this case have all or almost all of the automobiles, dealer jackets, bank records (including the vitally important positive pay/token/texting records that prove beyond any doubt that these Defendants approved and/or conducted every financial transaction conducted at the three dealerships at issue and therefore, their claims of theft by my clients have zero possibility/credibility/truth), dealership videos, software, computers, and other records. Therefore, I am left without the ability to move or request Amending the Complaint further at this point in time, as we already set forth almost all relevant facts (along with attaching virtually all of the relevant records my clients possess as Exhibits) in that Complaint.

Accordingly, here are the Plaintiffs positions relevant to this Court in this early stage of the instant action, in no particular order:

## **MAGISTRATE CONSENT**

I reached out to each attorney in this case via email to comply with the Court's directive to confer in order to determine whether or not there is unanimous consent to have the Magistrate in this case handle the entirety of this case, and I can report to the Court that there is *not* unanimous consent to have the Magistrate in this case handle the entirety of this case. Please note: Not all Defendants have been served, not all Defendants are represented by counsel, and therefore not all Defendants have even had the opportunity to consent with or deny Magistrate jurisdiction. But, since there is no unanimity on the subject already, we will need and I hereby ask for the appointment of a Senior Judge at the Court's earliest convenience.

## **CONSOLIDATION**

We oppose any and all efforts to consolidate the two Federal actions. Simply put, there is not one single valid reason to do so given how these two cases are situated. There are two civil actions with completely different claims, different parties, and importantly, competing criminal allegations that are facing a Federal Grand Jury (we just learned of its existence last Thursday,

2

October 24, 2024) commenced (upon information and belief) by the efforts of the Defendants in this action against the Deo group (which consists of the Plaintiffs in this action along with the Deo Defendants in the other Federal action). The Department of Justice and FBI did not seem to know about our Complaint from this action or the NMAC Complaint/action when informed of same just last Friday by my clients, so we expect that there could be significant changes in that investigation/Grand Jury Proceeding forthcoming. In fact, a previously scheduled appearance by one of the Deo group before the Grand Jury was adjourned *sine die* after my clients sent the DOJ and FBI the referenced Complaints. It is entirely possible that the false claims made by the Defendants against the Deo group to date were told to the various Federal investigators with an expectation that the Deo group was not going to be able, willing, and desirous of preparing the Complaint in this action, which sets forth the Defendants' criminality in ways that make their cooperation with the Department of Justice to date perjurious. Simply put, your Honor, although the Deo group have already informed the Department of Justice that we will be waiving our 5th Amendment rights and cooperating fully with the DOJ in this investigation, we have every reason to believe that various Defendants in this action will be forced to invoke their own 5th Amendment rights going forward.

      Hypothetically, if these cases were just criminal cases involving a man and woman accused of killing that man's wife, and then the man and woman accused each other of actually pulling the trigger and committing the murder, then those two people would be *guaranteed* separate trials in order to guarantee fairness in those trials. The criminality alone in these two Federal cases with separate sets of allegations (the Urrutia/Aaronson allegations are set forth generally and without supporting documentation to date, but the Deo allegations are set forth in extreme specificity and with supporting documentation that proves the truth of the allegations) *requires* that the cases are tried separately to ensure fairness; it would be staggeringly unfair to each party in these two actions to require the parties to face one trial for both actions before a jury (all Plaintiffs have made jury demands in both actions, your Honor) while those juries are told that their competing attorneys have criminal allegations against them stemming from the underlying relationships between *some* of the parties.

      There is no consent to have this Court try this case, but the parties already agreed in the other Federal action to have this Court try that case and executed the appropriate Consent to have this Magistrate try that case. So, an additional problem regarding consolidation exists with respect to the fact that the two cases must, in this instance, be tried before different Judges.

      The most important reason for opposing consolidation is that in reality, all the Defendants in this action actually want is to have me removed from my clients' case. Please understand that 1) I have no first-hand knowledge of the facts in this case; 2) the Complaint removed to this Court earlier this month is the result of a 21 month investigation that I undertook to understand the extremely detailed and numerous allegations *specifically because I had no first-hand knowledge of those facts and allegations*, which means that 3) my clients now have an attorney that took 21 months to learn what's in that Complaint, which my clients should not have to duplicate with a new attorney given that I have no relevant knowledge of the allegations in that Complaint but have now learned how all of the points connect. Simply put, consolidation that serves no legitimate purpose certainly should not be allowed to (grossly) prejudice my clients,

which is all that the Defendants in this case are actually trying to do.  E.g., it is yet another ridiculous reach by these Defendants to quote my expectations from early August, 2023, about filing a possible "Federal Complaint."  What the Defendants fail to point out to this Court in making their vapid point is that we always intended to file a Complaint *separate in all respects* from the false and fraudulent allegations advanced by the Defendants in their Complaint, and at the moment that line was uttered, I and my clients had no knowledge of any Federal action having been commenced by the Defendants herein, so I was simply expressing my desire to have a case *separate from their false allegations in all respects, which is exactly what we did in filing the Complaint at issue.*  There are other reasons and strategies for our chosen course of action, of course, including that my investigation in August of 2023 was more than a year from completion.

