# Sage Legal LLC
**18211 Jamaica Avenue • Jamaica, NY 11423-2327 • (718) 412-2421 • emanuel@sagelegal.nyc**

November 12, 2024

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

      **Re:** **Deo,** *et al.* **v. Baron,** *et al.*
           **Case No.: 2:24-cv-6903 (NJC) (JMW)**

Dear Judge Wicks:

      This office represents Defendant Superb Motors Inc. ("Superb") in the above-referenced case.  Superb writes jointly with Defendants Milman Labuda Law Group PLLC ("MLLG") and Cyruli Shanks & Zizmor LLP ("CSZ") pursuant to this Court's Order setting a deadline to submit opposition to Plaintiffs' motion to disqualify.  <u>See</u> Text Only Order dated November 1, 2024.

**<u>Relevant Factual Background and Procedural History</u>**

      On September 4, 2024, Plaintiffs filed an action against the Defendants in the Supreme Court of the State of New York.  <u>See</u> <u>Deo v. Baron</u>, Index No.: 615683/2024.[1]  On September 30, 2024, Defendants CSZ as well as Joshua Aaronson, Iris Baron, Jory Baron, Ronald Baron, Baron Nissan, Inc., Brian Chabrier, Estate of David Baron, Island Auto Group of New York LLC, Asad Khan, Wendy Kwun, Daniel O'Sullivan, Raymond Phelan, and Marcello Sciarrino (collectively hereinafter the "IAG Defendants") removed the action to this Court.  <u>See</u> ECF Docket Entry 1.

      On October 1, 2024, the Clerk of the Court provided notice that this case is related to Superb's earlier-filed case, <u>Superb Motors Inc v. Deo</u>, Case No.: 2:23-cv-6188 (JMW) (hereinafter the "Related Case").

      The same day, MLLG filed a notice of appearance for itself.  <u>See</u> ECF Docket Entry 2.  Notably, MLLG's notice of appearance did not enter an appearance for any other Defendant.

      On October 15, 2024, Sage Legal LLC ("Sage") noticed an appearance for Superb.  <u>See</u> ECF Docket Entry 21.

      On October 28, 2024, CSZ filed a consent letter motion to substitute its counsel such that Kaufman Dolowich LLP represents CSZ.  <u>See</u> ECF Docket Entry 31 and Text Only Order dated October 29, 2024.  CSZ otherwise continues to represent the IAG Defendants.

---

[1] Federal courts may take judicial notice of state court actions.  <u>See</u> <u>Talley v. LoanCare Servicing, Div. of FNF</u>, No. 16-CIV.-5017 (JMA) (AKT), 2018 WL 4185705, at *1 (E.D.N.Y. Aug. 31, 2018) (a federal court "may take judicial notice of public records, including state court filings").

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 2

On October 30, 2024, Plaintiffs filed an omnibus letter requesting innumerable amounts of relief, i.e., an Order acknowledging that Plaintiffs are the true owners of Northshore Motors Leasing LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise"), opposing consolidation, seeking a stay for some aspects of the Related Case but not others, seeking an order denying motions to dismiss that have not been filed yet, granting leave to conduct early discovery, and seeking to disqualify Emanuel Kataev, Esq. ("Kataev"), Sage, MLLG, and CSZ. See ECF Docket Entry 36.

All of the requests are unsupported by any authority, bereft of any admissible evidence, and are apparently sought to be granted by fiat; they are addressed *seriatim* below, except that the disqualification motion is addressed first.

**Plaintiffs' Misguided & Unsupported Letter Motion to Disqualify Must be Denied**

In their motion, Plaintiffs "hereby move to disqualify any and all current and former attorneys of the named parties … from representing any Defendant in this case;" the motion "extends to Attorney Kataev and … Sage …" and "also extends to the three (3) law firms themselves [CSZ, MLLG, and Sage Legal]" See ECF Docket Entry 36 at 7.

