SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X

BRIAN CHABRIER, INDIVIDUALLY AND AS A            Index No. 617224/2022
MEMBER OF NORTHSHORE MOTOR LEASING,
LLC, SUING ON BEHALF OF HIMSELF AND ALL
OTHER MEMBERS OF NORTHSHORE MOTOR
LEASING, LLC SIMILARLY SITUATED AND IN
THE RIGHT OF NORTHSHORE MOTOR LEASING,
LLC; JOSHUA AARONSON, AS A MEMBER OF 189
SUNRISE HWY AUTO, LLC, SUING ON BEHALF OF
HIMSELF AND ALL OTHER MEMBERS OF 189
SUNRISE HWY AUTO, LLC SIMILARLY SITUATED,
JORY BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, ISLAND AUTO MANAGEMENT,
LLC,
                                  Plaintiffs,

        -against-

ANTHONY DEO, NORTHSHORE MOTOR LEASING,
LLC, 189 SUNRISE HWY AUTO, LLC, LIBERTAS
FUNDING, LLC, HARRY R. THOMASSON, ESQ.,

                                  Defendants.
-------------------------------------------------------------------X

**AFFIDAVIT OF ANTHONY DEO IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE and IN SUPPORT OF DEFENDANTS' CROSS MOTION**

1. My name is Anthony Deo and I am a Defendant in the above captioned action.

2. I submit this Affidavit individually and on behalf of NorthShore Motor Leasing, LLC., and 189 Sunrise Highway Auto, LLC. I am 99% owner of both corporations and my wife, Sara Deo, is 1% owner of both corporations (I

learned from my accountant, Thomas Jones, that her share is for accounting purposes as LLC's cannot have just one partner).

3. During 2016, I leased the space and began operating a used car dealership at 180 Michael Drive, Syosset, New York. Attached hereto as Exhibit A are true and accurate copies of the leases for the spaces we rented and operated for the two used car dealerships since 2016 (NorthShore) and 2020 (Sunrise). We (my wife and I) entered into these agreements through corporations we own and operate (Gold Coast and Premier), as well as NorthShore Motors *before* David Baron assumed ownership (with a right of redemption, *see infra*). My wife and I originally formed the NorthShore LLC at issue and redeemed our interest again with the agreement of the Plaintiffs, *see infra.*

4. My operations at the Michael Drive location were distinctly small, and I obtained a floor plan from NextGear, a company that supplies smaller automobile dealer floor plans at higher interest rates.

5. During late 2017, I formed NorthShore Motor Leasing, LLC anticipating that the business sales and profits would increase over time and I wanted an LLC instead of a corporation (for tax purposes) that I was originally operating.

6. During 2018, David Baron offered to help with a new, bigger, lower interest rate floor plan at the business. I jumped at his offer as I was eager to do business with Mr. Baron given that he owned and operated several new car franchises and was able to obtain a much bigger floor plan from Ally Financial, the lending heavyweight in the automobile dealership business. The floor plan Mr. Baron

2

brought to the business was bigger and at a lower interest rate through Ally, so it was a desired step up for my business to do business with Mr. Baron.

7. In return for supplying the floor plan, Mr. Baron insisted that he be listed as the owner of my business, with a "right of redemption" (his words) that we agreed to, verbally. We had a solid relationship, and I trusted David in all respects. I know now that I should have done more in writing, but we nevertheless operated the business successfully, and when I did ask David (and his successors in interest, the Plaintiffs herein) for documentation as time went on, it was rarely given.

8. During or about 2020, David Baron made several offers to me. First, I was offered to purchase a small used car business called 189 Sunrise Highway Auto from the Plaintiffs. Attached as Exhibit B are true and accurate copies of the cancelled checks that I utilized for buying that (co-Defendant) business. I have operated that business in all respects since; also included in Exhibit B are copies of checks and ledgers indicating my wife's and my deposits and investments into each of the two businesses.

9. In addition, David offered me the Baron Nissan dealership. Attached hereto as Exhibit C is the contract entered into for Baron Nissan, along with cancelled checks totaling $290,000.00 for the purchase of Baron Nissan.

