SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
---------------------------------------------------------------------x
BRIAN CHABRIER, INDIVIDUALLY AND AS A
MEMBER OF NORTHSHORE MOTOR LEASING, LLC,       Index No. 617224/22
SUING ON BEHALF OF HIMSELF AND ALL OTHER
MEMBERS OF NORTHSHORE MOTOR LEASING,
LLC SIMILARLY SITUATED AND IN THE RIGHT
OF NORTHSHORE MOTOR LEASING, LLC;              Motion Seq. #1 and 2
JOSHUA AARONSON, AS A MEMBER OF 189
SUNRISE HWY AUTO, LLC, SUING ON BEHALF OF
HIMSELF AND ALL OTHER MEMBERS OF 189
SUNRISE HWY AUTO, LLC SIMILARLY SITUATED,
JORY BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, ISLAND AUTO MANAGEMENT,
LLC,

                                           Plaintiffs,      AFFIDAVIT
                                                             IN REPLY AND IN
      -against-                                         OPPOSITION

ANTHONY DEO, NORTHSHORE MOTOR LEASING,
LLC, 189 SUNRISE HWY AUTO, LLC, LIBERTAS
FUNDING, LLC, HARRY R. THOMASSON, ESQ.,

                                           Defendants.
---------------------------------------------------------------------x

STATE OF NEW YORK     }
                                   } ss.:
COUNTY OF NEW YORK  }

       JOSH AARONSON, being duly sworn, deposes and says:

       1.       I am a member of 189 Sunrise Hwy Auto LLC ("Sunrise"), owning a 20%

interest. I, along with Jory Baron ("J. Baron") are listed as owners on the Sunrise New York

1

State Department of Motor Vehicles ("DMV") license (the "Sunrise License") under which Sunrise operates as a used car dealer and am knowledgeable about Sunrise and plaintiff Northshore Motor Leasing, LLC ("Northshore", and collectively with Sunrise, the "Dealerships"). Plaintiff Brian Chabrier ("Chabrier") is listed as owner on the Northshore DMV license (the "Northshore License", collectively with the Sunrise License, the "Licenses"). I am fully familiar with the facts and circumstances set forth herein.

2. I submit this affidavit in reply to the opposition of Defendants Anthony Deo ("Deo"), Harry Thomasson, Esq. ("Thomasson") and Libertas Funding, LLC ("Libertas") (collectively the "Defendants") to Plaintiffs' motion for a preliminary injunction, and in opposition to the cross-motion of Deo to dismiss the complaint pursuant to CPLR §§ 3211(a)(1), 3211(a)(3), 3211(a)(5) and 3211(a)(7), to convert the motion to dismiss to a motion for summary judgment pursuant to CPLR § 3211(c) and for injunctive relief under CPLR §§ 6301, 6312 and 6313.

3. The Defendants have failed to set forth facts or law sufficient to deny the issuance of the preliminary injunction. And Deo is not entitled to any of the affirmative relief requested.

### INJUNCTIVE RELIEF AGAINST DEO IS WARRANTED AS DEO FAILS TO OFFER ANY BASIS TO DENY SUCH RELIEF

4. Deo seeks to create factual issues concerning the ownership of the Dealerships. However, most of the relief requested in the preliminary injunction or complaint is not dependent on the ownership of the Dealerships, rather it concerns Deo's wrongful actions while operating the dealerships using Plaintiffs' Licenses. I briefly note, as set forth in more detail below, that Deo selectively presents half of an agreement to support his ownership claim. Deo completely ignores the conditions to Plaintiffs' transfer of ownership of the Dealerships, such as making or

2

arranging for certain payments, taking over the Licenses and resolving the many customer and banking problems he created.

### DEO OPERATED THE DEALERSHIPS UNDER PLAINTIFFS' LICENSES, JEOPARDIZING PLAINTIFFS' FUTURE OPPORTUNITIES DUE TO HIS WRONGFUL ACTIONS

5. The following are the facts asserted by Plaintiffs supporting their motion for preliminary injunctive relief that Deo either admits or does not dispute, also noting, when appropriate, the difficulties with his arguments: (references are to Brain Chabrier's affidavit dated December 6, 2022 ("B.C. Aff.")(Doc. #3), my affidavit dated December 6, 2022 ("J.A. Aff.")(Doc. #32) and Anthony Deo's affidavit ("A.D. Aff.")(Doc. 60)

   a. Deo transferred ownership of Northshore to Plaintiffs David Baron, Asad Khan and Chabrier in 2018. (Chab. Aff. ¶5) He claims to have done so based upon an oral agreement with David Baron, in exchange for Northshore's access to Plaintiffs' floor plan credit line (the "Floor Plan"), for which Northshore was paying IAG[1] $60,000 per month. (A.D. Aff. ¶6, 7 and 18)(B.C. Aff. ¶21)

   b. Although Deo claims that the oral agreement provided Deo a "right of redemption" he does not state the terms, material or otherwise, under which he had such alleged right of redemption. (A.D. Aff. ¶7)

   c. While Deo claims that he exercised his right of redemption to reclaim ownership of Northshore, he does not describe the terms of such redemption or under what conditions he purportedly reclaimed ownership. (A.D. Aff. ¶12-13)

