# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Anthony Deo, individually and as a shareholder/member of Northshore Motor Leasing LLC and 189 Sunrise Hwy Auto LLC, Sarah Deo, individually and as a shareholder/member of Northshore Motor Leasing LLC and 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing LLC, and 189 Sunrise Auto, LLC,<br><br>                        Plaintiffs,<br><br>                  -v-<br><br>Ronald Baron, Joshua Aaronson, Jory Baron, Marcello Sciarrino, Daniel O'Sullivan, Brian Chabrier, Wendy Kwun, Iris Baron, Raymond Phelan, Asad Khan, Estate of David Baron, Baron Nissan Inc., d/b/a/ Baron Nissan, Island Auto Group of New York LLC, a/k/a/ Island Auto Group of NY LLC, d/b/a/ Island Auto Group, Robert Anthony Urrutia, Bruce Novicky, Michael Morgan, Parmeshwar Bissoon, Superb Motors Inc., d/b/a/ Team Auto Direct, Richards, Witt & Charles, LLP, NextGear Capital Inc., Ally Financial Inc., Nissan Motor Acceptance Company LLC, d/b/a/ NAMC, JP Morgan Chase Bank N.A., a/k/a/ JP Morgan Chase & Co., a/k/a Chase Bank N.A., d/b/a/ Chase Bank, Cyruli, Shanks & Zizmor, LLP, Milman Labuda Law Group, PLLC, John Doe Attorneys 1-20, John Doe Accountants 1-20, John Does 1-20, Jane Does 1-20, And John Doe Corporations 1-20,<br><br>                        Defendants. | 2:24-cv-6903 (NJC) (JMW) |

# MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

On September 4, 2024, Plaintiffs Anthony Deo, Sarah Deo (together, the "Deos"),

Northshore Motor Leasing LLC ("Northshore"), and 189 Sunrise Auto LLC ("Sunrise," and

collectively, "Plaintiffs") filed this action in the Supreme Court of the State of New York,

County of Nassau, bringing state law claims as well as claims under the Fifth, Thirteenth, and

Fourteenth Amendments to the U.S. Constitution and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et. seq*. (Not. Removal, Ex. A ("Compl."), ECF Nos. 1-2 & 1-3.) On September 30, 2024, certain Defendants removed this action from state court to this Court under 28 U.S.C. §§ 1441 and 1446, invoking federal question jurisdiction under 28 U.S.C. § 1331. (Not. Removal at 1–3, ECF No. 1.) On January 31, 2025, Plaintiffs filed the Amended Complaint, which only pleads claims under New York law and explicitly states: "This Amended Complaint *does not have any Federal claims*; all claims herein arise under New York state law, only." (Am. Compl. ¶ 1, ECF No. 67 (emphasis added).)

The parties filed a series of letters addressing whether, under *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), this Court is deprived of jurisdiction over this action due to the elimination of all federal claims in the Amended Complaint or whether I may exercise jurisdiction under the so-called "mirror image rule" based on a claim raised in a Related Action that is proceeding before Judge James M. Wicks of this District: *Superb Motors Inc., et al. v. Deo et al.*, No. 2:23-cv-6188 (E.D.N.Y.) (the "Related Action"). This Court issued an Order laying out the mirror image doctrine, raising questions concerning its applicability to this action, and setting a briefing schedule on Plaintiff's motion for remand. (Mem. & Order, ECF No. 92). Before the Court is Plaintiffs' fully-briefed motion for remand.

For the reasons set forth below, I decline to exercise jurisdiction over this matter under the mirror image rule. It is undisputed that the exercise of such jurisdiction is discretionary—not mandatory. The Related Action involves a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, which appears to be the mirror image of a state law claim in this action by the Deos against the Aaronson Defendants seeking a declaration that they are the owners of Northshore and Sunrise. Nevertheless, this Court is not required to

exercise jurisdiction over this state law claim for declaratory relief and to then apply 28 U.S.C. § 1367 to exercise supplemental jurisdiction over *all* of Plaintiffs' state law claims brought in this action.

Here, there are practical reasons not to do so. Defendants have not answered the Amended Complaint in this action and have expressed an intent to pursue motions to dismiss, none of which have been filed as this Court is considering the question of jurisdiction. By contrast, the Related Action is nearing the close of discovery, the parties there are poised to commence dispositive motion practice in early 2026, and a jury trial is scheduled to begin in July 2026. Moreover, although the parties in the Related Action have consented to the jurisdiction of Judge James M. Wicks for all purposes, the parties in this action have made clear that they do *not* consent to the jurisdiction of Judge Wicks, who presently serves as the assigned magistrate judge in this action. In this context, there is little economy to be gained by this Court's exercise of jurisdiction over Plaintiffs' numerous state law claims in this action even if one of those claims is a declaratory relief claim that is the mirror image of a RICO claim in the Related Action. Rather, for the reasons explained below, were this Court to exercise mirror image jurisdiction over this action and then either consolidate it with the Related Action (as Defendants in this action have requested) or, at a minimum, coordinate the two cases, such an approach is likely to undermine "the just, speedy, and inexpensive determination" of the Related Action with no discernible benefit to the resolution of this action, in contravention of Rule 1 of the Federal Rules of Civil Procedure. Accordingly, Plaintiffs' motion to remand is granted in its entirety.