Consolidation is wrong, it's severely prejudicial to my clients, is being requested for the sole purpose of removing the one person who had to learn all of what is now in our Complaint from continuing to help my clients, and certainly should not take place just to give weight to vapid and false accusations from the Defendants that the Deo group are trying to avoid anything. These Defendants have filed at least five (5) Complaints against the Deo group in two (2) different Courts before at least four (4) different Judges in the last two (2) years and are, at the very least, hypocrites for criticizing our one (1) and only Complaint that was filed in a separate action after we made clear we would file separately over a year before our one (1) filing.

We think that this effort is just more bad faith from these Defendants, and if and when this Court reads our Complaint with twenty-six (26) Exhibits, this Court will understand and agree. Everyone in this case needs to understand that the noose is tightening around the (lying) Defendants' necks, slowly but surely, as we have now proven that these Defendants are lying about a great many things in these two cases, and may have also lied in a Federal Grand Jury probe that they obviously and mistakenly requested to further leverage the Deo group.  Lastly, please note:  Not all Defendants have been served, not all Defendants are represented in this action by counsel, and not all Defendants in this action have yet to consent to or disagree with the moving Defendants' requests for consolidation.

## **STAYS**

Plaintiffs in the instant action seek alternative relief regarding Stays, as follows:

1) Given the Grand Jury proceedings commenced through the Defendants' efforts that the Deo group just learned about on Thursday, October 24, 2024, we ask that this Court stay all proceedings involving the parties under investigation regarding the claims set forth in all matters before this Court, ***except*** with respect to 1) the Court's impending decision on the Motion to Dismiss in the other Federal action; ***and*** 2) with respect to discovery in at least this case.  In two years, most of the Defendants in this case (including all of the Urrutia and Aaronson Defendants) have produced exactly no documentation, no discovery, no depositions, and failed and refused to respond to validly served subpoenas in the first case filed by the Aaronson group in Nassau Supreme Court.  We ask that the Court re-schedule the scheduling conference it

adjourned *sine die* recently: It's time for these Defendants to provide discovery given that *they have all of the relevant documents and information but are playing keep away from my clients. See, also,* the heading "Injunctive Relief" *infra.* It is simply unfair to prevent the Deo Plaintiffs in this case from *finally* obtaining discovery. However, we think that it's prudent to stay the instant proceedings to allow the Department of Justice and the FBI to thoroughly investigate the within situation and draw appropriate conclusions/indictments that could greatly impact the instant case before moving forward. Accordingly, we ask (first) that this Court stay everything in this case except discovery pending the outcome of the Federal Grand Jury investigation, and, that this Court still issue its decision on the other Federal case's pending Motion to Dismiss.

2) In the alternative, if this Court is disinclined to grant a stay of all proceedings except discovery and its decision on the Motion to Dismiss in the other Federal action that is purportedly due by tomorrow, November 1, 2024 (as this Court previously indicated), then we ask that all requests for stays be denied. How convenient for the instant Defendants to ask that they not have to engage in discovery that with or without their involvement as parties to this action they can otherwise be forced to conduct anyway. It has taken nearly a year to get to the point where this Court is deciding the Motion to Dismiss in the other Federal case; why should the Deo Plaintiffs have to wait so long to conduct discovery now? These parties knew of the instant situation for *years* prior to the instant action being filed last month, and the Defendants in this action possess almost all of the relevant information not otherwise attached as Exhibits to our Complaint in this case. It is grossly unfair to the Deo Plaintiffs to have to wait further for discovery.

3) Yesterday, this Court adjourned the discovery scheduling conference *sine die.* We ask for the Court to take one of two actions regarding discovery: Either entirely reschedule that conference and allow all discovery moving forward, or, in the alternative, at least allow the Plaintiffs to serve subpoenas *duces tecum* and also allow the emergency relief requested in the section entitled Injunctive Relief, *infra.*

Thus, with or without any stays being imposed by this Court, we ask that discovery at the very least and the Motion to Dismiss decision *not* be stayed for any reason.