In support, Plaintiffs argue that their complaint extensively sets forth "massive fraud" and "legal malpractice" towards Northshore and Sunrise and indirectly to the individual Plaintiffs. Id. at 8. The Plaintiffs argue, without presenting any evidence, that the firms and attorneys sought to be disqualified will be subject to discovery and depositions, and that to allow any of the firms and their attorneys to represent the remaining Defendants "quite simply fails to avoid the appearance of impropriety". Id. Plaintiffs have not undertaken any effort to support their motion with any specificity concerning the pleadings, which they reference, warranting denial of their motion. In any event, Defendants address the relevant allegations in the Complaint herein, which allegations lack the necessary specificity and factual support.

The complaint pleads, in relevant part, that: (i) CSZ and MLLG represented Sunrise since February 2021 and Northshore "at any time" without authorization; (ii) the unauthorized work performed includes but is not limited to obtaining pandemic relief funds and steering those funds away from Plaintiffs and instead to the IAG Defendants, representing the corporate Plaintiffs in one or more unidentified lawsuits, plus "other work unknown at this time." See ECF Docket Entry 1-2 ¶¶ 297-299. Thus, the only specific legal work allegedly performed by MLLG concerns obtaining pandemic relief funds, while no specific work by CSZ is alleged. Plaintiffs also attach an email exchange (the "Email") between Kataev and some of the IAG Defendants, among others at IAG, dated April 3, 2020 through April 4, 2020 in which MLLG worked with the IAG Defendants to secure pandemic relief funds. See ECF Docket Entry 1-26 at 2-3. The email chain consists of twenty-one (21) individuals, two of which are Robert F. Milman, Esq. ("Milman"), managing partner at MLLG, and Joseph F. Gentile, Esq. ("Gentile"), a former associate of MLLG. Id.

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 3

    Notably, the email was forwarded to Deo on April 4, 2020 establishing that he was aware on April 4, 2020 that MLLG was representing NorthShore and 189 Sunrise in connection with PPP loans, belying his claim that he was unaware of same and establishing the frivolity of said claim. Id. Plaintiffs further allege that the Related Case and an earlier action filed by the IAG Defendants are "frauds upon the Courts in which they are and were filed," that the attorneys should have known of this, and that the attorneys had no authority to initiate or continue any litigation on behalf of Northshore and Sunrise. See ECF Docket Entry 1-2 ¶¶ 303-305.

    Disqualifying counsel has "a serious and immediate adverse effect by denying the client his choice of counsel." See Soc'y for Good Will to Retarded Children, Inc. v. Carey, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). Indeed, courts – which have wide discretion in deciding disqualification motions – should be "loathe to separate a client from" chosen counsel. See In re Bohack Corp., 607 F.2d 258, 263 (2d Cir. 1979). This fundamental precept, coupled with the risk for potential abuse of these types of motions for "tactical purposes," is why motions for disqualification are subject to strict scrutiny. See Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989).

    At bottom, motions to disqualify should only be granted where the court concludes that there is a "significant risk of trial taint." See Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981); see also Galloway v. Nassau Cnty., No. 19-CV-5026 (AMD) (JMW), 569 F.Supp.3d 143, 2021 WL 5013735 (E.D.N.Y. Oct. 27, 2021). Thus, the movant shoulders a heavy burden, and must establish *specific facts* warranting the disqualification. See Evans v. Artek Sys. Corp., 715 F.2d 788, 791, 794 (2d Cir. 1983). Conclusory statements parroting the language of the applicable Rule of Professional Conduct will not suffice. See Superb Motors Inc. v. Deo, 2023 WL 8358062, at *3 (E.D.N.Y. Dec. 1, 2023). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action." See United States v. Schwarz, 283 F.3d 76, 91 (2d Cir. 2002) (quoting Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993)). The potential for a conflict alone is insufficient to warrant disqualification. See All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund, No. 08-CV-1816 (LDW) (AKT), 2010 U.S. Dist. LEXIS 53290, at *17, 2010 WL 2243351 (E.D.N.Y. May 31, 2010) (noting that just because a future conflict might arise does not mean that disqualification is warranted).