10. During May, 2021, David Baron died unexpectedly when he was coming back to New York from Florida to finish the Baron Nissan paperwork with me.

11. In his place, Plaintiff Josh Aaronson took over dealing with me on the floor plan in David's place.

3

12. Josh knew of my right to redeem my interest in the Northshore Motor Leasing business, agreed to continue supplying the floor plan, and by the fall of 2022, agreed to my re-taking ownership of Northshore.

13. There is proof of my re-taking ownership and control of the Northshore business: Attached hereto as Exhibit D are true and accurate copies of emails exchanged between my accountant, Tom Jones, Josh Aronson on behalf of the Plaintiffs, and Wendy Kwun, the Controller and/or CFO for the Plaintiffs.

14. The emails attached as Exhibit D are requests to approve amended filings of tax returns indicating that I am 99% owner of each of the two Defendant corporations (Northshore and 189 Sunrise), and that my wife is 1% owner of each corporation. Attached hereto as Exhibit E are true and accurate copies of the tax returns as filed, indicating that I am 99% owner and my wife (Sara) is 1% owner. To be clear: Josh Aaronson, upon the recommendation of the Plaintiffs' CFO and/or Controller, Wendy Kwun, approved the filing of the two tax returns attached hereto as Exhibit E; these two amended returns were changed at the insistence of Wendy Kwun due to some (currently) unknown (to me) problem(s) with one or more of the Plaintiffs' returns.

15. These emails attached as Exhibit D are very important proof of the verbal agreements that existed in the operation of the businesses I have possessed for some time (I have been operating the business at the Michael Drive address in Syosset since 2016; and I have been operating and in possession of the business at 189 Sunrise Highway since I paid for it with the checks attached hereto as Exhibit B.)

4

16. More important, I have been operating these businesses with the full knowledge and approval of the Plaintiffs herein, and my work (without *any* oversight from the Plaintiffs) is telling: At both businesses: 1) I hired and fired *all* employees; 2) set *all* wages and commissions; 3) selected *every* vehicle that was *ever* listed for sale; 4) valuated *every* trade-in vehicle *ever* taken in on trade; 5) conducted *all* advertising on *every* vehicle listed for sale; 6) oversaw *all* training for *all* employees; 7) expended my own funds when the businesses needed extra money; 8) managed *all* operations; 9) signed most of the checks issued; 10) ordered *all* supplies; 11) ordered *all* equipment; 12) ordered *all* furniture; 13) organized and paid for *all* holiday parties; 14) hired and paid for *all* professionals needed for the businesses, including *all* attorneys and accountants; 15) conducted and paid for *all* building repairs; and 16) executed and own the leases for both locations.

17. The papers submitted by the Plaintiffs in this action are woefully insufficient in addressing these points, your Honor. The Plaintiffs conveniently complain now about a few items cherry picked and taken out of context (e.g., there are *always* bills in this business, there are *always* car repairs in the used car business, and like everyone else, we're coming out of a pandemic), but this Court has been given *no proof whatsoever* that these Plaintiffs ever complained of *anything* before deciding to break our bare-bones verbal agreement for the Plaintiffs to supply a floor plan (the agreements for me to purchase 189 Sunrise and Baron Nissan were already completed, as was our agreement to reacquire Northshore).

5

18. E.g., buried in their papers is a reference to me supposedly having no check writing authority. At the moment, I am locked out (by the Plaintiffs) from the corporate bank account/operating account at Chase. But I assure this Court that when the Plaintiffs' TRO is lifted and/or discovery commences, I will gain access to the *dozens* of checks I wrote to Josh Aronson, Brian Chabrier, Jory Baron, and multiple corporations they own or operate for their shares of the monthly monies approximating $60,000.00 *per month* over the last two years for supplying the floor plans for my two companies, and I can further assure this Court that these Plaintiffs *never refused one of those checks.* These Plaintiffs cashed every check I wrote them, and wrote plenty more for themselves; in response to this paragraph, and since only the Plaintiffs have possession of the corporate/Chase account(s) and have locked me and my wife out of same, I call upon the Plaintiffs to submit copies of all checks written from 189 Sunrise and Northshore accounts over the last two years to this Court; this Court will see that their complaint about not having check writing authority is completely fraudulent, false, and intended solely to mislead this Court, as this Court will see that they and I wrote countless numbers of checks, proving that they knew and had no complaints about my access to these account(s). Instead, I assure this Court that they will not submit the checks at all, or will at best select a few to twist and obfuscate the issue further for the Court.