---

[1] A group of franchised new car dealerships in New York and New Jersey referred to as Island Auto Group, or "IAG" with whom I, Chabrier and J. Baron are associated.

3

d. Deo fails to explain how an alleged oral agreement with David Baron, who only owned a percentage ownership in Northshore, would be binding on the other Plaintiffs.( A.D. Aff.)

e. The Dealerships' Licenses are issued in the name of the Dealerships but were, and continue to be, held by individuals, particularly Chabrier, J. Baron and me. (B.C. Aff. ¶1) (J.A. Aff. ¶1) Deo, in an incredible contradiction, accuses Plaintiffs of lying to this Court that the Licenses are held by the individuals, only being in the name of the Dealerships, (A.D. Aff. ¶25-26). But in the very next paragraph he acknowledges that the Licenses need to be transferred to Deo, (A.D. Aff. ¶27) implicitly acknowledging that the Licenses are issued in the name of the Dealerships, but are held by individuals. That was the reason Wendy Kwun and I sent Deo the application to change the holder from Chabrier, Baron and Me, to Deo.

f. While Deo claims that he signed and returned the Licenses to me, (A.D. Aff. ¶27-28) I have never received them, nor any notification that he sent them, and, of course, he offers no copies of the alleged signed applications or proof of return. Nor has he offered any proof of his follow up asking for the license.

g. Deo could not account for a number of dealer and unissued plates, Plaintiffs believing them to have been given to Deo's friends and family. (B.C. Aff. ¶29)(J.A. Aff. ¶18)

h. IAG provided the dealerships with use of their Floor Plan with Ally Bank ("Ally"). (A.D. Aff. ¶¶ 6-7) Plaintiffs guaranteed repayment of the Floor Plan

4

to Ally. (B.C. Aff. ¶¶ 12, 21-24)(J.A. Aff. ¶16) Use of the Floor Plan would entail purchasing vehicle inventory by credit line advances, which advance for any particular vehicle would be repaid in full when that vehicle was sold. Each unsold vehicle is subject to the lien of Ally. (B.C. Aff. ¶21) That during Deo's tenure over the last year operating the dealerships, the Dealerships failed to repay the Floor Plan in excess of $4 million, despite having sold much of the vehicle inventory. (B.C. Aff. ¶22) Consequently, IAG had to repay Ally for the Dealerships' Floor Plan advances from their own pockets.

i. Deo arranged for the Dealerships to use the Floor Plan to fund the purchase of many cars inflating their true value so he could take the cash, leaving IAG to satisfy the Floor Plan advance because the vehicles could not be sold at a price which would satisfy such Floor Plan advance. (B.C. Aff. ¶22)

j. Deo arranged for the Dealerships to stop paying IAG the monthly $60,000.00 payment for use of the Floor Plan. (B.C. Aff. ¶21)

k. Over the last six (6) months Plaintiffs have funded the dealerships operating deficits in the approximate amount of $4,300,000.00. (J.A. Aff. ¶6)

l. Deo has not arranged for the dealerships to repay IAG for its satisfaction of the Dealerships' Floor Plan obligation to Ally. (J.A. Aff. ¶6)

m. Deo has not committed to arrange for the Dealerships to repay IAG for its satisfaction of the Dealerships' Floor Plan obligation to Ally. (J.A. Aff. ¶6)

n. As of December 2022 Deo has personally taken over $230,000.00 in customers' cash deposits, rather than deposit the money in Northshore's account. (B.C. Aff. ¶15)