## BACKGROUND

### A.    Commencement of this Action and Initial Case Management

As noted, this case was filed subsequent to the Related Action in this District, which

involves many, but not all, of the same parties and was filed on August 17, 2023: *Superb Motors, Inc., et al. v. Anthony Deo, et al.*, No. 23-cv-6188 (E.D.N.Y.). In the Related Action, the Deos are defendants, while Northshore and Sunrise are defendants on certain claims and plaintiffs on others. Judge Wicks is the sole adjudicator of the Related Action.

Plaintiffs commenced this action on September 4, 2024, more than one year after the filing of the Related Action. On September 30, 2024, Defendants Ronald Baron, Joshua Aaronson, Jory Baron, Marcello Sciarrino, Daniel O'Sullivan, Brian Chabrier, Wendy Kwun, Iris Baron, Raymond Phelan, Asad Khan, Estate of David Baron, Baron Nissan, Inc. d/b/a Baron Nissan, and Island Auto Group of New York LLC a/k/a Island Auto Group of NY LLC a/k/a Island Auto Group (the "Aaronson Defendants), together with Defendant Cyruli Shanks & Zizmor LLP ("Removing Defendants") removed the action to this Court.

On October 1, 2024, this action was assigned to Magistrate Judge Anne Shields under this District's Pilot Program, governed by EDNY Administrative Order 2023-23. (Elec. Order, Oct. 1, 2024.) On October 2, 2024, it was reassigned to Judge Wicks under the Pilot Program due to his role as the adjudicator of the Related Action. (Elec. Order, Oct. 2, 2024.)

On October 15, 2024, Defendant Superb Motors Inc. d/b/a Team Auto Sales LLC[1] filed a motion to consolidate this action with the Related Action. (ECF No. 22.) Plaintiffs and several Defendants filed responses to the motion to consolidate. (ECF Nos. 27, 35, 36, 38.) On October 24, 2024, Judge Wicks issued an order directing the parties in this action to meet and confer and to file a notice by November 1, 2024 indicating whether all parties consent to his jurisdiction for

---

[1] In the motion to consolidate, Superb Motors Inc.'s counsel, who purports to also represent Robert Anthony Urrutia, asserts that Urrutia joins in making the motion. (ECF No. 89.) However, Urrutia has not appeared in this action and his counsel also asserts that Urrutia has not been properly served. (*Id.*)

4

all purposes in this matter in light of the fact that the parties in the Related Action had consented to his jurisdiction for all purposes in that action. (Elec. Order, Oct. 24, 2025.)

On November 1, 2024, Judge Wicks denied the motion to consolidate without prejudice and with leave to renew and stated that the Court would resolve any motions to dismiss the operative pleading before determining whether this action should be consolidated with the Related Action. (Elec. Order, Nov. 1, 2024.) Moreover, because the parties failed to file the required form signed by all parties to show unanimous consent to the jurisdiction of Judge Wicks for all purposes, this action was reassigned to my docket on November 1, 2024, with Judge Wicks assigned to handle pre-trial case management and certain pre-trial, non-dispositive motions.

**B.    Filing of the Amended Complaint and Jurisdictional Concerns**

Several Defendants filed letters requesting pre-motion conferences regarding anticipated motions to dismiss the Complaint in this action. (ECF Nos. 30, 32, 34, 37, 42, 48, 50, 52, 53, 60.) I held a status conference on November 19, 2024, during which I found that a pre-motion conference was not necessary for any anticipated motion to dismiss the Complaint and waived the pre-motion conference requirement. (Min. Entry & Sch. Order, Nov. 20, 2024.) During the status conference and through a November 20, 2025 Minute Entry and Scheduling Order, I ordered Plaintiffs to either file an amended complaint or to notify the Court of their intent not to amend the Complaint by January 31, 2025, and set a briefing schedule permitting any Defendant to file a motion to dismiss the operative complaint by April 1, 2025. (*Id.*)

On January 31, 2025, Plaintiffs filed the Amended Complaint, which drops all of the federal claims that had been pled in the original Complaint and explicitly states that it "does not have any Federal claims; all claims herein arise under New York state law, only." (Am. Compl.