## **DISMISSAL**

The Deo Plaintiffs cannot seek to Amend the instant Complaint until the completion and known outcome of the Federal investigation and Grand Jury proceedings, which we only learned of on October 24, 2024. We also cannot seek to Amend the instant Complaint if needed without any of the documentation that is not otherwise attached to Plaintiffs' Complaint in this case, and the Defendants in this case have all such documentation not otherwise attached to our Complaint. So Discovery is necessary before we can Amend our Complaint, if necessary, in the face of applications to Dismiss same. It is extremely unfair and prejudicial to the Plaintiffs that Defendants are seeking to Dismiss the Complaint while simultaneously playing keep away with

5

all of Plaintiffs' documents and records.

The Urrutia and Aaronson Defendants that managed with their extreme wealth and contacts to arrange for the Federal investigation and Grand Jury just revealed to Plaintiffs last week appear to have shot themselves in the foot, your Honor, since I just found out that the DOJ never read (and therefore never knew about) our Complaint or the NMAC/Connecticut Complaint until my clients gave it to the FBI last Friday. That investigation and Grand Jury proceeding will necessarily come up with more information and documentation than I could ever hope to develop, and I will need that information in order to deal with the requested Motions to Dismiss. Likewise, I need to obtain discovery before anyone should fairly be attempting to get out of this action. I oppose dismissal in all respects, I oppose even scheduling dismissal (although I cooperated as required under the Court rules with developing schedules therefore as I am sure Defense counsel will soon inform this Court), and I ask that dismissal be a part of the stay requested *supra*.

## **INJUNCTIVE RELIEF**

Plaintiffs hereby make two requests regarding injunctive relief, as follows: 1) We ask for leave to schedule and submit a Motion for TRO covering certain subjects more fully set forth in Count XII in our Complaint; and 2) we ask for an emergency order to compel certain discovery by and through this correspondence.

1) In light of competing requests for Stays, it is important that I make clear to the Court that we do not want any Stay impacting the relief set forth under this heading, "Injunctive Relief." After two years of getting wrongfully abused by these Defendants, it is time for some affirmative relief given that it is no longer believable that any of the Defendants ever owned NorthShore, and it is no longer believable that any of the Defendants owned 189 Sunrise since its sale to the Deos in February 2021. The Exhibits to the Complaint make clear that the Deos are the owners of these two corporations, inarguably, and we need permission from this Court to schedule Injunctive Relief set forth in our Complaint, as follows: 1) Plaintiffs ask to be allowed to schedule a Motion for Declaratory Judgment on the issue of ownership of 189 Sunrise (since February 2021) and NorthShore since its inception; 2) Plaintiffs ask to be allowed to schedule a Motion for Declaratory Judgment determining that Plaintiff Anthony Deo did fully purchase the business known as Baron Nissan; or, in the alternative, that Anthony Deo steps into the shoes/interests of David Baron as of the date of Exhibit F to the Complaint; or, in the alternative if this Court fails or refuses to allow undersigned to bring the injunctive relief requested herein, then in the alternative the Plaintiffs ask that this Court 3) deny any requests without prejudice to renew upon the completion of discovery; and 4) allow the scheduling of a Motion to Impose a Constructive Trust upon Baron Nissan on behalf of Anthony Deo preventing and enjoining any fraud, waste or transfer of any of the business's assets other than in the normal course of business during the pendency of the within litigation. *See also* Count XII of the instant Complaint incorporated herein by reference.

2) Plaintiffs also herein make a Motion to Allow the Emergency Depositions of Defendants Anthony Urrutia and Wendy Kwun.  Both of these Defendants have been served the Complaint in this action, both of these Defendants are also subject to the jurisdiction of this Court in the other Federal case, and their extensive lawyers present in both Federal cases as well as Urrutia's lawyer in the Nassau Supreme Court action entitled *Urrutia v. Anthony Deo*, Nassau (NY) Supreme Court index number 618608/2023 have all received copies of the within Complaint at issue.