    Separately, to disqualify an attorney for prior representation, the Second Circuit requires a movant to show three elements: (1) that the moving party is a former client of the adverse party's counsel; (2) that a substantial relationship exists between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) that the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. See Unique Sports Generation, Inc. v. LGH-III, No. 03-CIV.-8324 (JGK) (DF), 2005 U.S. Dist. LEXIS 22133, at *47, 2005 WL 2414452 (S.D.N.Y. Sept. 29, 2005) (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)).

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 4

Finally, Rule 3.7 provides that "lawyer[s] shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." See New York Rules of Professional Conduct ("RPC") § 3.7(a). This rule "prohibits an attorney from representing a party in case where the attorney will or 'ought to' be called as a witness." See Rizzuto v. De Blasio, No. 17-CV-7381 (ILG) (ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019).

RPC § 3.7 attempts to alleviate four risks: (i) the lawyer might appear to vouch for his own credibility; (ii) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (iii) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (iv) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused. See Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009).

Generally, courts have found that the advocate-witness rule only applies to counsel's participation at trial and is not a bar to pre-trial proceedings. See Cassini v. Cnty. of Nassau, 2023 U.S. Dist. LEXIS 189089 at *9-10, 2023 WL 6958795 (noting that plaintiffs were uncertain of the nature of counsel's testimony); Prout v. Vladeck, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018) ("Where there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature"); McDonald v. Hammons, 129 F.3d 114 (2d Cir. 1997) (noting that the need to disqualify counsel "frequently only becomes clear at the conclusion of the underlying litigation").

As a result, disqualification "is warranted only where the testimony given by counsel is *necessary*." See Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) (emphasis added). Thus, to disqualify an attorney under the advocate-witness rule, the movant must "prove[ ] by *clear and convincing evidence* that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." See Murray, 583 F.3d at 178-179; see also Ramey v. Dist. 141 Int'l Ass'n of Machinist, 378 F.3d 269, 283 (2d Cir. 2004) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness in that very proceeding"). The underlying purpose of the so-called "advocate-witness rule" is "to protect the integrity of the judicial system." See City of New York v. Henriquez, 2023 U.S. Dist. LEXIS 175794, at *9–10, 2023 WL 6358098 (E.D.N.Y. Sep. 29, 2023); see also Rizzuto, 2019 WL 1433067. Here, a plethora of reasons can be delivered to deny Plaintiffs' drive to disqualify Defendants' counsel Sage, MLLG, and CSZ.

*First,* despite the legal representation related to obtaining pandemic relief funds occurring in April 2020, Plaintiffs did not commence this action until September 4, 2024, more than four (4) years later, well after the expiration of the three (3) year statute of limitations for malpractice claims under CPLR § 216(6). MLLG will be filing a motion to dismiss on this and other grounds and CSZ and Superb will also be moving to dismiss.

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 5

Therefore, Plaintiffs' motion to disqualify should be held in abeyance until the forthcoming motions to dismiss are decided. Thomas v. Venditto, 2020 U.S. Dist. LEXIS 33151, *9-10 (E.D.N.Y. Feb. 26, 2020)' O'Rear v. Diaz, 2024 U.S. Dist. LEXIS 156754, *14 n.6 (S.D.N.Y. Aug. 29, 2024).

Relatedly, Plaintiffs have failed to establish any clear and convincing evidence as is required to prevail on a motion to disqualify. In fact, they have presented no evidence whatsoever. The letter motion consists solely of the rants and ramblings of an attorney, Harry R. Thomasson, Esq.'s ("Thomasson"), all of which are unsworn. Courts may not consider such letter motions (no matter how emphatically written) as evidence, let alone clear and convincing evidence. See, e.g., Tzilin v. Jimmy G Constr. Corp., No. 23-CIV.-4047 (ENV) (MMH), 2024 WL 4309775, at *11 (E.D.N.Y. Sept. 26, 2024) ("Counsel's unsworn assertions … with no citation to admissible evidence, are inadequate"); see also Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence"). In that regard, Plaintiffs have altogether failed to provide *specific facts* warranting disqualification, and instead have only cobbled together statements of no evidentiary value and arguments that Defendants' counsel should be disqualified based on same.