19. Simply put, out relationships starting with David Baron and continuing on through these Plaintiffs after David's death were cordial, professional, and without a hint of complaint prior to the blindsiding I took last November when

6

these Plaintiffs withdrew their cars/floor plans, took all of the corporate paperwork, shut me out of the bank account(s) and corporate software, stole $735,000.00, and filed the instant action, unannounced.

20. I ask the Court to be aware that Wendy Kwun played a *huge role* in getting the tax returns straightened out, and she was a driving force in getting the returns amended to list me and my wife as owners. I don't know every reason for her concern on behalf of the Plaintiffs, but when she found out that I was *not* the owner on tax returns, she insisted that the returns be amended and fully cooperated with my accountant to accomplish same. *See, also,* the Affidavit of Tom Jones accompanying herewith.

21. Candidly, this makes me think that the tax returns everyone involved in this case filed over the last five plus years will tell a fuller story on the ownership of these corporations, but at the moment, there is no dispute over that ownership, the companies belong to me and my wife, and the Plaintiffs and their CFO and/or Controller (Wendy Kwun) approved that last year.

22. My relationship with the Plaintiffs began to deteriorate last fall after I insisted to Josh that he needed to finish whatever paperwork was needed to give me control over Baron Nissan (*see* the Baron Nissan purchase paperwork and checks attached hereto as Exhibit C), or, in the alternative, he needed to give me back the money I paid for that purchase (*id.*).

23. I realize now that since I insisted on resolving the Baron Nissan deal commenced by their former controlling partner, David Baron, the Plaintiffs began planning their exit from working with me and providing the floor plan

7

for my businesses. And candidly your Honor, with the dishonesty advanced to this Court regarding my ownership of the corporations at issue, I don't know what we can trust when the Plaintiffs say that there are agreements that don't allow for the transaction(s) at issue; it is simply to easy for these Plaintiffs to alter a document or attach different pages saying whatever they want and then just submit an electronic copy to this Court. That is a key reason that tax returns will be necessary to prove corporate interests of the Plaintiffs as this case moves forward.

24. First, Wendy Kwun insisted on straightening out the tax returns. It's just amazing that the Plaintiffs bring a lawsuit with alternative claims as here. My attorney tells me that alternative claims and alternative relief are commonplace in the litigation business, but in this instance, the Plaintiffs claim that they own my businesses, but ask for alternative relief in case this Court finds that I own the businesses. They literally undercut their first argument by conceding ahead of my response that maybe this Court would find that they *don't* own the businesses. The documents attached hereto are clearly the documents that they had in mind in "hedging their bets" regarding ownership of the business; I believe that Plaintiffs have more documents solely in their possession (including tax returns) that will shed more light on the within.

25. Second, I want this Court to know that Josh Aaronson, Brian Chabrier, and their CFO and/or Controller, Wendy Kwun, absolutely are committing a fraud on this Court and upon the New York State DMV regarding the ownership of the DMV licenses for these two corporations.

8

26. The licenses provided with the Plaintiffs' papers clearly indicate on their face that the corporations own the licenses, but the Plaintiffs indicate to this Court that the individual(s) associated with submitting the licenses are one or more of the Plaintiffs.

27. Attached hereto as Exhibit F are a series of emails (after I raised the issue of resolving the Baron Nissan transfer) involving Wendy Kwun and Josh Aaronson asking me to fill out, execute and return the DMV license applications for these two corporations, Northshore and 189 Sunrise. I did so, and gave the applications to the Plaintiffs for submission to the DMV.