5

o. As of December 2022 Deo and the Dealerships have not paid over $58,000.00 in bills to vendors, examples of which include DealerTrack operating systems, Carfax, credit report companies, and Groove car. (B.C. Aff. ¶14)

p. Deo arranged for the Dealerships to issue warranties to consumers and collected the fees but have not paid over $100,000.00 due to the warranty companies, which will result in the voiding of the warranty for which consumers have paid. (B.C. Aff. ¶26)

q. Deo arranged for $303,043.12 of lender financing for consumers who canceled their purchases, but he did not arrange to terminate the financing, keeping the loan proceeds although no vehicle was purchased. (B.C. Aff. ¶17)

r. Deo's son, a student at Penn State, drives a Maserati, paid for by IAG, the total value of which exceeds $80,000.00. (A.D. Aff. ¶43) (B.C. Aff. ¶16)

s. Deo has failed to have Northshore perfect many liens on behalf of the various lenders upon the sale and financing of vehicles sold by Northshore. As a result of Deo's actions, in clear violation of lender agreements, those lenders demanded repurchase of those loans (B.C. Aff. ¶28)

t. Documentation necessary to complete registrations for out of state customers is missing as well as numerous titles on vehicles. (B.C. Aff. ¶30)

u. While the Dealerships owe millions of dollars to Plaintiffs, Deo secretly sold almost $1,000,000 of Northshore's future receipts to Libertas for $735,000 which money he has taken personally with the assistance of his attorney, and

co-defendant, Harry Thomasson. (B.C. Aff. ¶19) (J.A. Aff. ¶7-8)

6. All of the above admitted or undisputed facts confirm that the Dealerships, as operated by Deo, have been operating (i) solely under the Licenses held by me, Chabrier and J. Baron, (ii) by the continued cash infusions of IAG which is owed millions of dollars from the Dealerships, (iv) with Deo pulling out monies from the Dealerships for his personal benefit (v) by defrauding Plaintiffs and consumers; all jeopardizing Plaintiffs and their continued livelihood.

7. Most of the injunctive relief is unrelated to, and does not rely upon, the ownership of the Dealerships. The primary basis for the injunctive relief requested is the jeopardy to Plaintiffs' DMV licenses by the many wrongful actions coordinated by Deo and the divesting of the Dealerships' assets to the detriment of Plaintiffs and consumers. The above admitted or undisputed facts support the issuance of the preliminary injunction against Deo.

8. Deo admits that the Licenses were, and continue to be held by Charbrier, Baron and me. Although he claims to have signed the amendment to change them over to him, we never received them. And Deo does not attach copies of the ones he claims to have signed nor produce any of proof of delivery.

9. In fact, Deo and his representatives have advised the DMV representatives that Northshore no longer operates at the Premises, obviously inconsistent with his claim of ownership. The result of this was the DMV's confiscation of all dealer plates, on the premises. It is imperative that the DMV receive the remaining plates (including that which is believed to be on the Maserati Deo's son is driving at school). The potential liability of unknown parties driving with these plates is substantial. Together with the fact that Deo has surrendered most if not all of the vehicles floor planned by us, as well as the fact that that there are apparently no vehicles currently on the lots for sale, and Deo does not appear to be conducting business there any

7

longer, Deo no longer has no rationale explanation for holding the dealer plates hostage.

10. Deo's ridiculous assertion, that Plaintiffs actually received the signed license amendments and purposely did not file them, makes no sense. There was no benefit to Plaintiffs to have done so. Deo made no payment to Plaintiffs in exchange for a transfer of the License and Plaintiffs receive no benefit from the continued operations of the Dealerships, only greater debt and liability. It was the Plaintiffs that wanted Deo to take over the Licenses to absolve themselves of the continued liability to which they were subject arising from Deo's wrongful activity in operating the Dealerships.

11. Over the past six months, Plaintiffs have funded the Northshore and Sunrise dealerships operating deficits in an amount in excess of $4.3 million. This included payments due to Ally for floor plan financing, pay-offs on customer trade-in vehicles, payroll expenses, insurance, Deo's Amex statements, and monies due vendors such as repair shops and the like. The dealerships are still in significant debt despite the daily infusion of funds from Plaintiff, all of which Deo promised to make good.

12. The immediate relief sought herein is necessary to stop Deo's continued wrongful actions which not only subjects Plaintiffs to the possible loss of the Licenses, but also to potential liability, both civil and criminal, for his actions.

## DEO'S PROOF OF OWNERSHIP IS SIGNIFICANTLY LACKING

13. The copies of tax returns for the dealerships filed in October 2022, with the approval of Wendy Kwun, IAG's controller, far from establish Deo's ownership of the dealerships, as they only present half the story of the significant conditions associated with such approval, which Deo purposely omits.

14. Deo presents the tax returns as if Plaintiffs merely turned ownership over to him despite the fact that, as admitted by Deo, Plaintiffs have put millions of dollars into the dealerships which have been operating under Plaintiffs' licenses, and while Deo continued to

8

defraud customers and put Plaintiffs at risk. To the contrary, as a condition of a transfer of ownership Deo was to sign the application to transfer the Licenses to him, payoff the unpaid lien on customers trades, pay for the warranties he sold, return all dealer and unissued license plates, return the Maserati that IAG paid for, and arrange for the repayment of the balance of the monies owed.