¶ 1.) The Amended Complaint includes a request for a declaratory judgment that the Deos "are the rightful owners/members/stockholders of [] Sunrise since February 2021 and North[s]hore since its inception." (*Id.* ¶ 580.) The pleading does not invoke the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

Following the filing of the Amended Complaint, Defendants Ally Financial Inc., NextGear Capital, Inc., and Nissan Motor Acceptance Company LLC (collectively, the "Financing Defendants") filed a letter motion requesting a status conference or an order directing Plaintiffs to file a motion to remand this case to state court for lack of subject matter jurisdiction in light of the United States Supreme Court's January 15, 2025 decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). (ECF No. 69.) The Financing Defendants also requested that the Court adjourn the briefing schedule on Defendants' anticipated motions to dismiss, which are set forth in the November 20, 2024 Minute Entry and Scheduling Order, pending a determination as to whether this Court has jurisdiction. (*Id.*)

On March 5, 2025, Defendant Superb Motors Inc. filed a letter motion, allegedly "together with the remaining Defendants" except for Richards, Witt & Charles, LLP[2] (collectively, "Non-Financing Defendants") requesting an extension of time to respond to the subject matter jurisdiction issues raised by the Financing Defendants. (ECF No. 71.) Like the Financing Defendants, the Non-Financing Defendants requested that the Court stay the briefing schedule for any motion to dismiss the Amended Complaint. (*Id.*)

On March 8, 2025, I granted the Financing Defendants' and Non-Financing Defendants'

---

[2] *See* ECF No. 73 (explaining that Richards, Witt & Charles, LLP "was not contacted nor consulted by Superb and/or any of the other 'remaining Defendants' in connection with" the Non-Financing Defendants' "letter motion and request").

request for adjournment of the motion to dismiss briefing schedule and granted the Non-Financing Defendants' request for an extension of time to file a response to the subject matter jurisdiction questions raised by the Financing Defendants. (Elec. Order, Mar. 8, 2025.)

On March 19, 2025, the Removing Defendants alone filed a response to the Financing Defendants' letter motion, arguing that the Court "maintains subject matter jurisdiction" over this case "pursuant to the 'mirror image rule,'" and that I "should exercise [my] discretion to consolidate this case" with the Related Action. (ECF No. 74 (relying on *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 65–66 (2d Cir. 2012)).) On April 21, 2024, Plaintiffs filed a response, "tak[ing] no position on" remand and arguing that application of the mirror image rule "is not mandatory," but requesting that I "stay any such decision [on remand] until after considering a Motion for Declaratory Judgment" by Plaintiffs regarding the ownership of Sunrise and Northshore. (ECF No. 84 at 2–3.)

On April 30, 2025, I denied Plaintiffs' request for permission to pursue a motion for declaratory judgment prior to resolution of the subject matter jurisdiction question raised by the filing of the Amended Complaint. (Elec. Order, Apr. 30, 2025 ("[I]n the event that this Court lacks subject matter jurisdiction, *it has no power* to rule on the Motion for Declaratory Judgment that Plaintiffs seek to file." (emphasis added)).) I granted the Financing Defendants an opportunity to file joint or separate letters stating their position on whether the Court has subject matter jurisdiction over this action, including the applicability of the mirror-image rule. (*Id.*)

On May 7, 2025, the Financing Defendants filed a letter stating their position that "this Court has jurisdiction over this Action pursuant to the mirror-image rule." (ECF No. 87 at 1.) I provided Defendants Robert Anthony Urrutia, Bruce Novicky, Richard, Witt & Charles, LLP, JP Morgan Chase Bank, N.A., and Milman Labuda Law Group, PLLC—parties who had yet to

address the subject matter jurisdiction questions raised by the filing of the Amended Complaint

—an opportunity to state their respective positions by May 13, 2025. (Elec. Order, May 9, 2025.)

On May 13, 2025, Milman Labuda Law Group, PLLC (ECF No. 88), Bruce Novicky and

Superb Motors Inc. (ECF No. 89), and JPMorgan Chase Bank, N.A. (ECF No. 90) each filed

letters arguing that this Court has subject matter jurisdiction over this action under the mirror

image rule. Richard, Witt & Charles, LLP had previously filed a letter, on March 19, 2025,

clarifying that it is not part of the Non-Financing Defendants, but set forth no position on the

question of subject matter jurisdiction in that letter and failed to respond to the May 13, 2025

Order. (ECF No. 73.) Finally, Robert Anthony Urrutia did not respond to the May 13, 2025

Order, and his counsel asserts that he has not been properly served. (ECF No. 89.)