The reason for the within emergency relief is simple:  Upon information and belief, both of these individuals have fled or are about to flee the country.  Each has extensive overseas real estate holdings and/or family that they can join and forever remain beyond this Court's jurisdiction, notwithstanding that they are subject to the jurisdiction of this Court.  Urrutia has relocated to Costa Rica, and Kwun has adult children, only, and is originally a foreign national (as is her husband), possibly from China.  In reality, this emergency motion is prejudicial to the Plaintiffs insofar as we will be taking any deposition(s) granted without first having done at least paper discovery.  But it is necessary to protect the Plaintiffs that such emergency relief be granted given the extensive game of keep away still being employed by the Defendants regarding discovery, the very real possibility that one or both of these Defendants have already fled the country or are about to do so, and since one or more stays will, if granted, allow these Defendants to flee in the future.  We ask that the Court allow the Plaintiffs one (1) full day of deposition for each of these two (2) Defendants; that such depositions be ordered on any two (2) consecutive days during the week of November 18, 2024 or such two (2) consecutive days thereafter as is convenient to the Court; that the Court order these depositions to be conducted in the Central Islip Courthouse, if possible (amongst other issues, the size of the room needed to accommodate all parties and attorneys is larger than any room available to undersigned); we do not object to any other requests for deposition time from any co-Defendant in this case, but we do ask that any such time be allowed for other days as I represent all four (4) Plaintiffs and want the opportunity for just one (1) day of deposition with each of the requested Defendants; and for such other and further relief as to this Court seems necessary and just.

## **DISQUALIFICATION**

1. Plaintiffs hereby move to disqualify any and all current and former attorneys of the named parties/co-Defendant Law firms (Milman Labuda and Cyruli Shanks) from representing any Defendant in this case.  This letter motion extends to Attorney Kataev and his new law firm (Sage Legal), as he is a prime candidate to be specifically named as an individual John Doe Attorney upon eventual Amendment of the Complaint after discovery and/or the completion of the Federal investigation and Grand Jury these Defendants initiated. This motion also extends to the three (3) law firms themselves.

7

> The reasoning for the within relief is simple: Our Complaint extensively sets forth massive fraud and legal malpractice by these attorneys towards at least the corporate Plaintiffs directly, and at least indirectly to the individual Plaintiffs and their interests as well. The identity of the individual attorneys involved has been and continues to be hidden from the Plaintiffs, except insofar as Exhibit T clearly sets forth Milman Labuda and Mr. Kataev being directly involved in the Pandemic Relief Fund frauds (which we have now learned involves as much as $50 million dollars in thefts by these Defendants involving the PPP/Pandemic Relief Funds). Each of these firms and their attorneys are going to be subjected to discovery once allowed, including depositions; and unlike the strategic yet false claims against me in the other Federal action, what is set forth in our Complaint has been, can be, will be, and continues to be proven both by the Exhibits to that Complaint and known documentation not yet discovered by Plaintiffs given the avoidance of same by the Defendants. To allow any of the Law Firms and/or their current or former attorneys into representation in this action quite simply fails to avoid the appearance of impropriety, your Honor. For these reasons, we move to disqualify the referenced attorneys from ever representing any co-Defendant in this action, even if any or all of these attorneys have or will be substituted out of this case, as the order needs to also prevent their re-entry into the case in the future.

2. Plaintiffs adamantly oppose efforts to remove undersigned from representing Plaintiffs under any circumstance in this case. I spent twenty-one (21) months from December, 2022, through the end of August, 2024, investigating the claims against the Deo group, and also investigating the claims of the Deo group against the Defendants in this action. The results of that investigation are embodied in the instant Complaint. I have no first-hand knowledge of the allegations and Counts of that Complaint, I have no first-hand knowledge of any of the operations at the three (3) dealerships at issue (Superb, 189 Sunrise, and NorthShore), I do not know nor have I ever worked with even one (1) individual Defendant in this case, but I now have amassed stunning knowledge of the Defendants' wrongdoings that include, but are not limited to, knowing the details of the Defendants' 1) frauds; 2) Professionals' malpractice and involvements in frauds; 3) Lenders wrongdoings; 4) breaches; 5) crimes; 6) accounting malpractices; and 7) false representations in the other Federal action handled by Mr. Levine for the Deo Defendants in that action. The prejudice my clients would suffer if I were to be disqualified from this action is literally incalculable, and it would be for no good reason whatsoever: I simply do not know any first-hand information of the allegations in this action, and despite the Defendants expected best efforts, it is nothing but bad faith designed as a sword and not as a shield to allow such disqualification.

   The Defendants are probably delighted that I was disqualified from the other Federal action after false claims were made against me, but they certainly failed to realize that by disqualifying me in that action, they allowed me the time to finish my investigation for this action, which picked up steam once Chase provided the documentation this past Spring attached to our Complaint as Exhibit Q, the first true