By and large, Plaintiffs merely offer generalized statements that the Attorneys "knew or should have known" of Deo's interest in the corporate Plaintiffs (¶301), ignoring "multiple red flags" (¶302), and "knew or should have known" that they had no authority to act on behalf of any Plaintiff (¶305), culminating in a veritable laundry list of conclusory alleged wrongs (¶450). See ECF Docket Entries 1-1 and 1-2. Yet, Plaintiff's complaint is bereft of the specific facts sufficient to meet the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule") (which will result in the filing of a motion to dismiss), let alone provide the heightened standards of evidentiary facts necessary to disqualify an attorney.

Even if Plaintiffs relied exclusively on the sole exhibit they reference in support of disqualification, that exhibit is unauthenticated. Even on a motion to dismiss pursuant to Rule 12(b)(6), while a court may consider a document that is attached to the complaint, incorporated by reference, or integral to the complaint, *there must be no dispute regarding its authenticity, accuracy or relevance*. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted) (emphasis added). Here, where Plaintiffs' exhibit consisting of one email chain has not been established as authentic, accurate, or relevant, it cannot serve to jump the high hurdle of "clear and convincing evidence" to support disqualification.

*Second*, Plaintiffs cannot establish in any way that the attorneys' interests diverge from that of their clients, the Defendants. MLLG has not appeared for any Defendant other than itself, CSZ is represented by separate counsel, and neither Sage nor Kataev are named Defendants in this case. MLLG has the absolute right to represent itself *pro se*. See Superb Motors Inc. v. Deo, 2023 U.S. Dist. LEXIS 214323, *19-20 (E.D.N.Y. Dec. 1, 2023) (holding that despite being disqualified from representing the defendants, Thomasson was not precluded from representing himself *pro se*).

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 6

      To the extent any counsel is representing a defendant herein, it would be speculative to predict situations in which such attorney would have to take positions adverse to his clients. See All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund, No. 08-CIV.-1816 (LDW) (AKT), 2010 U.S. Dist. LEXIS 53290, at *17 (E.D.N.Y. May 31, 2010) (noting that just because a future conflict might arise does not mean that disqualification is warranted).

      Thus, on the face of the complaint, there can be no conflict in which counsel's interests diverge from that of their clients, let alone with respect to a material factual or legal issue or to a course of action. Indeed, because Plaintiffs have not presented this Court with any evidence whatsoever, there can be no established actual conflict of interest. Ergo, because there can only exist a potential conflict of interest, disqualification is unwarranted.

      *Third*, Plaintiffs fail to establish that disqualification is warranted due to prior representation. Plaintiffs have not presented any evidence to show that they were a prior client of MLLG nor CSZ. Even had they done so, which they have not, Plaintiffs fail to establish that there is any substantial relationship between this case and any prior case in which MLLG or CSZ represented Plaintiffs that is patently clear, identical or is essentially the same. See Scantek Med., Inc. v. Sabella, 693 F. Supp. 2d 235, 239 (S.D.N.Y. 2008) (quoting Gov't. of India v. Cook Indus., Inc., 569 F.2d 737, 739-40 (2d Cir. 1978)) (internal alterations omitted).

      In addition, Plaintiffs failed to establish that MLLG or CSZ had access to relevant privileged information in the course of their representation of the client. See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764-65 (2d Cir. 1990). Thus, disqualification based on this ground must be denied.

      *Fourth*, Plaintiffs' bid to disqualify MLLG, CSZ, and Sage on the grounds that they may be witnesses fares no better. This is because CSZ is not part of the Email, nor is Jamie S. Felsen, Esq. ("Felsen") of MLLG. While Kataev is part of the Email, Plaintiffs cannot establish that his testimony is necessary as required to warrant disqualification. This is because twenty (20) other participants in the Email are capable of testifying about the events that transpired concerning the pandemic relief funds, including Milman and Gentile of MLLG, who are also present on the Email and would be capable of testifying concerning Plaintiffs' claims and any Defendants' defenses.