28. For the Plaintiffs to say (now) that one or more of the individual Plaintiffs (and not me) submitted the last DMV license applications indicates inarguably that the Plaintiffs are committing fraud upon me, this Court, and the DMV. They alerted me to the need to submit new applications, I prepared and executed the applications and returned the documents to Josh and Wendy at their request to submit the applications I executed to the DMV, but it's now clear that the Plaintiffs were defrauding me into thinking that I was also listed as the owner of the two businesses with DMV. Simply put, they had me fill out applications that were never submitted to the DMV, and the emails attached as Exhibit F inarguably prove this point, given that *they* now claim to be the individuals associated with the DMV license applications and *not me*.

29. I and my attorney have spoken to the DMV since this Court issued the Order to Show Cause, and after we spoke to the DMV officers assigned to this case, we were assured that no wrongdoing is taking place at either dealership since the

OSC was issued. To the contrary, we were specifically told that the cars I am storing at the Northshore store (for a fee, to help pay for my leases while shut down due to the Plaintiffs actions and the OSC) are completely lawful in all respects.

30. Third, the Plaintiffs waited until a day when my wife and I were both off from work, then appeared and removed all corporate files from Michael Drive. All dealer jackets and corporate paperwork for both corporations were removed by the Plaintiffs from the corporate headquarters located at Michael Drive in Syosset, New York, when my wife and I were absent from the building immediately prior to the Plaintiffs filing the instant action.

31. This is 100% illegal and an unquestioned violation of DMV regulations, which require the dealer jackets to remain at the dealership.

32. It is clear that Plaintiffs' intention are and have been nefarious from the start. Also just before filing the instant paperwork, and without telling this Court, Plaintiffs shut out me and both corporations from the software utilized for years and paid for by the corporations to operate the businesses. This software is called Verifi and Dealertrack, and Northshore and 189 Sunrise have paid for this software at my direction since I've owned and controlled both companies. I need that software and access to same back ASAP, please, your Honor.

33. Also just before Plaintiffs filed the instant suit on the first Friday after Plaintiffs cleaned out Northshore's offices of all paperwork while I and my wife were not present, Josh Aaronson took $735,000.00 from Northshore's bank account,

money that everyone in this lawsuit knows I arranged to borrow for *my* corporations from co-Defendant Libertas.

34. I immediately contacted Chase Bank, the bank that holds Northshore's and 189 Sunrise's corporate accounts, and learned not only of the theft and that Josh Aaronson committed the theft, but that he did so by utilizing a dead man's electronic log-in credentials (David Baron's credentials, Josh's former father-in-law, who died a year and a half earlier). Upon information and belief, and after speaking with at least two (2) different Chase employees, I have every reason to believe that Josh and/or those acting on his behalf have subsequently tried to change log-in credentials at Chase to cover up this illegal act (which will be easily proven in discovery).

35. I immediately contacted the police, and the money was returned to my attorney within two (2) business days (*see also* the Affirmation of Harry Thomasson accompanying herewith). Attached hereto as Exhibit G is a true and accurate copy of the police report from the theft of $735,000.00 from Northshore's accounts that Josh Aaronson knew he had 1) no authority to take; 2) no legitimate business reason to take; 3) put into an account that had *nothing* to do with Northshore, Libertas, me, or my wife; and 4) gave back within 48 hours after the police merely contacted him about the theft.

36. Honestly, I don't understand the Plaintiffs' Complaint.

37. As I mentioned, *supra,* Plaintiffs clearly anticipated in their papers that the Court may find that they are not the owners of my corporations by asking for alternative relief prior to the instant submissions. But it really doesn't matter

11

which way this Court looks at the situation, they should not be afforded *any* relief pursuant to this Complaint.

38. First, if this Court considers that there were time periods that I did not own both or either corporation, I certainly was acting with the Plaintiffs full knowledge and authority while working for/with either business, and according to their Complaint, I was just an employee. As a mere employee, there was no fiduciary relationship between me and my employer at any time, and there are no circumstances that Plaintiffs allege that would create a fiduciary relationship.