15. Deo immediately failed to satisfy those conditions when he did not sign and return the applications to transfer the Licenses. This all came to a head when we became aware that, instead of taking care of the customer issues and arranging to repay Plaintiffs, he sold almost $1,000,000 of Northshore's future receipts for $735,000, had the money deposited into Sunrise's account, with the clear intention of personally taking that money.

16. Plaintiffs rightfully took that money as part of the monies due to Plaintiffs. Contrary to Deo's claim, we did not use the access credentials of David Baron, but used our own credentials.

17. Apparently, because Deo has a relationship with a former Nassau County police officer, he was able to get a Nassau County police detective involved who threatened to arrest me for allegedly stealing the $735,000 despite this being a civil dispute. When my attorney explained the facts, the detective refused to accept his explanation despite my attorney being able to counter every argument raised by the detective, stating he would put me in jail, and we can hash it out later. Despite there being no basis for my arrest, I did not want to be involved in a criminal matter and agreed to turn the money over to Deo's attorney, Defendant Harry Thomasson, who then immediately turned the money to Deo despite being asked by our attorney to hold the disputed funds.

18. Additionally, Deo' numerous references to an alleged agreement to purchase Baron Nissan is not only unsupported, but has nothing to do with this matter, which only concerns the Plaintiffs and the two used car Dealerships. The purported agreement to purchase Baron Nissan is not signed by all Baron Nissan shareholders, specifically, Ron Baron. Further,

9

the purchase agreement provides that the $250,000 deposit was to be paid to, and held by, Baron Nissan's attorney, Joseph Aboyoun, Esq., not David Baron. Ron Baron and Baron Nissan are not parties to this action, and any disputes concerning that matter are not currently before this Court, and should not be considered.

### LIBERTAS MUST BE ENJOINED

19. Plaintiffs never communicated with Libertas in advance of their purchase of Northshore's future receipts, arranged and executed by Deo. As such, Plaintiffs could not have given Deo any apparent authority to make such arrangement. Nor was Deo, as the manager of Northshore, ever imbued with the considerable authority to enter into any financing of its business operations, only arranging to the financing for customers' vehicle purchases.

20. When entering into the agreement with Libertas, Northshore was already operating with a monthly deficiency. The only factor keeping the business afloat was the regular cash infusions of IAG. Selling Libertas the future receipts from Northshore, which receipts are necessary to first repay the Floor Plan line which was used to purchase the vehicle sold, and then to maintain the operations of Northshore, put the continued operation of Northshore at peril. The accounts currently have a negative balance. Libertas must be restrained from removing any funds from Northshore's accounts.

21. It would certainly be inequitable for Plaintiffs to have to continue to fund Northshore deficiencies to cover the obligations entered into by Deo, which serve no benefit to Northshore, especially when the proceeds from Libertas are currently being held by Deo himself. Deo did not sell Northshore's future receipts to benefit Northshore, yet he is holding onto the Libertas proceeds, and is the responsible party to make Libertas whole.

### ATTORNEY HARRY THOMASSON SHOULD BE SANCTIONED

22. I am shocked and dismayed by the outrageous and scandalous, unsupported statements made by attorney and Defendant, Harry Thomasson. On page 4 of his memorandum

10

of law in opposition to Plaintiffs' motion and in support of Deo's motion, he states "Upon information and belief, Plaintiffs are part of a criminal organization that preys on weaker dealerships on Long Island [sic] elsewhere, including minority owned dealerships such as those at issue here, and bully said dealerships into giving these Plaintiffs and those they represent outside of this lawsuit tens of millions of dollars for nothing more than an arm's length floor plan, then either take over said dealerships or lave said dealerships in ruins, as here.

23. Plaintiffs have operated family owned and run automobile dealerships in the tri-state area for generations, serving numerous communities and employing thousands of people and are above reproach. These revolting, appalling, shocking and libelous statements by Thomasson are repulsive and have no place in this proceeding. Nor should Thomasson enjoy any level of immunity from liability for these statements merely because he is an attorney in a litigation. I respectfully request that Thomasson be sanctioned for these statements and that this matter be referred to the grievance committee for appropriate reprobation.

**WHEREFORE**, deponent respectfully requests the Court grant the relief requested herein, deny the cross-motion of Deo in its entirety and that this Court grant such other and further relief as to this Court may seem just and proper, and the costs of this motion.

Sworn to before me this 28th
Day of March, 2023

_____
Notary Public

JOSH AARONSON

RUSSELL SHANKS
Notary Public, State of New York
No. 02SH6081755
Qualified in Kings County
Certificate Filed in New York County
Commission Expires 12/18/23

11