### C.    The Court's September 30, 2025 Order

On September 30, 2025, I issued an order granting the Financing Defendants' motion for

an order directing Plaintiffs to file a motion to remand. (Mem. & Order, ECF No. 92.) In the

September 30, 2025 Order, I raised "significant questions about this Court's jurisdiction over the

action" in light of Plaintiffs' Amended Complaint, which lacks any federal claims or a factual

basis for this Court's exercise of diversity jurisdiction under 28 U.S.C. § 1332(a). (Mem. &

Order at 2.) I raised two specific concerns. First, although Defendants assert that Plaintiffs' claim

for declaratory judgment creates federal jurisdiction under the mirror image rule, the Amended

Complaint is devoid of any reference to the federal Declaratory Judgment Act, 28 U.S.C. § 2201,

and declaratory relief is available on Plaintiffs' state law claims under N.Y. C.P.L.R. § 3001.

Second, Sunrise and Northshore are plaintiffs on the claim for declaratory relief in this action

*and* on the First Cause of Action in the Related Action—a RICO claim that is the only claim that

could arguably be the mirror image of the declaratory relief claim in this action. Accordingly, I

found that the record before me was "insufficient to establish that this Court possesses subject matter jurisdiction following the filing of the Amended Complaint under the 'mirror image' rule recognized by the Second Circuit in *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 69–71 (2d Cir. 2012), and other precedents." (Mem. & Order at 2.) I therefore granted Financing Defendants' request for an order directing Plaintiffs to file a motion to remand in order to permit the parties to address my concerns in briefing. (*Id.*)

I required all briefing on the motion for remand to be completed by November 4, 2025. That deadline was later extended to November 18, 2025 upon the parties' joint request. (*See* ECF No. 94; Elec. Order, Oct. 24, 2025.) The parties timely filed Plaintiff's fully-briefed motion to remand, which included a motion by Plaintiffs (ECF No. 95-1); a brief in opposition to remand by the Aaronson Defendants, Bruce Novicky, Superb Motors Inc. d/b/a Team Auto Direct, and Cyruli Shanks & Zizmor, LLP (ECF No. 95-4); a brief in opposition by the Financing Defendants (ECF No. 95-2); a brief in opposition by JP Morgan Chase Bank, N.A. (ECF No. 95-3); and a reply by Plaintiffs (ECF No. 95-11).

## DISCUSSION

Federal courts are courts of limited jurisdiction. *Royal Canin U. S. A.*, 604 U.S. at 26. Under 28 U.S.C. § 1331, Congress conferred jurisdiction on federal courts to resolve cases "arising under" federal law, also known as federal question jurisdiction. *Id.* (quoting 28 U.S.C. § 1331). Federal question jurisdiction exists "typically" "when federal law creates the cause of action asserted." *Id.*[3] It may also arise, "[o]n rare occasions" when a claim in a suit containing solely state law claims "necessarily raises a substantial and actually disputed federal question."

---

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

*Id*. Based on the well-pleaded complaint rule, the allegations of the complaint determine whether the requirements for "arising under" jurisdiction are met. *Id*. Additionally, where there is federal question jurisdiction, a federal court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over a state claim that arises from the same facts as the federal claim. *Id.* at 27.

When the requirements for federal question jurisdiction are met by the face of the complaint filed in state court, the defendant may remove the action from state to federal court under 28 U.S.C. § 1441(a) because the case falls within the federal courts' original jurisdiction. However, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case must be remanded to state court." *Royal Canin U. S. A.*, 604 U.S. at 28 (discussing 28 U.S.C. § 1447(c)). In *Royal Canin U. S. A.*, the United States Supreme Court held that, in cases removed to federal court under 28 U.S.C. §1441(a) on the basis of federal question jurisdiction, when the "plaintiff amends her complaint to delete all the federal-law claims" that enabled removal, "leaving nothing but state-law claims behind," the federal court loses supplemental jurisdiction over the related state claims arising out of the same facts, and the case must be remanded to state court. *Royal Canin U. S. A.*, 604 U.S. at 25–26.

Under the Declaratory Judgment Act ("DJA"), federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" in any "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201 (emphasis added). However, the DJA does not confer an independent basis for subject matter jurisdiction on federal courts; nor does it expand the federal courts' subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024). "The DJA only provides courts with discretion to fashion a remedy, not a cause of action." *Sunvestment*, 116 F.4th at 113–14. Moreover, the

10

Second Circuit has made clear that "even assuming that all the prerequisites for a declaratory judgment have been met, the DJA confers a discretion on the courts" to exercise jurisdiction "rather than an absolute right upon the litigant" to have access to the federal courts. *Id*. at 114 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (explaining that district courts retain "broad discretion" to decline jurisdiction under the DJA).

The Second Circuit instructs that "[t]o determine whether a court has subject-matter jurisdiction over a DJA claim," a court must "conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit." *Sunvestment*, 116 F.4th at 114. This is known as the "mirror image" rule. *Garanti Finansal*, 697 F.3d at 66. That is to say, a court must "examine[] the declaratory *defendant's* hypothetical well-pleaded complaint to determine whether federal-question subject-matter jurisdiction exists" over the DJA claim pled in the case before the court. *Sunvestment*, 116 F.4th at 114; *see also Garanti Finansal*, 697 F.3d at 68 ("[W]e have summarized the law as follows: a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff.").