"Smoking Gun" I have seen in my career. Just this month I also learned that 1) the Aaronson Defendants' accountants, co-Defendant Citrin Cooperman, prepared the tax returns attached to our Complaint as Exhibit H as approved by Josh Aaronson in Exhibit G listing Anthony Deo and Sara Deo as the sole stockholders/members thereof; 2) the reason for creation and approval of those returns by the Aaronson Defendants is because the Aaronson Defendants (by and through Wendy Kwun) found out in the fall of 2022 that the Deos filed a tax return in June, 2021 for NorthShore, but the Aaronson Defendants by and through co-Defendant RWC filed their own return for NorthShore in October, 2021, *without knowing that the Deos filed a tax return for NorthShore in June of that year,* so the Aaronson Defendants' theft of the corporation was impeded and threatened by the Deos' tax filing for NorthShore, forcing the Aaronson Defendants to abandon their theft of NorthShore and ruining both businesses in retaliation for the "lack of cooperation" with the Aaronson Defendant from my clients; 3) we now have a video of David Baron breaking into NorthShore and prying open the key safe *with a crowbar* on June 17, 2020, one of the "David Baron Incident" days referenced in our Complaint; and 4) the Accountant from co-Defendant RWC that wrongfully filed the October 2021 NorthShore tax returns for the Aaronson Defendants, Mr. Charles, resigned from RWC after service of our Complaint last month and upon information and belief, RWC is now undergoing significant re-organization since service of our Complaint; Please note the important letter that RWC/Charles wrote compromising my clients' Chase account is set forth in Exhibit Q to our Complaint.

My knowledge of this case is irreplaceable to my clients, and in light of my complete lack of first-hand knowledge of this case, there is no reason conceivable to disqualify me from this action. Everyone in this action needs to start dealing with the reality that my clients own those businesses, and anyone who says otherwise is committing perjury and a fraud upon the Court, your Honor. The Defendants are morally, legally, and factually wrong to attack me in this case, these attacks are swords and not shields.

## **CONCLUSION**

So to be clear: I am writing to inform/request/move/oppose as follows:

1. With respect to Magistrate Consent, there is no Magistrate Consent in this case and there will not be any such Consent given since there is 1) no unanimity in the responding parties after we conferred with the existing parties to the action; and 2) not all parties have been served or are represented in this action at this time. We hereby request the assignment of a Senior Judge to this action going forward;

2. With respect to Consolidation, Plaintiffs are adamantly opposed thereto as highly prejudicial;

3. With respect to Stays, Plaintiffs request a Stay herein for all purposes except as to discovery, the relief requested under the heading "Injunctive Relief" and the Court's

decision on Dismissal in the other Federal action. If our request for a Stay is denied, then we ask that all requests for Stays be denied; even if a Stay is granted, we ask that this Court re-schedule the scheduling conference for discovery previously adjourned *sine die,* that the Court allows all discovery moving forward, and/or that the Court allow subpoenas moving forward in addition to the relief requested under the heading "Injunctive Relief".

4. With respect to the gathering requests for Motions to Dismiss, we ask that the Court deny such requests due either to the Stays put in place or that will be put in place herein, or, in the alternative, that all such Motions await discovery and/or completion of the Federal investigation initiated by the Defendants.

5. With respect to Injunctive Relief, Declaratory Relief, and our own Emergency Motion, Plaintiffs hereby request as follows:

   a) Plaintiffs ask to be allowed relief from any Stay granted or to be granted to schedule a Motion for Declaratory Judgment on the issue of ownership of 189 Sunrise (since February 2021) and NorthShore since its inception;
   b) Plaintiffs ask to be allowed relief from any Stay granted or to be granted to schedule a Motion for Declaratory Judgment determining that Plaintiff Anthony Deo did fully purchase the business known as Baron Nissan; or, in the alternative, that Anthony Deo steps into the shoes/interests of David Baron as of the date of Exhibit F to the Complaint;
   c) If this Court fails or refuses to allow undersigned to bring the injunctive relief requested in paragraphs 5 (a) or (b) herein, then in the alternative the Plaintiffs ask that this Court deny any requests without prejudice to renew upon the completion of discovery; and in the interim allow relief from any Stay granted or to be granted to schedule a Motion to Impose a Constructive Trust upon Baron Nissan on behalf of Anthony Deo preventing and enjoining any fraud, waste or transfer of any of the business's assets other than in the normal course of business during the pendency of the within litigation;
   d) Plaintiffs also herein make a Motion to Allow the Emergency Depositions of Defendants Anthony Urrutia and Wendy Kwun.

6. With respect to Disqualification, Plaintiffs move to disqualify Cyruli, Shanks & Zizmor, LLP; Milman Labuda Law Group PLLC; Sage Legal LLC; and all current and former attorneys from representing any party hereto. Plaintiffs also adamantly oppose Defendants' efforts to disqualify undersigned from these proceedings.

We ask that any denials be made "without prejudice," and we remain,

Very truly yours,

/S/

Harry R. Thomasson