      Thus, there is no risk that Kataev will be required to appear to testify at a deposition or trial just because he received information from the IAG Defendants concerning their pandemic relief fund applications. See Persh v. Petersen, No. 15-CIV.-1414 LGS, 2015 WL 5773566, at *5 (S.D.N.Y. Oct. 2, 2015) (citing Ardesmasov v. Citibank, N.A., 14 F. Supp. 3d 39, 54, 56 (D. Conn. 2014) (attorney is not a necessary witness where "he has no direct knowledge of the underlying facts relating to the causes of action;" "[w]here attorneys have obtained facts from others in their capacity as counsel, courts have declined to disqualify them as required to testify").

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 7

Moreover, the Email contains privileged communications which renders the exhibit Plaintiffs rely upon inadmissible in any event.  See Brennan Center for Justice at New York University School of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance.") (citing United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011), cert. denied, 132 S.Ct. 533 (2011)).  Further, Plaintiffs have not shown by clear and convincing evidence that Kataev's testimony, even if it were admissible, is prejudicial and sufficiently so that the integrity of the judicial system will suffer as a result. In the context of disqualification by imputation, prejudicial testimony is "testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" See Murray, 583 F.3d at 178 (citing Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)). The rule seeks to protect the testifying lawyer's client from the risk that trial counsel would be inhibited in attacking the credibility of his testifying colleague. See Nakasian v. Incontrade, Inc., 78 F.R.D. 229, 232 (S.D.N.Y. 1978).  For the foregoing reasons, these risks are not present here.

Finally, even a bat in broad daylight could see behind the true purpose of Plaintiffs' motion, which is to serve a tactical purpose rather than seek to preserve the integrity of the judicial system. Because such motions are disfavored, and for all the foregoing reasons, this Court should exercise its discretion in favor of denying Plaintiffs' motion to disqualify.

**Plaintiffs are not Entitled to a Stay of Litigation**

In the Plaintiffs' omnibus letter, they allude to an ongoing criminal investigation and have stated unequivocally that "[s]imply put, your Honor, [] the Deo group have already informed the Department of Justice that we will be waiving our 5th Amendment rights and cooperating fully with the DOJ in this investigation …" See ECF Docket Entry 36 at 3.

However, given the grand jury proceedings, Plaintiffs seek a stay of "all proceedings involving the parties under investigation regarding the claims set forth in all matters before this Court" except with respect to the motions to dismiss in the Related Case and discovery in this case. Id. at 4.  Once again, Plaintiffs' application is unsupported by any authority.

Setting aside the fact that Plaintiffs have not established with any evidence the existence of a criminal investigation, the mere pendency of a criminal investigation – standing alone – does not require a stay.  See Sterling Nat. Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001). That said, the power to stay a civil proceeding by reason of a pending criminal investigation is within a court's inherent discretionary power, although a party must show "undue prejudice ... or interference with his constitutional rights ... [to] prevent plaintiff from expeditiously advancing its claims."  See Citibank, N.A. v. Hakim, No. 92-CIV.-6233 (MBM), 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993) (quoting Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc., 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980)).

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 8

As the great Judge Edward Weinfeld put it, "[t]hat [a party's] conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent [parties] from expeditiously advancing [their] claim[s]." See Paine, Webber, Jackson & Curtis, Inc., 486 F. Supp. at 1119. Indeed, the Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. See Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989); see also Securities & Exchange Commission v. Dresser Indus., 628 F.2d 1368, 1375 (D.C. Cir. 1980); Nosik v. Singe, 40 F.3d 592, 596 (2d Cir. 1994) ("Nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter") (internal citations omitted).

Here, given Thomasson's wise decision to waive his and his clients' Fifth Amendment rights, Plaintiffs cannot show any undue prejudice or interference with his constitutional rights.