39. Alleging that there was a fiduciary relationship between me and the two corporations at issue is necessary for the Plaintiffs as they certainly realize that if I was acting in a normal employee/employer relationship with their full knowledge and authority, then Plaintiffs have no one but themselves to blame for what they allege are business decisions that I was authorized to make. Likewise, for the periods of time that I and my wife owned the businesses, they simply have no standing to complain about *anything* regarding the operations of those businesses.

40. Plaintiffs have not submitted *anything* in their application that indicates their oversight of either business from 2021 forward in time. *Nothing*. They did not even maintain one (1) single office at either business location. They just collected checks each month, without a single complaint. If they did own the companies, there should be extensive emails and other documentation of their oversight. There was none, because they didn't own the companies. The companies are mine and my wife's.

41. But I was not just some employee off the street, and the documentation attached hereto and the Plaintiffs own hedging of their Complaint with alternative theories anticipating that the Court might find that they are not owners indicates that this situation was never as the Plaintiffs advanced to this Court prior to this response.

42. I certainly *was* acting with Plaintiffs' full knowledge, and there was no authority needed in running my businesses, because the two corporations have been mine since 1) I bought 189 Sunrise (*see* Exhibit B, which includes checks cashed by the Plaintiffs); and 2) I redeemed my interest and regained ownership of Northshore (*see* Exhibits D and E, which constitute the now filed amended tax returns as approved by Josh Aaronson and Plaintiffs' CFO and/or Controller). Make no mistake, your Honor, the Plaintiffs have certainly known that I was operating these businesses since before the events corresponding with Exhibits B, D, and E, and never made any complaint before leaving, attempting to steal money on the way out of the door, successfully stealing the companies' files on the way out of the door, and shutting us out of the software running the companies to cripple my ability to run the businesses, and misleading me on the DMV license applications.

43. It is also misleading to this Court that the Plaintiffs suggest that there are debts associated with the corporations: *Of course there are.* There are debts and car repairs at any given moment for any car dealership, especially used car dealerships such as my own at issue here. But please note: I know what involvement these Plaintiffs had at my dealerships, and it was just supplying

the floor plans (not one of them even maintained an office in the dealerships they weakly claim to own to this Court). So even though Plaintiffs broke off relations under nefarious situations (such as trying to steal money from the Chase operating account and took deal jackets and other paperwork with them), when they asked for the cars obtained through their floor plan, I arranged for every car not in a repair shop to be immediately returned to them (which they accepted without complaint until they commenced this action). And the car my son operates is a *used* Maserati, and it's operated with my knowledge and authority, and has been operated by my son with the Plaintiffs' knowledge and authority for more than one (1) year without a single complaint from the Plaintiffs. Candidly, it is being operated the same way *all of us* operate dealer automobiles: With our own knowledge and authority, including each of the Plaintiffs; it's a perk of the business. To suggest otherwise to this Court now is simply misleading.

44. Since I returned the cars on their floor plan, I have learned that Plaintiffs sold all or most of these cars…and if they did so at a loss, then 1) they did so at their own decision; 2) they did so without my knowledge or approval; 3) they probably want to take a loss on one or more of their own tax returns (which *will* be obtained in this litigation); and 4) it certainly does not create any loss that I am responsible for since everything they have done since before they decided to leave was with a transparent plan to leave and ruin me in the process, clearly to avoid my takeover of Baron Nissan.

14

45. This Court needs to know that since David Baron died during or about May, 2021, I have made every single decision at Northshore Motors. Not one of the Plaintiffs *ever* made a decision in connection with the operation of that business; it cannot be a coincidence (and the Plaintiffs certainly know it is not a coincidence) that once I put over one million dollars back into Northshore I redeemed the value of doing business with the Baron floor plan and earned my business back, as also reflected in the emails and tax returns attached hereto as Exhibits D and E.