This action was removed from state court under 28 U.S.C. §§ 1441(a) and 1446 because the Complaint pled claims under the U.S. Constitution and federal law, thereby supporting this Court's original jurisdiction under 28 U.S.C. § 1331. (Not. Removal at 1–3.) As in *Royal Canin U. S. A.*, however, Plaintiffs subsequently filed the Amended Complaint, which explicitly eliminates all federal claims and brings only state law claims. (Am. Compl. ¶ 1.) The Amended Complaint does not invoke the federal DJA. (*See id*. ¶¶ 553–580.)

11

It is undisputed that this Court lacks diversity jurisdiction over this action under 28 U.S.C. 1332(a) because the parties lack complete diversity. Am. Compl. ¶¶ 3–4; 7–18; 21–24 (alleging facts sufficient to establish that the Deos and several individual and corporate Defendants are citizens of New York); *see also Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (requiring complete diversity among plaintiffs and defendants for jurisdiction under 28 U.S.C. § 1332(a)). Therefore, the filing of the Amended Complaint to remove all federal claims would normally deprive this Court of supplemental jurisdiction under 28 U.S.C. § 1367 over the state claims arising out of the same facts as the now-dropped federal claims, which would require the case to be remanded to state court. *Royal Canin U. S. A.*, 604 U.S. at 25–26.

### A.    The Parties' Arguments

Plaintiffs' motion sets forth three bases for remand: (1) this Court lacks federal question jurisdiction under 28 U.S.C. § 1331 because the Amended Complaint raises no federal claims; (2) this Court lacks diversity jurisdiction under 28 U.S.C. § 1332; and (3) the mirror image rule does not apply here, citing the Court's September 30, 2025 Memorandum & Order. (ECF No. 95-1.)

In opposition, Defendants argue for application of the mirror image rule for three reasons: (1) the Second Circuit has applied the mirror image rule in at least one case where the underlying complaint does not refer to the DJA, 28 U.S.C. § 2201; (2) parties on mirror image claims need not be identical, and in any case, Sunrise and Northshore were not on the plaintiff side in both claims at issue in the mirror image analysis: the First Cause of Action in the Related Action and the declaratory relief claim in this action; and (3) this Court's exercise of jurisdiction over this action would foster judicial economy, whether or not this action is consolidated with the Related

Action. (ECF No. 95-4[4]; *see also* ECF No. 95-2, 95-3.) In all three of the briefs opposing remand filed by certain Defendants in this action, the parties acknowledge that the exercise of jurisdiction under the mirror image doctrine is *discretionary*—not mandatory. (ECF No. 95-2 at 5 (requesting that the Court exercise jurisdiction "to the extent this Court believes that there may be grounds" for the mirror image rule); ECF No. 95-3 at 7 (contending the Court should not "decline exercising jurisdiction"); ECF No. 95-4 at 8 (noting the rule "permits" exercising jurisdiction").)

For the reasons explained below, Defendants' arguments in favor of this Court's exercise of mirror image jurisdiction over this action are unpersuasive. Even if the mirror image rule *permits* this Court to exercise jurisdiction, such an exercise will not promote the "just, speedy, and inexpensive determination," Fed. R. Civ. P. 1, of either this action or the Related Action because the latter is nearing the end of discovery and on the verge of summary judgment motion practice, whereas this action is at the very earliest stages.

**B.     Analysis**

The Amended Complaint seeks declaratory relief establishing that "1) the Deos and/or Anthony Deo are/is the owner(s)/member(s)/stockholder(s) of Baron Nissan in all respects since May 2021; or, in the alternative, that 2) the Deos and/or Anthony Deo at least hold(s) the ownership position of David Baron with Baron Nissan as of and since the date of Exhibit F in May 2021." (Am. Compl. ¶ 565.) All of the remaining counts in the Amended Complaint arise under state law. (*Id*. ¶¶ 342–552.) The Amended Complaint does not invoke any state or federal

---

[4] The Court considers and addresses arguments set forth in the brief by the Aaronson Defendants, Bruce Novicky, Superb Motors Inc. d/b/a Team Auto Direct, and Cyruli Shanks & Zizmor, LLP, which is the operative opposition brief; as well as the briefs by the Financing Defendants' and JP Morgan Chase Bank N.A.

declaratory judgment statute. (*See id*. ¶¶ 533–65.)