Accordingly, this Court must deny any stay for this reason alone.

**Plaintiffs' Declaratory Judgment Bid Constitutes Ultimate Relief, Warranting Denial**

Plaintiffs seek a declaratory judgment that they are the owners of Northshore and Sunrise.

However, that constitutes the ultimate relief they seek in the case, and they therefore cannot seek this relief by way of motion before issue has been joined and discovery can proceed. See City of Newburgh v. Sarna, 690 F. Supp. 2d 136, 175 (S.D.N.Y. 2010), aff'd in part, appeal dismissed in part, 406 Fed. Appx. 557 (2d Cir. 2011) ("It is well-established that the purpose of a preliminary injunction is 'not to award the movant the ultimate relief sought in the suit but is only to preserve the *status quo*'") (citing New York v. Nuclear Regulatory Comm'n, 550 F.2d 745, 754 (2d Cir. 1977); Triebwasser & Katz v. AT & T Co., 535 F.2d 1356, 1360 (2d Cir. 1976) (noting that "the normal function of the preliminary injunction is to maintain the status quo pending a full hearing on the merits," and reversing district court's grant of preliminary injunction that "would in effect give the plaintiffs substantially the ultimate relief they seek ... before there has been any trial of the issues").[2]

**Plaintiffs Have Not Cleared the Path to Expedited Discovery**

Plaintiffs also seek expedited discovery. Rule 26 prevents a party from seeking "discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized ... by court order." See Fed. R. Civ. P. 26(d)(1).

---

[2] Notably, in the earlier action filed by the IAG Plaintiffs against Deo in the New York Supreme Court, Nassau County, Index No. 617224/2022, which was voluntarily discontinued in favor of the Related Case, the Court denied Deo's motion to dismiss the action when Deo sought to establish unrefuted ownership of Northshore and Sunrise by substantially the same evidence he has offered herein, finding Deo had failed to establish grounds for dismissal based on documentary evidence. See NYSCEF Docket Entry 100.

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
November 12, 2024
P a g e | 9

      In deciding whether to grant expedited discovery, courts in this district "examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." See Doe1 v. Congregation of Sacred Hearts of Jesus & Mary, No. 21-CIV.-6865 (VSB), 2022 WL 2901403, at *1 (S.D.N.Y. July 22, 2022) (internal quotation marks and citation omitted). In doing so, courts apply a flexible standard of "reasonableness" and "good cause." See Stern v. Cosby, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (quoting Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005)). A party may show good cause through evidence of "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." See Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

      Here, Plaintiffs have not discussed any of the foregoing elements, let alone establish them; nor can they. Plaintiffs have not even attempted to present any argument of irreparable harm. Notably, while they rely on unauthenticated evidence as a "smoking gun" that they are the true owners of Northshore and Sunrise, they ignore prior documentation submitted by the IAG Defendants in their state court action showing that IAG are the owners of those entities. See Chabrier v. Deo, Index No.: 617224/2022, NYSCEF Docket Entries 4 (Northshore's operating agreement) and 28 (Sunrise's operating agreement).

      Further, they cannot and do not provide any connection between their purported ownership and irreparable injury. Finally, they cannot and do not argue that any such irreparable injury will result without expedited discovery. Accordingly, expedited discovery must be denied. For the foregoing reasons, Plaintiffs' unsupported and unsubstantiated requests for relief must be denied. Defendants Superb, MLLG, and CSZ thank this Court for its time and attention to this case.

Dated: Jamaica, New York
      November 12, 2024

      Respectfully submitted,
      **SAGE LEGAL LLC**
      By: */s/ Emanuel Kataev, Esq.*
      Emanuel Kataev, Esq.
      18211 Jamaica Avenue
      Jamaica, NY 11423-2327
      (718) 412-2421 (office)
      (917) 807-7819 (cellular)
      (718) 489-4155 (facsimile)
      emanuel@sagelegal.nyc

      *Attorneys for Defendant*
      *Superb Motors Inc.*

**VIA ECF**
All counsel of record