46. Likewise, since I purchased 189 Sunrise as reflected in the checks attached hereto as Exhibit B, I have made every single decision at 189 Sunrise Auto. *See, also,* paragraph 16, *supra.*

47. What these Defendants have done is to retaliate against me and my wife for raising the issue/money of the Baron Nissan deal reflected in Exhibit C by hurting our businesses as they withdrew (in our absences, like thieves and cowards). They stole $735,000.00 until the police made them give it back, and they did so by utilizing their own dead partner's electronic bank credentials. They literally stole the files from both businesses. They shut us out of the bank accounts and the software. By their own admissions, they don't want anything to do with the used car business, but they claim to this Court that the businesses are still theirs, without *any* work performed for either business other than providing a floor plan. They left without us in the building, then brought this lawsuit as "the best defense is a good offense" because they do not want me to have Baron Nissan.

15

48. I have firsthand knowledge that one or more of the Plaintiffs have stolen staggering amounts of PPE funding, including the money for PPE funding to help my two businesses. Josh Aaronson and/or Brian Chabrier in particular took every dime of the PPE funding from 189 Sunrise Motors, and they funneled that money through Baron Nissan to one or both of them. It will be proven in discovery, your Honor, but I cannot access the bank account(s) now.

49. I ask that this Court deny their Order to Show Cause in its entirety. The businesses do not belong to these Plaintiffs. I ask that this Court specifically find that the businesses belong to me and my wife as set forth herein. These Plaintiffs specifically approved tax returns being presented to the Federal Government that indicate without equivocation that I own 99% of each corporation at issue and my wife owns 1% of each corporation at issue.

50. If the Court agrees that we are the owners, then the Plaintiffs' Complaint has no merit whatsoever. The Plaintiffs have not contributed *anything* to the funding I obtained from Libertas, and this Court has no reason to extend the Order to Show Cause to apply in any way to Libertas or my attorney, whose entire involvement *ever* with the Plaintiffs consisted merely of receiving the stolen money is his escrow account for about 24 hours back in November, 2022, only. *See, also,* the Affirmation of Harry Thomasson accompanying herewith.

51. Also, I caution the Court to disregard the allegations of wrongdoing being made conveniently to serve the Plaintiffs' purposes in this lawsuit. The Plaintiffs' operations in automobile dealerships are *much* more extensive than my own and my wife's holdings in the business, and the Plaintiffs have all worked *much*

longer in the business than I and my wife. I asked for writings, but Plaintiffs provided the floor plan (read: money) behind my businesses, held the superior position over me because of their money, and they refused to resolve issues with me, then left of their own accord, and without notice, while taking all that they could on their way out of our relationship. If they failed or refused to conduct our agreement in writing, that's their fault, entirely. But they do not own the businesses, they do not have any standing to complain about the operation of my businesses, and they really do not have *any* firsthand knowledge of my businesses, because they were rarely, if ever, present at either business since I regained ownership of Northshore and purchased 189 Sunrise.

52. By the within, these Defendants intentionally interfered with my contractual relationship with co-Defendant Libertas, your Honor. They mislead this Court into shutting down my businesses, which by their alternative set of facts (instead of the typical alternative pleading by alleging different legal theories) on its fact should tell this Court that they hedged their bet on being owners of my businesses. I ask this Court to schedule an inquest to determine damages for the Plaintiffs' intentionally misleading this Court into thinking that these Plaintiffs are entitled to anything after deciding to withdraw their support from these Defendants.

53. For these reasons, I ask that this Court deny Plaintiffs' Order to Show Cause in its entirety, dismiss their Complaint in its entirety, allow our Cross Motion in all respects, including ordering the Plaintiffs to not interfere with the operations

of my businesses again, and that this Court order such other and further relief as it deems necessary and just.

SIGNED AND SWORN UNDER THE PAINS AND PENALTIES OF PERJURY.

Dated: Wantagh, New York
        March 9, 2023

_____
ANTHONY DEO

Sworn before me this 9th
Day of March, 2023

_____
Notary Public

HARRY ROGER THOMASSON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02TH6068549
Qualified in Nassau County
My Commission Expires 2/9/26