As a threshold matter, Defendants are correct that the Amended Complaint's failure to invoke the DJA, 28 U.S.C. § 2201, as the basis for declaratory relief does not appear to preclude application of mirror image jurisdiction over a claim that does not arise under federal law. Defendants rely on *China Shipping Container Lines Co. Ltd. v. Big Port Service DMCC*, 803 Fed. Appx. 481 (2d Cir. 2020) (summary order), where the Second Circuit affirmed the district court's application of the mirror image rule in a case where the underlying complaint does not refer to the federal DJA. In *China Shipping*, the district court ruled that the declaratory judgment claim fell within the court's admiralty/maritime jurisdiction as the mirror image of a suit to enforce a maritime contract over which the court would unquestionably have jurisdiction under 28 U.S.C. § 1333. 803 Fed. Appx. 481 at 483 ("That 'mirror image' suit—BPS suing CSCL to compel arbitration on a maritime contract—is one over which the federal courts would have jurisdiction."); *see also China Shipping Container Lines Co. Ltd. v. Big Port Serv. DMCC*, No. 15-cv-2006, 2019 WL 9362547, at *3 (S.D.N.Y. Jan. 15, 2019) ("If BPS had brought an action for payment against CSCL, that would give rise to admiralty jurisdiction . . . This declaratory judgment action, therefore, 'is the mirror image of that suit,' and the Court has admiralty jurisdiction.").

Defendants are also correct that the appearance of Sunrise and Northshore as plaintiffs in both actions should not bar exercise of mirror image jurisdiction because only Anthony and Sara Deo—not Sunrise and Northshore—are the sole plaintiffs in the declaratory relief claim before this Court; therefore, the fact that Northshore and Sunrise are plaintiffs in RICO claim in the First Cause of Action in the Related Action does not preclude finding that the RICO claim is the mirror image of the declaratory relief claim in this case. Defendants further maintain that the

declaratory relief claim in this action "can only be sought by Anthony and Sara Deo, not Northshore and Sunrise," because "Northshore and Sunrise can have no ownership interest in themselves and are not considered parties that may seek a declaration of ownership over themselves." (ECF No. 95-4 at 11.) The Financing Defendants and JP Morgan Chase additionally assert in their supplemental opposition briefs that the mirror image rule does not require complete uniformity of the parties. (ECF No. 95-2 at 2; ECF No. 95-3 at 3.)

Nevertheless, the parties agree that the Court's exercise of mirror image jurisdiction is discretionary. The Second Circuit has not addressed the factors district courts should consider when determining whether to exercise jurisdiction under the mirror image rule. Therefore, I look to the standards governing federal courts' exercise of discretion to decline to adjudicate claims seeking relief under the DJA. *See Skelly Oil*, 339 U.S. at 671–72; *Garanti Finansal*, 697 F.3d at 66–68; *Sunvestment*, 116 F.4th at 113–14.

As stated previously, there is no "absolute right" to federal jurisdiction over an action raising only state law claims, even where a district court may determine, in its discretion, that a request for declaratory relief may give rise to mirror image jurisdiction. *Sunvestment*, 116 F.4th at 114. In the context of claims seeking relief under the DJA, 28 U.S.C. § 2201, the Second Circuit has recognized that the following factors "should inform a district court's exercise of such discretion":

> (1) "whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether such a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy"; and (6) "whether concerns for 'judicial efficiency' and 'judicial economy' favor declining to exercise jurisdiction."

*Admiral Ins. Co.*, 57 F.4th at 99–100. District courts have "broad discretion to weigh" these

"non-exhaustive" factors, and "retain[] wide latitude to address other factors as relevant to the ultimate question of whether 'the normal principle that federal courts should adjudicate claims [over which they have] jurisdiction' should 'yield[ ] to considerations of practicality and wise judicial administration' in a particular case . . ." *Id*. at 100.

Here, the above-enumerated *Admiral Insurance* factors overwhelmingly weigh in favor of declining jurisdiction.

First and foremost, the sixth factor—considerations of judicial efficiency and economy—weigh heavily against this Court's exercise of jurisdiction over this action. This action involves ten claims—all of which are brought solely under New York law—against 24 different individual and entity defendants and additional fictitious defendants. There is only one claim in this action that concerns a request for declaratory relief relating to the ownership of Northshore and Sunrise. The Third Amended Complaint in the Related Action brings no less than *28 claims*, only one of which—the RICO claim set forth in Count I of the Third Amended Complaint—is the coercive mirror image of the declaratory relief claim in this action. Each case is in a different procedural posture; while this case remains at the starting gate, the Related Action has proceeded past rulings on various motions to dismiss the operative pleading, discovery is scheduled to close on January 31, 2026, and dispositive motions are due on February 20, 2026. *See Superb Motors Inc. et al v. Deo et al.*, 2:23-cv-6188 (E.D.N.Y.), Elec. Order, Dec. 11, 2025. Thus, even if this Court were to exercise discretion to assert mirror image jurisdiction over all ten of the state law claims in this action due to the sole claim seeking declaratory relief regarding the ownership of Northshore and Sunrise, there would be no efficiency gain due to the different procedural postures of this action and the Related Action. *See, e.g.*, *Starr Indem. & Liab. Co. v. Scottsdale Ins. Co.,* No. 24-cv-3309, 2025 WL 2783106, at *5 (E.D.N.Y. Sept. 30, 2025) (declining to

exercise jurisdiction over a claim for relief under the federal DJA where the parallel proceeding had already undergone motion practice and was now progressing to discovery).

Moreover, because the parties in this action have declined to consent to the jurisdiction of Judge Wicks for all purposes, whereas the Related Action is assigned to him for all purposes, the exercise of jurisdiction over this case would simply result in the two actions proceeding in federal court at different paces and stages without any efficiency gain or judicial economy. To be clear, parties in a civil action in federal court are *never* required to consent to the jurisdiction of the assigned magistrate judge for all purposes. *See* Fed. R. Civ. P. 73 (parties are "free to withhold consent without adverse substantive consequences"); *see also New York Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 24 (2d Cir. 1993) (describing Rule 73 as "establish[ing] procedures designed to ensure that a party's consent . . . is truly voluntary."). The parties in this action are entitled to assert the right to have this litigation adjudicated by a federal district judge, should the federal court exercise jurisdiction over the action under the mirror image rule. Nevertheless, contrary to Defendants' contention, any consolidation of this case with the Related Action would frustrate, rather than advance, judicial economy and efficiency. Here, various groups of Defendants have filed *eleven separate letters* indicating different parties' intentions to file motions to dismiss Plaintiffs' claims. (*See* Min. Entry, Nov. 20, 2024.) The undersigned would need to resolve such motions before the case could move to discovery, where Judge Wicks, as the assigned magistrate judge, would set discovery deadlines and resolve discovery disputes, which the parties would have a right to appeal to the undersigned. However, in the Related Action, Judge Wicks has already ruled on numerous, complex motions to dismiss, managed the discovery process, and is poised to consider dispositive motions in early 2026.

Accordingly, in the event that this Court were to exercise mirror image jurisdiction over

this action *and* that Defendants were to move to consolidate this action with the Related Action, the grant of such a motion would likely *slow down the Related Action* because the two actions can only be consolidated on the undersigned's docket due to the lack of unanimous consent among the parties in this action to the jurisdiction of Judge Wicks for all purposes. For example, were the Related Action to come to this Court, the undersigned would rule on the parties' anticipated motions for summary judgment and possibly conduct a jury trial without the benefit of having ruled on the parties' motions to dismiss or having considered the numerous discovery issues that have been litigated. Moreover, as noted, even if this Court were to exercise mirror image jurisdiction over this action and permit it to proceed on a separate track from the Related Action, it is difficult to discern any judicial economy or efficiency gains that would result. Therefore, while one significant purpose of exercising jurisdiction over this action would be to foster judicial economy and efficiency, the exercise of jurisdiction would, at best, lead to no added efficiency or economy, and at worst, would significantly slow down the Related Action.

Although some of the remaining factors weigh in favor of this Court's exercise of jurisdiction, none of them weigh so strongly as to outweigh the sixth factor. Regarding the first factor, the requested declaratory judgment in this case would have the effect of clarifying or settling one legal issue involved in this action. However, resolution of the RICO claim in the Related Action will have a similar effect, and that claim is much closer to resolution because it has survived various motions to dismiss, discovery is substantially completed, dispositive motions concerning that claim are due on February 20, 2026, and Judge Wicks will resolve any dispositive motions and conduct a jury trial, if needed. Moreover, the claims in this action, as well as those in the Related Action, require resolution of numerous legal and factual issues beyond the question of the rightful ownership of Sunrise and Northshore. For example, the

second, third, and fourth causes of action in the Related Action allege conspiracy under 18 U.S.C. § 1962, and the Amended Complaint in this action brings claims for breach of contract, intentional interference with contractual relations, and intentional infliction of emotional distress claims, among others, all of which raise factual and legal questions that extend beyond the scope of the declaratory relief claim concerning the ownership of Northshore and Sunrise. *See Optanix, Inc. v. Alorica Inc.*, No. 1:20-cv-9660, 2021 WL 2810060, at *4 (S.D.N.Y. July 6, 2021) (finding declaratory relief "would serve no purpose" in part because it "would not clarify any uncertainty in the parties' legal relations that would otherwise remain unresolved as part of the breach of contract claim . . ."). Thus, the decision to exercise jurisdiction over this action would bring some clarity or resolution to one legal issue involved in both actions, but this factor is not dispositive.

The second factor—"whether such a judgment would finalize the controversy and offer relief from uncertainty"—is neutral. As noted, the RICO claim in the Related Action squarely concerns the dispute between the Deos and the Aaronson Defendants over the ownership of Northshore and Sunrise and is substantially closer to resolution than the declaratory relief claim here, which has not even proceeded to the motion to dismiss stage. As noted, at least one court within this District has declined to exercise jurisdiction over a claim seeking relief under the federal DJA where  a parallel action involved "litig[ation of] the very issue at the core of [the] requested relief . . ." . *Starr Indem. & Liab. Co.*, 2025 WL 2783106, at *5; *see id.* (noting that the related action in state court had already moved past motion to dismiss practice and was proceeding to discovery).

The third factor—"whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"—weighs in favor of exercising jurisdiction. Plaintiffs in this

case could have raised at least some, if not all, of the claims brought in the Amended Complaint through counterclaims in the Related Action. Instead of doing that, they chose to file a separate suit, perhaps to get around Judge Wicks' ruling in the Related Action that Harry R. Thomasson, who serves as counsel for the Deos in this case, could not appear as counsel for the Deos in the Related Action because he is a named defendant in that action. *See Superb Motors Inc. et al v. Deo et al.*, 2:23-cv-6188 (E.D.N.Y.), Mem. Order, ECF No. 117 (granting plaintiffs' motion to disqualify Harry R. Thomasson as counsel for any defendants other than himself).

The fourth factor—"whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"—also weighs against the exercise of jurisdiction over this action. It is well established that New York courts have expertise in adjudicating claims brought under New York law—and all of the claims in the Amended Complaint are brought under New York law, including the declaratory relief claim concerning the ownership of Northshore and Sunrise. *See Farmers Prop. & Cas. Ins. Co. v. Fallon*, No. 21-cv-6022, 2023 WL 4975977 (E.D.N.Y. Aug. 3, 2023) (finding factor four to weigh against jurisdiction because "this action seeks to compel this Court to encroach on matters that are indisputably more familiar to the state judge handling the underlying litigation . . . ."). Resolution of these claims for no reason other than the fact that one of the ten state law claims in this case is a mirror image of one of around two dozen claims in the Related Action, without any gains in judicial economy or efficiency for the resolution of this action or the Related Action, would encroach on the domain of state courts.

The fifth factor—"whether there is a better or more effective remedy"—also weighs against exercising jurisdiction. For the reasons explained above, the declaratory relief requested in this action would be insufficient to resolve the many claims and issues presented in this action

and in the Related Action given the breadth of claims and defenses and the number of parties in each action. *See* Am. Compl. ¶¶ 342–580 (bringing ten claims against 24 named defendants and additional fictitious defendants); *see also Superb Motors Inc. et al v. Deo et al.*, 2:23-cv-6188 (E.D.N.Y.), Opinion & Order, ECF No. 230 (ruling on five motions to dismiss by 19 defendants and permitting 22 claims to proceed while dismissing 30 claims).

Closely considering all of the factors identified in *Admiral Insurance Company*, 57 F.4th at 99–100, I conclude that the factors as a whole weigh against exercising jurisdiction over the declaratory relief claim concerning the ownership of Northshore and Sunrise in this action under the mirror image rule. Although that claim presents a mirror image to a RICO claim in the Related Action, under the totality of the circumstances, exercising jurisdiction over this action will not advance judicial economy or "the just, speedy, and inexpensive determination" of either this action or the Related Action. Fed. R. Civ. P. 1.  Moreover, at worse, the exercise of a jurisdiction here combined with an effort to coordinate or consolidate this action with the Related Action may even frustrate or undermine such purposes.

Accordingly, this Court declines to exercise jurisdiction over the sole New York law declaratory relief claim in the Amended Complaint under the mirror image doctrine. As discussed, this Court lost supplemental jurisdiction over the state law claims in the Amended Complaint because of the elimination of all federal claims that had appeared on the face of the original Complaint prior to removal of this action under 28 U.S.C. § 1441; *Royal Canin U. S. A.*, 604 U.S. at 25–26. Because this Court declines to exercise jurisdiction over the sole New York law declaratory relief claim concerning the ownership of Sunrise and Northshore in the Amended Complaint under the mirror image doctrine, there is no basis for this Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law claims.

Accordingly, this case must be remanded to state court. *See Royal Canin U. S. A.*, 604 U.S. at 28 ("[I]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case must be remanded to state court." (discussing 28 U.S.C. § 1447(c))).

## CONCLUSION

For all of the reasons explained in this Opinion and Order, this Court lacks subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1332, 1367 or the mirror image doctrine. Plaintiffs' motion to remand is therefore granted in its entirety.

This action is remanded to the Supreme Court of the State of New York, County of Nassau. The Clerk of Court is respectfully directed to close the case and to mail a certified copy of this order to the clerk of the Nassau County Supreme Court.

Dated: Central Islip, New York
        December 22, 2025

        */s/ Nusrat J. Choudhury*
        NUSRAT J. CHOUDHURY
        United States District Judge